**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

REGINALD EDWIN BOSSIER,

                    Plaintiff,

          v.                                        No.:  1:08-CV-00408-LTS-RHW

STATE FARM FIRE AND CASUALTY
COMPANY,

                    Defendant.

**STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**
**RE:  PUNITIVE AND EXTRA-CONTRACTUAL DAMAGES**

# TABLE OF CONTENTS

**Page**

I.    Preliminary Statement ...................................................................................................1

II.   Factual Background ........................................................................................................2

    A.    Plaintiff's Property and Insurance Policy ...........................................................2

    B.    Plaintiff's Homeowners Claim ............................................................................3

    C.    State Farm's Attempt to Resolve Plaintiff's Disputed Claim ..............................4

    D.    State Farm's Re-evaluation of Plaintiff's Claim .................................................5

        1.    Ted Biddy's Report and Joseph Ziz's Affidavit........................................5

        2.    State Farm's Responsive Investigation to Plaintiff's Additional Materials ..........6

    E.    State Farm's Interview with Joseph Ziz .............................................................7

    F.    State Farm's Experts............................................................................................9

    G.    Katie Bossier's Eyewitness Account ..................................................................10

III.  Argument and Authorities.............................................................................................11

    A.    Summary Judgment Standard .............................................................................11

    B.    Plaintiff Cannot Meet His Burden of Proof to Obtain Punitive Damages ....................11

        1.    Plaintiff Cannot Show That State Farm Had No Arguable Basis for Adjusting His Insurance Claim ...........................................................13

        2.    Plaintiff Cannot Demonstrate That State Farm Adjusted His Claim with Malice or Gross Negligence in Reckless Disregard for His Rights.................16

    C.    The Extra-Contractual and Additional Damages Claims Fail as a Matter of Law........17

        1.    Plaintiff Cannot Recover Extra-Contractual Damages as a Matter of Law.......17

        2.    Plaintiff Cannot, as a Matter of Law, Recover Attorneys Fees.........................18

IV.   Conclusion ....................................................................................................................18

## I.    PRELIMINARY STATEMENT

State Farm Fire and Casualty Company ("State Farm") respectfully submits this memorandum in support of its motion for partial summary judgment as to Plaintiff's claims for punitive and extra-contractual damages, including attorneys fees and emotional distress.  *See, e.g.*, Compl. ¶¶ 12-16, 21(b), 24-33, 35, 35(B), 35(D)-(F).  Plaintiff's house sustained severe damage during Hurricane Katrina but remained standing.  During the storm, Plaintiff and his wife remained at home, and Plaintiff reported to State Farm that "8 ft of water came through" the house during the storm and that "all personal property was washed out."  Homeowners Claim File (attached as Ex. A) at 454; Johnson Dep. (attached as Ex. B) at 117:20-118:13; *see also* R. Bossier Dep. (attached as Ex. C) at 21:5-10, 36:15-20; K. Bossier Dep. (attached as Ex. D) at 34:1-7, 34:22-35:2, 36:25-37:21, 65:15-66:9.  Eight feet of storm surge was more than sufficient to inundate Plaintiff's one-story, "slab-on-grade" house that was located near open water.

After State Farm investigated Plaintiff's claim, it determined that Plaintiff's property was severely damaged by flooding as well as separate and independent wind.  State Farm ascertained that water levels in Plaintiff's home reached five to eight feet, largely confirming Plaintiff's account.  Plaintiff did not have flood insurance.  Based on its investigation, State Farm paid Plaintiff $15,872.13 under his homeowners policy for separate and independent wind damage and denied those portions of the damage that were caused by flooding – an excluded peril.[1]  Plaintiff disagrees with State Farm's adjustment and seeks additional homeowners insurance payments.

In this motion, the ultimate correctness of State Farm's adjustment is not at issue.  Rather, this motion addresses Plaintiff's claims for punitive and extra-contractual damages.  Plaintiff's punitive damages claim is substantively untenable because he cannot demonstrate by clear and convincing evidence (i) that State Farm had no legitimate reason for adjusting his claim *or* (ii) that State Farm

---

[1]  The Fifth Circuit has held that the water damage exclusion and anti-concurrent cause lead-in language in Plaintiff's homeowners policy exclude storm surge flooding and are unambiguous, valid, and enforceable.  *Tuepker v. State Farm Fire & Cas. Ins. Co.*, 507 F.3d 346, 352-56 (5th Cir. 2007); *see also Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 436-38 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1873 (2008) (holding substantively indistinguishable water damage exclusion and anti-concurrent cause lead-in language are unambiguous, valid, and enforceable).

adjusted the claim with malice or gross negligence in reckless disregard for Plaintiff's rights.  *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008).  Plaintiff must demonstrate both elements to sustain the punitive damages claim.  *Id.*  As a matter of law, Plaintiff cannot meet his burden by merely citing evidence to suggest that wind damaged the home prior to the arrival of flooding.  *Id.*  Mississippi disfavors punitive damages and limits them only to the most egregious cases.  Thus, Mississippi law imposes on Plaintiff a heavy burden of proof that he cannot meet here.

Plaintiff's inability to meet that burden also bars any recovery of extra-contractual damages because, as a matter of law, "[a]n arguable reason" for a claims adjustment "shields the insurance company from liability for both punitive damages and extra-contractual damages."  *Hans Constr. Co., Inc. v. Phoenix Assurance Co. of N.Y.*, 995 F.2d 53, 56 (5th Cir. 1993).  Claims for attorneys fees and trial expenses also fail because absent "an award of punitive damages, the Mississippi Supreme Court has never approved of awarding attorneys fees" or trial expenses as extra-contractual damages.  *See Miller v. Allstate Ins. Co.*, 631 So. 2d 789, 795 (Miss. 1994); *Spencer v. State Farm Mut. Ins. Co.*, 891 So. 2d 827, 830 (Miss. 2005) (trial expenses and attorneys fees).

For these reasons and those set forth below, State Farm's motion for partial summary judgment on all Plaintiff's claims for punitive and extra-contractual damages should be granted in its entirety.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Property and Insurance Policy

Plaintiff Reginald Edwin Bossier owned a waterfront house at 1987 Bayside Drive, Biloxi, Mississippi, where he resided with his wife, Katie Bossier.  Ex. D at 9:5-16; *accord* Biddy Rpt. (attached as Ex. E)[2] at 668; Compl. ¶ 1.  Plaintiff's house was a one-story, wood frame structure.  Ex. E at 668.  The structure was built "slab-on-grade," placing the finished floor elevation only half a foot higher than the foundation.  *See* Weisberg Rpt. (attached as Ex. F) at 17.  Plaintiff's property was approximately 8

---

[2] State Farm has separately moved to exclude Mr. Biddy's proposed report and his opinions pursuant to the Federal Rules of Evidence.  State Farm's motion and supporting memorandum of law are filed contemporaneously herewith.

feet above sea level at the lowest elevation according to measurements by his retained expert Rocco Calacci. Calaci Rpt. (attached as Ex. G) at 13;[3] *see also* Masters Rpt. (attached as Ex. H) at 6-7 (about 14 feet above sea level); Ex. F at 17 (about 14.5 feet above sea level).

On August 29, 2005, Plaintiff's house sustained severe damage during Hurricane Katrina. *See* Ex. A at 440. Plaintiff and his wife stayed at home during the storm. Ex. D at 17:7-10. At the time of his loss, Plaintiff did not have a flood insurance policy for his property, Ex. C at 29:23-25, and Plaintiff's homeowners policy excluded flood damage. Homeowners Policy (attached as Ex. I) at 10.

### B.    Plaintiff's Homeowners Claim

On September 2, 2005, Plaintiff filed a claim under his homeowners policy. Ex. A at 451. On September 9, 2005, Matthew Thiele interviewed Plaintiff and his wife about their loss on the telephone. *Id.* at 439. Plaintiff's wife said that "they saw water coming" during the storm "so they got up in the attic" of the one-story house. *Id.* Indeed, Plaintiff told State Farm that "8 ft of water came through" the house and that "all personal property was washed out." *Id.* at 454; Ex. B at 117:20-118:13.

Based on Plaintiff's account of the severe flooding at their house, State Farm team manager Tip Pupua ordered an inspection to investigate the loss and adjust Plaintiff's claim. Ex. A at 439. From September 26 to October 5, 2005, independent adjuster Lee Ann Johnson repeatedly attempted to contact Plaintiff to schedule an inspection but was unsuccessful. *Id.* at 439-40. On October 6, 2005, Ms. Johnson spoke with Plaintiff's personal assistant and scheduled an inspection for the next day. *Id.* at 440.

On October 7, 2005, Ms. Johnson inspected Plaintiff's property to investigate the cause and extent of damages. *Id.* Because Plaintiff's house survived the storm, Ms. Johnson was able to inspect the remaining structure and surrounding area for physical evidence of the cause and extent of damage. *Id.* Ms. Johnson confirmed Plaintiff's account that "[t]he water line is appx. 8ft." *Id.*; *accord id.* at 454; *see* Ex. B at 117:20-118:13. She observed damage to the walls and roof of Plaintiff's house and

---

[3] State Farm has separately moved to exclude Mr. Calaci's proposed report and his opinions pursuant to the Federal Rules of Evidence. State Farm's motion and supporting memorandum of law are filed contemporaneously herewith.

determined that the "front exterior wall has extensive flood damage and all other 3 walls are gone." Ex. A at 440. Plaintiff's dwelling extensions were also "completely gone and washed away." *Id.* She concluded that "[t]he only visible and distinctive wind damage is to the roof." *Id.*

Based on her inspection of the property, Ms. Johnson concluded that wind caused separate and independent damage to Plaintiff's roof and that the vast preponderance of damage to Plaintiff's waterfront home was caused by storm surge flooding. *Id.* at 440-41. On October 10, 2005, State Farm sent Plaintiff a check in the amount of $2,310.28 for the wind damage and denied coverage for the flood damage. *Id.* at 334, 348. For the next two years, Plaintiff requested nothing further from State Farm and submitted no further documents in support of the claim.

Plaintiff also submitted claims on other insurance policies, including a boat policy. *See id.* at 45. During Hurricane Katrina, Plaintiff's boat was attached to a trailer and stored at Plaintiff's home. *Id.* When State Farm investigated the boat claim, the adjustor found that the "raised waters" had lifted the boat and deposited it atop a neighbor's roof where it was remained after the storm. *Id.*

### C.    State Farm's Attempt to Resolve Plaintiff's Disputed Claim

Pursuant to an agreement between State Farm and the Mississippi Department of Insurance, State Farm offered to re-evaluate Plaintiff's claim in October 2007 in exchange for a release. *See id.* at 443. Plaintiff's personal assistant, Nancy Fobes, spoke with State Farm's claim representative, Kenneth Bush, to discuss the disputed claim. *Id.* Ms. Fobes claimed that wind caused additional damage to the dwelling extensions and to the house. *Id.* In response, Mr. Bush offered to pay Plaintiff under Coverage A, Coverage B, and Coverage C according to the "reevaluation guide" pursuant to the agreement with the Mississippi Department of Insurance. *See id.* at 381. Based on that guide, State Farm offered $61,438.63 for disputed wind damage in exchange for a release. *Id.* at 381, 443. Plaintiff did not accept the payment, and the claim was set for mediation. *Id.* at 444.

To prepare for mediation, State Farm sent Michael Bourg to investigate Plaintiff's claim. *Id.* at

445.  On December 21, 2007, Mr. Bourg inspected Plaintiff's property but the house and slab had been demolished.  *Id.*  On January 10, 2008, State Farm and Plaintiff attended mediation to settle Plaintiff's claim.  *Id.*  At the mediation, Plaintiff did not present any new information about the cause or extent of his loss.  *Id.*  State Farm re-offered the amount of its reevaluation offer, $61,438.63, to settle the disputed claim.  *Id.*  Plaintiff declined, and the mediation ended in an impasse.  *Id.*

> **D.**     **State Farm's Re-evaluation of Plaintiff's Claim**

On May 1, 2008, Plaintiff submitted to State Farm an engineering report by Ted Biddy.  Ex. A at 447.  Although Plaintiff apparently hired Mr. Biddy in February 2006, *see* Ex. E, Plaintiff did not submit his report to State Farm until more than two years later.  Ex. A at 447.  In addition, Plaintiff's counsel obtained an affidavit from Joseph Ziz, Plaintiff's neighbor, who claimed to have witnessed certain damage to Plaintiff's home during the hurricane.  *See* Ziz Aff. (attached as Ex. J).  Mr. Ziz later made clear that he did not draft the affidavit and that his account of the speed and severity of the flooding was omitted by the author of the affidavit.  Ziz Dep. (attached as Ex. K) at 44:3-11; 45:13-24.  In light of these documents, State Farm re-evaluated Plaintiff's claim in May 2008.  Ex. A at 447-48.

> **1.**     **Ted Biddy's Report and Joseph Ziz's Affidavit**

Mr. Biddy inspected Plaintiff's house on January 27, 2006.  In his report, Mr. Biddy confirmed that storm surge flooding caused the great preponderance of damage to Plaintiff's property.  Though he found that wind caused damage, he concluded that the "waters of the storm enter[ed] the house to a depth of 3.5 feet."  Ex. E at 668.  He stated that the storm surge waters "destroyed the remaining furnishings; the wallboards; the electrical wiring; all floor coverings; the storage areas; and all other items making contact with the water that the winds had not already destroyed."  *Id.* at 665.  Despite his lengthy analysis, Mr. Biddy ultimately concluded that "[t]here is no absolutely precise way to divide the damages caused by wind or water."  *Id.* at 661.

Mr. Ziz also provided additional information.  He lived "[j]ust across the street" from Plaintiff,

Ex. K at 36:8-11, and confirmed that flooding struck Plaintiff's house, but he did not observe any wind damage. At about 7:30 a.m., Mr. Ziz heard loud winds in the area. Ex. J ¶ 7. He later estimated the speed of the winds at "[p]robably 50, 60 miles an hour," Ex. K at 12:13-15, noting that a neighbor of his was still able to "walk[] over" to Mr. Ziz's house during the storm. *Id.* at 13:8-18. Although he remembered that Plaintiff's fence and "detached accessory building" were "gone," Mr. Ziz did not see wind cause any damage. Ex. J ¶ 8. Yet when Mr. Ziz looked out the door, he saw "a high, or flood tide" arrive, "but the water of the Bay had not yet reached the Bossiers' residence." *Id.* ¶ 9.

As explained below, *see* Part II.E *infra*, State Farm interviewed Mr. Ziz to ascertain what damage, if any, he saw occur to Plaintiff's property. Though he did not see any wind damage, Mr. Ziz confirmed that storm surge flooding struck his neighborhood in the early morning hours of the storm. *Id.* In relating the information that would eventually be used by Plaintiff to draft Mr. Ziz's affidavit, Mr. Ziz mentioned the speed and severity of his neighborhood's flooding. *See* Ex. K at 45:7-21. But the author of the affidavit omitted these important details. *Id.* at 45:22-24.

**2.    State Farm's Responsive Investigation to Plaintiff's Additional Materials**

Using the additional documents by Mr. Biddy and Mr. Ziz, State Farm conducted another review of Plaintiff's claim in May 2008. *See* Ex. A at 448-50; Re-Evaluation Summary (attached as Ex. L). With regard to the Biddy Report, independent adjuster Shellie Leverett determined that the actual damages to Plaintiff's house and the surrounding properties showed that the flood height was greater than Mr. Biddy supposed. Ex. L at 684. FEMA's findings of a five- to six-foot water level above grade were greater than Mr. Biddy's opinion that the water line reached three-and-a-half feet above the ground-level finished floor. *Id.*; Ex. A at 448.

As for Mr. Ziz's affidavit, Ms. Leverett noted that Mr. Ziz's statement does not show that he saw any actual damage occurring to Plaintiff's house. Ex. L at 685. To ascertain whether Mr. Ziz witnessed any covered damage, Ms. Leverett attempted to contact Mr. Ziz by phone and letter on several occasions,

but she was unable to reach him. *Id.* at 682-83; Ex. A at 340, 448-50. Plaintiff's counsel was also unable to contact Mr. Ziz for a subsequent interview. Ex. A at 450; Ex. L at 682.

In addition to the Biddy Report and Ziz Affidavit, Ms. Leverett analyzed Plaintiff's claim file, ground and aerial photographs, activity logs, damage estimate, appraisal report, public information from FEMA and NOAA websites, and prior claims. *See* Ex. L. She found that Plaintiff's roof was at least 15-20 years old, that there were "severe interior leaks coming from roof-to-wall connections and chimney flashing," and that missing siding from Plaintiff's house "was the only severe wind-related breach in the exterior of the dwelling." *Id.* at 683. She noted that the "interior drywall remained intact" and that it was "likely that additional damages did occur to the interior" due to lack of "mitigation or repairs following Hurricane Katrina." *Id.* Thus, Ms. Leverett concluded that damages depicted in the Biddy Report were "due in part to pre-existing conditions, lack of mitigation, and repeated exposure following Hurricane Katrina." *Id.*; *see also* Leverett Dep. (attached as Ex. M) at 164:15-165:21.

Based on her re-evaluation, Ms. Leverett recommended that State Farm's damages estimate should be revised to account for further repairs to wind-damaged portions of the house. Ex. L at 682-83; Ex. M at 23:18-24:11. These repairs included "replacing all of the roof covering, replacing the missing synthetic stucco siding and all related items such as trim, flashing, painting, etc." Ex. L at 683. Ms. Leverett attached a Statement of Loss to her report that recommended an additional disbursement to Plaintiff. *Id.* at 681. Based on Ms. Leverett's independent analysis, State Farm issued an additional payment of $13,561.85, which included interest. *See* Ex. A at 343.

**E.    State Farm's Interview with Joseph Ziz**

Following Ms. Leverett's revisions, State Farm continued to seek out Mr. Ziz to ascertain whether he saw any other covered damage to Plaintiff's property when he remained at home during the storm. On May 11, 2009, State Farm successfully located Mr. Ziz for an interview. *See* Ziz Interview Tr. (attached as Ex. N). During the interview, Mr. Ziz provided further details about the timing of

events in Plaintiff's neighborhood on August 29, 2005. He recalled that by 8:00 a.m. the water was "probably five foot five and a half foot maybe" and that "the water came up a little higher after that then stayed like that most of the day." *Id.* at 10; *see also* Ex. K at 16:3-23 (noting that the water was "neck deep" by "about 7:45, 7:50), 20:2-7, 22:20-23:14 (recalling the water level at "four-and-a-half feet" by 8:00 a.m.) Mr. Ziz also stated that he "[p]aid no attention" to Plaintiff's home and "couldn't tell you anything about the house." Ex. N at 11; *see also* Ex. K at 13:8-18, 21:9-13.

When asked specifically about the depth of the water in his own house, Mr. Ziz recalled "five and a half feet of standin' water." Ex. N at 15; *see* Ex. K at 20:2-7 ("four-and-a-half feet"). Mr. Ziz estimated that his home – which was farther from the bay than Plaintiff's house – was "maybe a couple feet" higher than the elevation of Plaintiff's home. Ex. N at 1-2, 15; *see* Ex. K at Ex. 1. Therefore, Mr. Ziz agreed that the water level in Plaintiff's home could have reached seven or eight feet. Ex. N at 15.

Moreover, although Mr. Ziz had previously recounted that the storm surge had not yet reached Plaintiff's home at 7:30 a.m., *see* Ex. J ¶¶ 7-9, he later stated that by 8:00 a.m. – only a half hour later – the water had already reached five-and-a-half feet deep, and "stayed like that most of the day." Ex. N at 10. Indeed, at his deposition, Mr. Ziz confirmed the speed and severity of the flooding:

> A.    So we started [to drive] out of the neighborhood. Approximately maybe a tenth of a mile, if that far, there's a tree across the road, so there's no getting out on the Hillside. And about that time I glanced in my mirror and I see water coming and I tell my wife, I said, just hold on. I said, here it comes.
>
> Q.    Okay. And was – when you say, "here it comes," was there something about the water that –
>
> A.    It was just – it was – it was like it went from dry ground to we were under water in 30 seconds. I mean, it moved that quick.

Ex. K at 15:6-16:2. Mr. Ziz and his family exited the submerged truck at around 7:45 a.m. to escape and were already "neck deep" in flooding while Mr. Ziz was "carrying my daughter above my head." *Id.* at 16:3-23. Mr. Ziz and his family broke into a neighbor's house and climbed to the second floor to escape the flooding. *Id.* at 16:14-25. That house was higher and farther from the bay than Mr. Ziz's and

Plaintiff's properties,[4] and Mr. Ziz recalled that the water rose to "about four-and-a-half feet" inside that house. *Id.* at 19:21-20:13. Indeed, the house where Mr. Ziz and his family sheltered remained flooded through 4:00 that afternoon. *Id.* To be sure, Plaintiff and his wife have both admitted that their house was flooded during Hurricane Katrina. *See* Ex. D at 34:1-7, 34:22-35:2, 36:25-37:21, 65:15-66:9; Ex. C at 21:5-10, 36:15-20.

### F.    State Farm's Experts

After Plaintiff filed suit, State Farm retained Forrest Masters, Ph.D., and Robert H. Weisberg, Ph.D., to further study the cause of damage to Plaintiff's property. Their analysis reinforces the reasonableness of State Farm's adjustment.

Dr. Masters is an assistant professor of civil and coastal engineering at the University of Florida. Ex. H at 26. He holds a Ph.D. and a masters degree in civil and coastal engineering. *Id.* at 27. In his report, Dr. Masters incorporates his own field reconnaissance in the region before and after Hurricane Katrina, inspection of Plaintiff's property, analysis of NOAA surface wind fields and aerial photography, and simulation of storm surge and waves using ADCIRC and SWAN models. *Id.* at 3.

Dr. Masters determined that the storm surge flooding at Plaintiff's property reached 20 feet with peak wave height at a minimum of 1-2 feet. *Id.* at 7. Dr. Masters also found that "damage to the exterior perimeter wall, which received the brunt of the surge and wave forces, is far more severe [than damage to the roof]." *Id.* at 9. He concluded that "these walls were approximately 50-75% underwater during the arrival of the peak winds." *Id.* Taking into account the height of Plaintiff's home structure and the rise in storm surge, Dr. Masters estimated peak wind gusts to be 101 miles per hour. *Id.* at 7. In examining houses in the surrounding area, Dr. Masters noted that "almost all exhibit little to no roof cover loss. If extreme wind loads were the cause of [Plaintiff's] building's destruction, the remaining

---

[4] During his deposition, Mr. Ziz marked several locations on a map of the neighborhood to describe his experience. *See* Ex. K at Exhibit 1. According to Mr. Ziz, the location of his property is marked "A," Plaintiff's property is labeled "B", the spot where the road was blocked by a fallen tree is marked with an "X," and the neighbor's house in which Mr. Ziz and his family took refuge is indicated with an "I." *See id.* at 17:12-19:10. The location of this neighbor's house is up Hillside Drive and farther from the bay than both Mr. Ziz's property and Plaintiff's property.

buildings in close proximity would have suffered major loss of roofing material and uplift of part of all of the roof decking . . . . This is simply not evident." *Id.* at 11-12.

Dr. Weisberg also evaluated the cause of damage to Plaintiff's property. *See* Ex. F. Dr. Weisberg is a Distinguished Professor of Physical Oceanography in the College of Marine Science at the University of South Florida, where he studies "ocean circulation and ocean-atmosphere interaction." *Id.* at 44. He is director of the USF Ocean Circulation Group and co-director of the USF Coastal Ocean Modeling Prediction System. *Id.* He holds Ph.D and masters degrees in physical oceanography. *Id.* In analyzing the causes of damage to Plaintiff's property, Dr. Weisberg relied on his physical inspection of the property, aerial photographs, NOAA post-storm wind analysis, analysis of wind studies, FEMA weather data, wave and wind force calculations, and topographical data. *Id.* at 3, 16-42.

Dr. Weisberg remarked upon "the proximity of open water" to Plaintiff's house, "its relatively low-lying elevation," and "the rising surge and waves." *Id.* at 16. He determined that "surge heights were substantial, as were the accompanying waves," and that Plaintiff's "single-storied, wood-framed with brick veneer, slab-on-grade built house, with a finished floor elevation of 14.5 ft, . . . would have been inundated to about 2/3rds of its interior height." *Id.* at 42. He found "little evidence of severe roof damage" to other homes in the area, which experienced "bottom-up, not top-down" damage, *id.*, leading him to conclude that "it is difficult to imagine how wind could have been the causative agent of damage." *Id.* at 22. Noting that "[e]ven at their peak magnitude the wind forces would have been 10 times less than the forces by water," Dr. Weisberg concluded that "water-related forces are likely what damaged [Plaintiff's] house as soon as the combined surge and waves impacted the finished floor level (~915AM)." *Id.* at 42.

### G.    Katie Bossier's Eyewitness Account

Plaintiff and his wife, Katie, remained at home during the storm. Mrs. Bossier testified at her deposition that they fled to the attic around 8:00 a.m. the morning of Hurricane Katrina when Mrs.

Bossier saw flooding coming up from the bay. Ex. D at 31:24-32:19, 36:1-4. Among other reasons, Mrs. Bossier stated that they fled to the attic to avoid drowning. *Id.* at 34:22-35:2. Mrs. Bossier recalled that, before they ascended to the attic of the one-story house, none of the windows – which were held in the walls of the house – were broken. *Id.* at 30:20-31:18.

## III. ARGUMENT AND AUTHORITIES

### A. Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." To support a motion for summary judgment, the moving party carries the initial "burden of showing the absence of a genuine issue as to any material fact," *Burleson v. Tex. Dep't of Crim. Justice*, 393 F.3d 577, 589 (5th Cir. 2004) (citation omitted), and once the movant satisfies its initial burden, the burden shifts back to the non-moving party to produce evidence showing that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003).

The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "[A] complete failure of proof on an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and summary judgment dismissing the claims is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims," and "it should be interpreted in a way that allows it to accomplish this purpose." *Id.* at 323-24 .

### B. Plaintiff Cannot Meet His Burden of Proof to Obtain Punitive Damages

Plaintiff cannot meet his heavy burden of proof to sustain his punitive damages claim.

"Mississippi law does not favor punitive damages" because "they are considered an extraordinary remedy," *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (Miss. 2006), reserved only for "the most egregious cases." *Hartford Underwriters Ins. Co. v. Williams*, 936 So. 2d 888, 896 (Miss. 2006); *Cmty. Bank v. Courtney*, 884 So. 2d 767, 783 (Miss. 2004) ("extreme cases"). For those reasons, Mississippi law imposes on Plaintiff an especially "'heavy burden'" of proof to maintain a claim for punitive damages. *U.S. Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 971 (Miss. 2008) (citation omitted).

Specifically, Plaintiff bears the burden to demonstrate that State Farm adjusted his claim both "(1) without an arguable or legitimate basis, either in fact or law, ***and*** (2) with malice or gross negligence in disregard of the insured's rights." *Broussard*, 523 F.3d at 628 (emphasis added; citation omitted). As a matter of law, Plaintiff must make such a showing with "clear and convincing evidence," *see, e.g.*, Miss. Code Ann. § 11-1-65(1)(a), and Plaintiff's substantive burden applies with equal force at the summary judgment stage as it would at trial. *Anderson*, 477 U.S. at 254; *accord Haygood v. First Nat'l Bank of New Albany*, 517 So. 2d 553, 555 (Miss. 1987). To defeat Plaintiff's punitive damages claim, "State Farm . . . 'need only show that it had reasonable justifications, either in fact or in law, to deny payment.'" *Broussard*, 523 F.3d at 628 (citation omitted). "An arguable reason" for a claims adjustment "shields the insurance company from liability for both punitive damages and extra-contractual damages." *Hans Constr. Co.*, 995 F.2d at 56.

As the Fifth Circuit has held, "[b]oth elements – an intentional wrong, insult, abuse, or gross negligence ***and*** the absence of a legitimate or arguable reason for denial-must be satisfied." *Fairly v. Crowell*, 231 F. App'x 316, 319 (5th Cir. 2007) (emphasis in original); *see also U.S. Fid. & Guar. Co. v. King Enters., Inc.*, 982 F. Supp. 415, 416 (N.D. Miss. 1997) (Senter, C.J.) (citation omitted) ("[T]o prevail on a claim for either punitive or extracontractual compensatory damages, the plaintiff must show, in addition to the absence of any arguable reason, that the insurer acted with malice or reckless disregard for his rights."). As shown below, Plaintiff cannot meet his burden of proof under either element to

12

obtain any punitive damages.  Accordingly, summary judgment should be granted in State Farm's favor on Plaintiff's punitive damages claim.

### 1.    Plaintiff Cannot Show That State Farm Had No Arguable Basis for Adjusting His Insurance Claim

Plaintiff cannot meet his burden of proof on the first element of his punitive damages claim, namely, to demonstrate that State Farm had no "arguable or legitimate basis" for its adjustment of his claim.  *See, e.g.*, *Broussard*, 523 F.3d at 628.  This is "'an issue of law for the court,'" *id.* (citation omitted), and an arguable basis is defined as "'one in support of which there is some credible evidence.'" *Tipton v. Nationwide Mut. Fire Ins. Co*., 381 F. Supp. 2d 572, 579 (S.D. Miss. 2004) (quoting *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So. 2d 833, 851 (Miss. 1984)).  To show that State Farm had no arguable basis, it is not enough for Plaintiff to cite evidence suggesting that wind damaged the house prior to the storm surge.  *Broussard*, 523 F.3d at 628.  An arguable basis is not measured by the ultimate correctness of State Farm's adjustment, but by whether State Farm's reason for adjusting Plaintiff's claim had any "arguable merit."  *see also Sobley v. S. Natural Gas Co*., 302 F.3d 325, 342 (5th Cir. 2002); *accord Broussard*, 523 F.3d at 628.  Plaintiff's failure of proof on this essential element disposes of his entire punitive damages claim as a matter of law.  *King Enters.*, 982 F. Supp. at 416-17 (Senter, C.J.) ("[T]he presence of a legitimate or arguable reason on the part of the insurer for denying the insured's claim will defeat a claim for punitive damages . . . ."); *see also Pioneer Life Ins. Co. v. Moss*, 513 So. 2d 927, 930 (Miss. 1987); *Hans Constr.*, 995 F.2d at 56.

Indeed, the record in this case is far more ripe for summary judgment than the record in *Broussard*, a slab claim.  In *Broussard*, the house was entirely destroyed, and the adjuster could not examine any debris to ascertain the cause of damage.  523 F.3d at 622, 628.  The adjuster in *Broussard* was only able to examine the "position of the home" relative to a debris line in the area and the "condition of the trees." *Id.* at 628.  Though the plaintiffs identified "some facts which suggest that wind destroyed their home prior to the arrival of the tidal surge," the Fifth Circuit still held as a matter of law

13

that State Farm "had an arguable basis for denying their claim based on the observations of its adjuster." *Id*. On those facts, it was reversible error to submit the punitive damages claim to the jury. *Id*. at 630.

Compared to the relatively limited record in *Broussard*, Plaintiff cannot show that the record in this case comes below the "credible evidence" threshold and cannot show that State Farm had no reasonable basis for its adjustment. Although Plaintiff's home sustained severe damage from Hurricane Katrina, much of the home was still standing after the storm, enabling independent adjusters to analyze the cause of damage by studying the remaining physical evidence in the structure. Damage to the house, damage to structures in the vicinity, the proximity to open water, and the high surge flooding in the area all formed a reasonable basis for State Farm's adjustment. Floor space in Plaintiff's "slab-on-grade," one-story house was only eight to twelve feet above sea level. *See* Ex. G at 13; *see also* Ex. H at 6-7; Ex. F at 17. All experts and witnesses – along with Plaintiff and his wife – agree the ground floor was inundated during the storm.

In *King Enterprises*, the plaintiff sought punitive damages for the defendant's denial of an insurance claim after plaintiff's retail business burned down. *King Enters*., 982 F. Supp. at 415. In that case, Your Honor held that, because the defendant "based its denial on an independent investigation," it "had an arguable reason for denying the claim." *Id*. at 417. The defendant was, therefore, entitled to summary judgment on the plaintiff's punitive damages claim.

So, too, here. The investigations by independent adjusters and by State Farm all establish that storm surge and waves flooded the interior of Plaintiff's one-story house by several feet. Ex. A at 440. This finding was confirmed during State Farm's reevaluation, *id*. at 447-48; Plaintiff's engineering study, Ex. E at 665, 668; by Plaintiff's neighbor, Ex. N at 10, 15; Ex. K at 15:22-16:25, 19:17-21:8; Plaintiff's wife, Ex. D at 34:1-7, 34:22-35:2, 36:25-37:21, 65:15-66:9; and even Plaintiff himself, Ex. E at 21:5-10, 36:15-20. Based on its investigations, State Farm paid Plaintiff for separate and independent wind damage, Ex. A at 334, 338, and denied the damages due to storm surge flooding and waves.

Mrs. Bossier's account also corroborates that State Farm's adjustment was reasonable. Before she and Plaintiff fled to the attic of the one-story house, none of the windows – which were held in the walls of the house – were broken. Ex. D at 30:20-31:18. To avoid drowning in the flood waters, the Bossiers fled to the attic around 8:00 a.m. the morning of Hurricane Katrina when Mrs. Bossier saw flooding coming up from the bay. *Id.* at 31:24-32:19, 34:22-35:2, 36:1-4.

Plaintiff's engineering study by Mr. Biddy reinforced the reasonable basis of State Farm's adjustment. He concluded that storm surge flooding caused widespread damage to the house, Ex. E at 665, and that there was "no absolutely precise way to divide the damages caused by wind or water." *Id.* at 661. Indeed, Mr. Ziz, who remained in the neighborhood during the storm, indicated that the land surrounding Plaintiff's house was dry at approximately 7:30 a.m., Ex. J ¶¶ 7-9, and was flooded with five-and-a-half feet of water at or before 8:00 a.m. Ex. N at 10, 15; *see also* Ex. K at 15:22-16:23, 19:17-21:8. This evidence of the rapidly rising flood waters further justifies State Farm's conclusion that storm surge was responsible for the damage to Plaintiff's house in the early morning hours. Additionally, State Farm's investigation into Plaintiff's boat claim found that the rising waters had lifted Plaintiff's boat and deposited it on the roof of Plaintiff's neighbor, which further confirms the height and severity of the flooding. Ex. A at 45.

State Farm's experts also confirm the reasonableness and legitimacy of State Farm's adjustments. Dr. Weisberg determined that "surge heights were substantial, as were the accompanying waves, " and that Plaintiff's "single-storied, wood-framed with brick veneer, slab-on-grade built house, with a finished floor elevation of 14.5 ft . . . would have been inundated to about 2/3rds of its interior height." Ex. F at 42. "Even at their peak magnitude[,] the wind forces would have been 10 times less than the forces by water" *Id.* at 42. As Dr. Weisberg concluded, "it is difficult to imagine how wind could have been the causative agent of damage" to Plaintiff's house. *Id.* at 22. Indeed, both Dr. Weisberg and Dr. Masters examined the damage to houses in the area, and Dr. Masters concluded that "almost all exhibit little to

15

no roof cover loss. If extreme wind loads were the cause of [Plaintiff's] building's destruction, the remaining buildings in close proximity would have suffered major loss or roofing material and uplift of part of all of the roof decking . . . This is simply not evident." Ex. H at 11-12.

For Plaintiff to meet his burden of proof on this element, it is not enough to show that State Farm's adjustment was incorrect. Plaintiff must show that State Farm had no reasonable basis. Yet he cannot. To the contrary, State Farm had far more than the required "some credible evidence" on which to base its adjustment, *Campbell*, 466 So. 2d at 851, which removes this case from the "egregious cases" for which punitive damages are reserved. *See Williams*, 936 So. 2d at 896.

### 2. Plaintiff Cannot Demonstrate That State Farm Adjusted His Claim with Malice or Gross Negligence in Reckless Disregard for His Rights

Plaintiff also fails his burden of proof on the second requirement for his punitive damages claim, which by itself, disposes of Plaintiff's claim in its entirety. As Your Honor has held, "the absence of an arguable reason does not per se establish that the insurer acted with malice or gross negligence or reckless disregard for the plaintiff's rights, since denial of the claim could be the result of an honest mistake or oversight, which would amount to ordinary and simple negligence." *King Enters.*, 982 F. Supp at 417 (Senter, C.J.) (internal quotation omitted); *Bryant v. Prime Ins. Syndicate, Inc.*, 2009 WL 982792, at *6 (S.D. Miss. Apr. 13, 2009) (Guirola, J.). "The plaintiff must still establish the egregious nature of the insurer's actions to be entitled to punitive or extracontractual damages." *King Enters.*, 982 F. Supp at 417.

"As a general rule, exemplary or punitive damages are not ordinarily recoverable in actions for breach of contract." *S. Cent. Bell v. Epps*, 509 So. 2d 886, 892 (Miss. 1987) (reversing submission of punitive damages to the jury). As the Mississippi Supreme Court has "repeatedly held," Plaintiff must demonstrate "aggression or some coloring of insult, malice, or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." *Id.* at 892-93 (citation omitted). Plaintiff's failure to do so, on its own, warrants summary judgment dismissing the punitive

16

damages claims. *See, e.g.*, *Bryant*, 2009 WL 982792, at *6-7; *Martin*, 998 So. 2d at 971; *Bostwick v. State Farm Fire & Cas. Co.*, 2008 WL 4539562, at *2 (S.D. Miss. Oct. 7, 2008) (Senter, J.); *Gunn v. Lexington Ins. Co.*, 2008 WL 2039543, at *3 (S.D. Miss. May 12, 2008) (Senter, J.).

Thus, even if State Farm "lacked an arguable basis" – and it did not – summary judgment is still warranted unless Plaintiff demonstrates by clear and convincing evidence that State Farm "committed a willful or malicious wrong, or acted with gross and reckless disregard for the [insured's] rights." *Bryant*, 2009 WL 982792, at *7; *accord* Miss. Code Ann. § 11-1-65(1)(a). Plaintiff cannot so demonstrate.

Here, there is no evidence that State Farm's adjustment of Plaintiff's claim was done with malice or gross negligence in reckless disregard of Plaintiff's rights. State Farm's personnel interviewed Plaintiff about the loss and dispatched an independent adjuster who visited the property shortly after Plaintiff submitted his claim. The independent adjuster analyzed the damage to Plaintiff's standing structure. State Farm paid Plaintiff according to the results of that investigation. Further, State Farm re-evaluated Plaintiff's claim pursuant to its agreement with the Mississippi Department of Insurance and attempted to mediate the dispute with Plaintiff. When Plaintiff submitted additional support for his claim, State Farm conducted a re-evaluation using another independent adjuster. At each stage of the investigation, State Farm reasonably adjusted Plaintiff's claim according to the available evidence and paid Plaintiff for his covered damages.

Plaintiff's "difference of opinion over the amount owed" falls far short of an independent tort for punitive damages. *Bostwick*, 2008 WL 4539562 at *2. Plaintiff has not produced and cannot produce any "evidence of gross, callous, or wanton conduct," *Moss*, 513 So. 2d at 931 – let alone the requisite clear and convincing evidence. Plaintiff simply cannot show that this is an egregious or extreme case. Therefore, State Farm is entitled to summary judgment on Plaintiff's claim for punitive damages.

**C.    The Extra-Contractual and Additional Damages Claims Fail as a Matter of Law**

**1.    Plaintiff Cannot Recover Extra-Contractual Damages as a Matter of Law**

Plaintiff's inability to meet his heavy burden for punitive damages also undermines his alleged claims for extra-contractual damages. Having "[a]n arguable reason" for a claims adjustment "shields the insurance company from liability for both punitive damages and extra-contractual damages." *Hans Constr.*, 995 F.2d at 56. As shown above, State Farm more than meets the standard for an arguable basis for its claims adjustment. Plaintiff cannot meet his burden to show otherwise. Just as having an arguable basis disposes of Plaintiff's punitive damages claim, it also disposes of Plaintiff's extra-contractual claims. *See id.* (affirming summary judgment for insurer on extra-contractual claim because it had an arguable basis for denying the claim); *Windmon v. Marshall*, 926 So. 2d 867, 874-75 (Miss. 2006). Accordingly, all of Plaintiff's claims for extra-contractual damages, including emotional distress, should be dismissed.

## 2. Plaintiff Cannot, as a Matter of Law, Recover Attorneys Fees

Plaintiff's inability to recover punitive damages bars any claim for attorneys fees. Without a "gross or willful wrong entitling [Plaintiff] to an award of punitive damages, the Mississippi Supreme Court has *never* approved of awarding attorneys fees" or trial expenses as extra-contractual damages. *Miller*, 631 So. 2d at 795 (emphasis added); *accord Spencer*, 891 So. 2d at 830 (trial expenses and attorneys fees); *Hamilton v. Hopkins,* 834 So. 2d 695, 700 (Miss. 2003) (attorneys fees); Miss. R. Civ. P. 54 cmt., para. 15 (attorneys fees and expenses); *see also Sobley*, 302 F.3d at 343 (attorneys fees). As demonstrated above, since Plaintiff cannot recover punitive damages, his claim for attorneys fees should also be dismissed.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant State Farm's motion for partial summary judgment in its entirety and dismiss all of Plaintiff's claims for punitive and extra-contractual damages, including attorneys fees and emotional distress. *See, e.g.*, Compl. ¶¶ 12-16, 21(b), 24-33, 35, 35(B), 35(D)-(F).

Dated:  August 7, 2009

Respectfully submitted,

*/s/  H. Benjamin Mullen*
H. BENJAMIN MULLEN, MSB # [####]
BRYAN, NELSON, SCHROEDER,
CASTIGIOLA & BANAHAN
Attorneys at Law
Post Office Drawer 1529
Pascagoula, MS 39568
(228) 762-6631
*Attorneys for Defendant*
*State Farm Fire and Casualty Company*

19

## CERTIFICATE OF SERVICE

I, **H. BENJAMIN MULLEN**, one of the attorneys for the Defendant, **STATE FARM FIRE & CASUALTY COMPANY**, do hereby certify that I have on this date electronically filed the foregoing document with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

DATED, August 7, 2009.

/s/ *H. Benjamin Mullen*
H. BENJAMIN MULLEN

H. BENJAMIN MULLEN
BRYAN, NELSON, SCHROEDER,
CASTIGLIOLA & BANAHAN
Attorneys at Law
Post Office Drawer 1529
Pascagoula, MS 39568
(228) 762-6631