**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**REGINALD EDWIN BOSSIER**                                                    **PLAINTIFF**

**VS.**                                     **CIVIL ACTION NO. 1:08-CV-00408-LTS-RHW**

**STATE FARM FIRE AND CASUALTY**                                  **DEFENDANT**
**COMPANY**

**STATE FARM FIRE AND CASUALTY COMPANY'S
TRIAL BRIEF**

## <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ...................................................................................................3

     A.      Plaintiff's Property and Insurance Policy ...........................................................3

     B.      Plaintiff's Homeowners Claim ...........................................................................4

     C.      State Farm's Re-evaluation of Plaintiff's Claim .................................................5

          1.      Ted Biddy's Report and Joseph Ziz's Affidavit.....................................6

          2.      State Farm's Responsive Investigation to Plaintiff's Additional Materials..............7

     D.      State Farm's Interview with Joseph Ziz .............................................................8

     E.      State Farm's Experts.........................................................................................10

     F.      Katie Bossier's Eyewitness Account.................................................................12

III.    PLAINTIFF IS NOT ENTITLED TO FURTHER PAYMENT UNDER HIS DWELLING COVERAGE...................................................................................12

IV.     PLAINTIFF IS NOT ENTITLED TO PERSONAL PROPERTY COVERAGE ........................15

V.      PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES...................................18

     A.      Plaintiff Cannot Show That State Farm Had No Arguable Basis for Its Adjustment of His Insurance Claim .........................................................19

     B.      Plaintiff Cannot Make the Required Showing That State Farm Adjusted His Claim with Malice or Gross Negligence in Reckless Disregard for His Rights...............23

VI.     PLAINTIFF IS NOT ENTITLED TO EXTRA-CONTRACTUAL DAMAGES FOR EMOTIONAL DISTRESS .................................................................................25

VII.    PLAINTIFF IS NOT ENTITLED TO ATTORNEYS FEES .......................................27

VIII.   PLAINTIFF IMPROPERLY SEEKS TO INTRODUCE EVIDENCE OF MULTIPLE PROPERTIES OTHER THAN PLAINTIFF'S PROPERTY.......................................28

IX.     PLAINTIFF IMPROPERLY SEEKS TO INTRODUCE STATE FARM TELEVISION COMMERCIALS INTO EVIDENCE AT TRIAL...................................................32

# I.    INTRODUCTION

In this action, Plaintiff claims that he is entitled to policy limits under his homeowners insurance for damage to his home during Hurricane Katrina, despite the fact that Plaintiff admits his home sustained flood damage. Plaintiff also seeks punitive damages and extra-contractual damages, including attorneys fees and emotional distress damages. *See, e.g.*, Compl. ¶¶ 12-16, 21(b), 24-33, 35, 35(B), 35(D)-(F).

Plaintiff's house sustained severe damage during Hurricane Katrina but remained standing. During the storm, Plaintiff and his wife remained at home, and Plaintiff reported to State Farm that "8 ft of water came through" the house during the storm and that "all personal property was washed out." Homeowners Claim File (Ex. P-1) at 454; [85-3] at 117:20-118:13; [85-4] at 21:5-10, 36:15-20; [85-5] at 34:1-7, 34:22-35:2, 36:25-37:21, 65:15-66:9. Eight feet of storm surge was more than sufficient to inundate Plaintiff's one-story, "slab-on-grade" house that was located near open water.

After State Farm investigated Plaintiff's claim, it determined that Plaintiff's property was severely damaged by flooding. State Farm ascertained that water levels in Plaintiff's home reached five to eight feet. Plaintiff did not have flood insurance. Based on its investigation, State Farm paid Plaintiff under his homeowners policy for separate and independent wind damage and denied those portions of the damage that were caused by flooding – an excluded peril.[1] The parties have stipulated that State Farm paid $2,310.28 on October 10, 2005; $13,561.85 (with interest) on June 19, 2008; and $77,607.80 (with interest) on August 31, 2009. Pretrial Order [171] at 10.

State Farm submits that Plaintiff is not entitled to any additional payment under his homeowners policy. The evidence at trial will establish that Plaintiff's house was primarily damaged by storm surge

---

[1] State Farm's water damage exclusion has been upheld as valid and enforceable by the Fifth Circuit. *See Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 353 (5th Cir. 2007). Similarly, just last month, the Mississippi Supreme Court in *Corban v. United Service Automobile Association*, – So.3d –, 2009 WL 3208704, at *7 (Miss. Oct. 8, 2009) (en banc), held that damage caused by storm surge is excluded by a water damage exclusion that is substantively indistinguishable from State Farm's: "This Court finds that 'storm surge' is plainly encompassed within the 'flood' or 'overflow of a body of water' portions of the 'water damage' definition, and no other 'logical interpretation' exists." *Id.* at *7 (citation omitted).

flooding, not wind, and did not sustain any covered wind damage in excess of the amount State Farm has paid Plaintiff. In addition, Plaintiff is not entitled to payment for loss to his personal property, because Plaintiff cannot meet his burden under the specified peril coverage applicable to personal property of showing that the damage to his contents was caused by a covered peril such as wind or rain entering the house by an opening caused by wind.

Plaintiff also cannot meet his burden of establishing his entitlement to extra-contractual or punitive damages. Both of those claims require Plaintiff to prove that State Farm had no arguable basis for its claims decision. The data, information, site inspections, engineering report, and expert reports considered by State Farm in making its claims determination more than meet the arguable basis standard under Mississippi law, which requires only that the insurer's claims determination be supported by "some credible evidence," even if there is evidence to the contrary. Because Plaintiff cannot meet that burden, Plaintiff's claims for extra-contractual and punitive damages fail as a matter of law.

Plaintiff's claim for punitive damages also requires Plaintiff to prove by clear and convincing evidence that State Farm acted with malice, gross negligence or reckless disregard in the handling of his claim – a burden which Plaintiff cannot meet. There is no evidence that State Farm acted with malice, was grossly negligent in its claims investigation, or acted with reckless disregard of Plaintiff's rights under the policy. Indeed, the evidence shows that State Farm was careful in its investigation of Plaintiff's claim, thoroughly considered information about the claim as it became available, and appropriately made payments based on the available evidence – even if it is ultimately determined that State Farm erroneously overlooked some covered wind damage.

In addition, as discussed below, Plaintiff's extra-contractual claim for emotional distress fails because Plaintiff cannot establish essential elements of that claim. Moreover, Plaintiff's extra-contractual claim for attorneys fees and trial expenses fails for the reason that Plaintiff as a matter of law cannot obtain punitive damages, which are a prerequisite for recovering such fees and expenses.

2

Furthermore, Plaintiff improperly seeks to introduce at trial evidence of multiple properties other than his own.[2]  As shown below, such evidence is irrelevant to the fundamental issue in this case, which is the losses to *Plaintiff's* property.  Such evidence concerning unrelated properties, therefore, should be excluded under Fed. R. Evid. 402.  Such evidence also should be excluded under Fed. R. Evid. 403 because its minimal probative value, if any, is substantially outweighed by the dangers of unfair prejudice to State Farm and of confusing and misleading the jury.  In addition, the introduction of such evidence would needlessly prolong and complicate the trial by injecting collateral issues concerning properties that are entirely unrelated to the present case.

Plaintiff also impermissibly seeks to introduce at trial several television commercials by State Farm that have nothing to do with Plaintiff's claim or with State Farm's adjustment of his claim.  As discussed below, these commercials should be excluded because they are irrelevant and would cause undue prejudice to State Farm and create a significant risk of confusing and misleading the jury.  *See* Fed. R. Evid. 401-403.

## II.    BACKGROUND

### A.    Plaintiff's Property and Insurance Policy

The evidence in this case will show that Plaintiff Reginald Edwin Bossier owned a waterfront house at 1987 Bayside Drive, Biloxi, Mississippi, where he resided with his wife, Katie Bossier.  K. Bossier Dep. [85-5] at 9:5-16; *accord* Biddy Rpt. (Ex. P-93) at 668; Compl. ¶ 1.  Plaintiff's house was a one-story, wood frame structure.  Ex. P-93 at 668.  The structure was built "slab-on-grade," placing the finished floor elevation only half a foot higher than the foundation.  *See* Weisberg Rpt. (Ex. D-54) at 17.  Plaintiff's property was approximately 8 feet above sea level at the lowest elevation according to

---

[2] This Court partially denied, without prejudice, State Farm's motion *in limine* to exclude evidence of properties other than Plaintiff's. [149, 166] State Farm hereby renews its request to exclude such evidence for the reasons stated herein.  *See* Point VIII *infra.*

measurements by his retained expert Rocco Calaci. Calaci Rpt. (Ex. P-97) at 13;[3] *see also* Masters Rpt. (Ex. D-52) at 6-7 (about 14 feet above sea level); Ex. D-54 at 17 (about 14.5 feet above sea level).

On August 29, 2005, Plaintiff's house sustained severe damage during Hurricane Katrina. *See* Ex. P-1 at 440. Plaintiff and his wife stayed at home during the storm. [85-5] at 17:7-10. At the time of his loss, Plaintiff did not have a flood insurance policy for his property, [85-4] at 29:23-25, and Plaintiff's homeowners policy excluded flood damage. Homeowners Policy (Ex. P-8) at 10.

### B.    Plaintiff's Homeowners Claim

On September 2, 2005, Plaintiff filed a claim under his homeowners policy. Ex. P-1 at 451. On September 9, 2005, claim representative Matthew Thiele interviewed Plaintiff and his wife about their loss on the telephone. *Id*. at 439. Plaintiff's wife said that "they saw water coming" during the storm "so they got up in the attic" of the one-story house. *Id*. Indeed, Plaintiff told State Farm that "8 ft of water came through" the house and that "all personal property was washed out." *Id*. at 454; [85-3] at 117:20-118:13.

Based on Plaintiff's account of the severe flooding at their house, State Farm team manager Tip Pupua ordered an inspection to investigate the loss and adjust Plaintiff's claim. Ex. P-1 at 439. From September 26 to October 5, 2005, independent adjuster Lee Ann Johnson repeatedly attempted to contact Plaintiff to schedule an inspection but was unsuccessful. *Id*. at 439-40. On October 6, 2005, Ms. Johnson spoke with Plaintiff's personal assistant and scheduled an inspection for the next day. *Id*. at 440.

On October 7, 2005, Ms. Johnson inspected Plaintiff's property to investigate the cause and extent of damages. *Id*. Because Plaintiff's house survived the storm, Ms. Johnson was able to inspect the remaining structure and surrounding area for physical evidence of the cause and extent of damage. *Id*. Ms. Johnson confirmed Plaintiff's account that "[t]he water line is appx. 8ft." *Id*.; *accord id*. at 454;

---

[3] Prior to trial, State Farm filed motions to exclude Plaintiff's experts Ted Biddy, Rocco Calaci, J. Daniel Schroeder, and Tim Shaw. [87], [89], [91]. This Court denied State Farm's motions. Oct. 9, 2009 Order [164]. State Farm reasserts that, for the reasons set forth in its moving papers, Plaintiff's experts should be precluded from testifying at trial. [87], [88], [89], [90], [91], [92].

*see* [85-3] at 117:20-118:13.  She observed damage to the walls and roof of Plaintiff's house and determined that the "front exterior wall has extensive flood damage and all other 3 walls are gone."  Ex. P-1 at 440.  Plaintiff's dwelling extensions were also "completely gone and washed away."  *Id*.  She concluded that "[t]he only visible and distinctive wind damage is to the roof."  *Id*.

Based on her inspection of the property, Ms. Johnson concluded that wind caused separate and independent damage to Plaintiff's roof and that the vast preponderance of damage to Plaintiff's waterfront home was caused by storm surge flooding.  *Id*. at 440-41.  On October 10, 2005, State Farm sent Plaintiff a check in the amount of $2,310.28 for the wind damage and denied coverage for the flood damage.  *Id*. at 334, 348.  For the next two years, Plaintiff requested nothing further from State Farm and submitted no further documents in support of the claim.

Plaintiff also submitted claims on other insurance policies, including a boat policy.  During Hurricane Katrina, Plaintiff's boat was attached to a trailer and stored at Plaintiff's home.  When State Farm investigated the boat claim, the adjustor found that the "raised waters" had lifted the boat and deposited it atop a neighbor's roof where it remained after the storm.

### C.    State Farm's Re-evaluation of Plaintiff's Claim

On May 1, 2008, Plaintiff submitted to State Farm an engineering report by Ted Biddy.  Ex. P-1 at 447.  Although Plaintiff apparently hired Mr. Biddy in February 2006, *see* Ex. P-93, Plaintiff did not submit his report to State Farm until more than two years later.  Ex. A at 447.  In addition, Plaintiff's counsel obtained an affidavit from Joseph Ziz, Plaintiff's neighbor, who purportedly had information regarding certain damage to Plaintiff's property during the hurricane.  *See* Ziz Aff. (Ex. P-29).  Mr. Ziz later made clear that he did not draft the affidavit and that his account of the speed and severity of the flooding was omitted by the author of the affidavit.  Ziz Dep. [85-12] at 44:3-11, 45:13-24. In light of these documents, State Farm re-evaluated Plaintiff's claim in May 2008.  Ex. P-1 at 447-48.

### 1.    Ted Biddy's Report and Joseph Ziz's Affidavit

Mr. Biddy inspected Plaintiff's house on January 27, 2006.  In his report, Mr. Biddy confirmed that storm surge flooding caused the great preponderance of damage to Plaintiff's property.  Though he found that wind caused damage, he concluded that the "waters of the storm enter[ed] the house to a depth of 3.5 feet."  Ex. P-93 at 668.  He stated that the storm surge waters "destroyed the remaining furnishings; the wallboards; the electrical wiring; all floor coverings; the storage areas; and all other items making contact with the water that the winds had not already destroyed."  *Id.* at 665.  Despite his lengthy analysis, Mr. Biddy ultimately concluded that "[t]here is no absolutely precise way to divide the damages caused by wind or water."  *Id.* at 661.

Mr. Ziz also provided additional information.  He lived "[j]ust across the street" from Plaintiff, [85-12] at 36:8-11, and confirmed that flooding struck Plaintiff's house, but he did not observe any wind damage.  At about 7:30 a.m., Mr. Ziz heard loud winds in the area.  Ex. P-29 ¶ 7.  He later estimated the speed of the winds at "[p]robably 50, 60 miles an hour," [85-12] at 12:13-15, noting that a neighbor of his was still able to "walk[] over" to Mr. Ziz's house during the storm.  *Id.* at 13:8-18.  Although he remembered that Plaintiff's fence and "detached accessory building" were "gone," Mr. Ziz did not see wind cause any damage.  Ex. P-29 ¶ 8.  Yet when Mr. Ziz looked out the door, he saw "a high, or flood tide" arrive, "but the water of the Bay had not yet reached the Bossiers' residence."  *Id.* ¶ 9.

As explained below, *see* Point II.D *infra*, State Farm interviewed Mr. Ziz to ascertain what damage, if any, he saw occur to Plaintiff's property.  Though he did not see any wind damage, Mr. Ziz confirmed that storm surge flooding struck his neighborhood in the early morning hours of the storm.  *Id.* In relating the information that would eventually be used by Plaintiff to draft Mr. Ziz's affidavit, Mr. Ziz mentioned the speed and severity of his neighborhood's flooding.  *See* [85-12] at 45:7-21.  But the author of the affidavit – Plaintiff's counsel Stanton Fountain -- omitted these important details.[4]  *Id.* at

---

[4] On its face, the affidavit does not directly identify separate and independent wind damage.  State Farm reasonably concluded that the purported affidavit, without more, was not sufficient to show that wind destroyed Plaintiff's dwelling

45:22-24.

## 2.    State Farm's Responsive Investigation to Plaintiff's Additional Materials

Using the additional documents by Mr. Biddy and Mr. Ziz, State Farm conducted another review of Plaintiff's claim in May 2008.  *See* Ex. P-1 at 448-50; Re-Evaluation Summary (Ex. P-1 at 682-85). With regard to the Biddy Report, independent adjuster Shellie Leverett determined that the actual damages to Plaintiff's house and the surrounding properties showed that the flood height was greater than Mr. Biddy supposed.  Ex. P-1 at 684.  FEMA's findings of a five- to six-foot water level above grade were greater than Mr. Biddy's opinion that the water line reached three-and-a-half feet above the ground-level finished floor.  *Id*. at 448, 684.

As for Mr. Ziz's affidavit, Ms. Leverett noted that Mr. Ziz's statement does not show that he saw any actual damage occurring to Plaintiff's house.  *Id*. at 685.  To ascertain whether Mr. Ziz witnessed any covered damage, Ms. Leverett attempted to contact Mr. Ziz by phone and letter on several occasions, but she was unable to reach him.[5]  *Id*. at 340, 448-50, 682-83.  Plaintiff's counsel was also unable to contact Mr. Ziz for a subsequent interview.  *Id*. at 450, 682.

---

extension.  Without having the opportunity to discuss the affidavit with Mr. Ziz, State Farm had no ability to ascertain the credibility of his purported recollections.  Nor could State Farm determine whether Mr. Ziz actually signed the affidavit and that it faithfully and accurately reflected his recollection of events.  In fact, as Mr. Ziz later confirmed, Plaintiff's counsel, Stanton Fountain, was intimately involved in crafting Mr. Ziz's affidavit:  Plaintiff's counsel called Mr. Ziz, instructed him to come to Plaintiff's counsel's office, and wrote the affidavit for Mr. Ziz.  [85-12] at 43:10-45:24.  Yet, when drafting Mr. Ziz's affidavit, Mr. Fountain omitted many material facts of the speed and severity of the flooding around Plaintiff's house, all of which Mr. Ziz testified he told Mr. Fountain.  *Id*.  Although drafted by Mr. Fountain, on its face, Mr. Ziz's affidavit leaves unanswered a number of basic questions relevant to Plaintiff's claim that would be needed to make an adjustment decision based on the affidavit alone, especially because it indicates that Mr. Ziz did not actually see the loss occur.  For example, while the affidavit states that storm surge "had not yet reached" the dwelling extension slab when Mr. Ziz noticed the structure was "gone," it does state that there was a "high, or flood, tide" at that time.  Ex. P-29 ¶¶ 8, 9.  However, the affidavit does not state how high this "flood tide" was, whether it had any waves, or how close it was to the dwelling extension when Mr. Ziz noticed the structure was gone.  Nor does the affidavit state how strong the winds were when he sought shelter in his hallway or when he noticed Plaintiff's loss, but only that he heard "'roars'" at approximately 7:30 a.m.  *Id*. ¶ 7.  The affidavit also does not state how high the waters of the Back Bay were when he retreated to his hallway, nor does it state how long he stayed there before returning to his front door and noticing the loss.  *Id*. ¶ 8.  All these reasonable questions about the content of the affidavit justify State Farm's decision to contact Mr. Ziz to learn more and undercut Plaintiff's argument that the affidavit is, on its own, sufficient to overcome State Farm's reasonable reservations.

[5]  In denying State Farm's motion for partial summary judgment as to punitive and extra-contractual damages, this Court asserted that State Farm had Mr. Ziz's "contact information and knew his whereabouts."  Sept. 17, 2009 Order [132] at 1.  In fact, the evidence is that State Farm repeatedly attempted to use Mr. Ziz's contact information to reach him by phone and letter but was unsuccessful.  Ex. P-1 at 340, 448-50, 682-83.

In addition to the Biddy Report and Ziz Affidavit, Ms. Leverett analyzed Plaintiff's claim file, ground and aerial photographs, activity logs, damage estimate, appraisal report, public information from FEMA and NOAA websites, and prior claims. *See id.* at 682-85. She found that Plaintiff's roof was at least 15-20 years old, that there were "severe interior leaks coming from roof-to-wall connections and chimney flashing," and that missing siding from Plaintiff's house "was the only severe wind-related breach in the exterior of the dwelling." *Id.* at 683. She noted that the "interior drywall remained intact" and that it was "likely that additional damages did occur to the interior" due to lack of "mitigation or repairs following Hurricane Katrina." *Id.* Thus, Ms. Leverett concluded that damages depicted in the Biddy Report were "due in part to pre-existing conditions, lack of mitigation, and repeated exposure following Hurricane Katrina." *Id.*; *see also* Leverett Dep. [85-14] at 164:15-165:21.

Based on her re-evaluation, Ms. Leverett recommended that State Farm's damages estimate should be revised to account for further repairs to wind-damaged portions of the house. Ex. P-1 at 682-83; [85-14] at 23:18-24:11. These repairs included "replacing all of the roof covering, replacing the missing synthetic stucco siding and all related items such as trim, flashing, painting, etc." Ex. P-1 at 683. Ms. Leverett attached a Statement of Loss to her report that recommended an additional disbursement to Plaintiff. *Id.* at 681. Based on Ms. Leverett's independent analysis, State Farm issued an additional payment of $13,561.85, which included interest. *See id.* at 343.

### D.    State Farm's Interview with Joseph Ziz

Following Ms. Leverett's revisions, State Farm continued to seek out Mr. Ziz to ascertain whether he saw any other covered damage to Plaintiff's property when he remained at home during the storm. On May 11, 2009, State Farm successfully located Mr. Ziz for an interview. *See* Ziz Interview Tr. (Ex. P-104). During the interview, Mr. Ziz provided further details about the timing of events in Plaintiff's neighborhood on August 29, 2005.[6] He recalled that by 8:00 a.m. the water was "probably

---

[6] After this interview, Plaintiff's counsel and State Farm agreed to depose Mr. Ziz as part of the discovery in this case. State Farm received the transcript of his deposition on or about July 31, 2009. On August 31, 2009, State Farm tendered to Mr.

five foot five and a half foot maybe" and that "the water came up a little higher after that then stayed like that most of the day." *Id.* at 10; *see also* [85-12] at 16:3-23 (noting that the water was "neck deep" by "about 7:45, 7:50), 20:2-7, 22:20-23:14 (recalling the water level at "four-and-a-half feet" by 8:00 a.m.) Mr. Ziz also stated that he "[p]aid no attention" to Plaintiff's home and "couldn't tell you anything about the house." Ex. P-104 at 11; *see also* [85-12] at 13:8-18, 21:9-13.

When asked specifically about the depth of the water in his own house, Mr. Ziz recalled "five and a half feet of standin' water." Ex. P-104 at 15; *see also* [85-12] at 20:2-7 ("four-and-a-half feet"). Mr. Ziz estimated that his home – which was farther from the bay than Plaintiff's house – was "maybe a couple feet" higher than the elevation of Plaintiff's home. Ex. P-104 at 1-2, 15; *see also* [85-12] at Ex. 1. Therefore, Mr. Ziz agreed that the water level in Plaintiff's home could have reached seven or eight feet. Ex. P-104 at 15.

Moreover, although Mr. Ziz had previously recounted that the storm surge had not yet reached Plaintiff's home at 7:30 a.m., *see* Ex. P-29 ¶¶ 7-9, he later stated that by 8:00 a.m. – only a half hour later – the water had already reached five-and-a-half feet deep, and "stayed like that most of the day." Ex. P-104 at 10. Indeed, at his deposition, Mr. Ziz confirmed the speed and severity of the flooding:

> A.    So we started [to drive] out of the neighborhood. Approximately maybe a tenth of a mile, if that far, there's a tree across the road, so there's no getting out on the Hillside. And about that time I glanced in my mirror and I see water coming and I tell my wife, I said, just hold on. I said, here it comes.
>
> Q.    Okay. And was – when you say, "here it comes," was there something about the water that –
>
> A.    It was just – it was – it was like it went from dry ground to we were under water in 30 seconds. I mean, it moved that quick.

[85-12] at 15:6-16:2. Mr. Ziz and his family exited the submerged truck at around 7:45 a.m. to escape and were already "neck deep" in flooding while Mr. Ziz was "carrying my daughter above my head." *Id.*

---

Bossier $77,607.80, his dwelling extension policy limits plus interest dating back to October 2005 for his outbuilding and fence. State Farm does not concede that the dwelling extension loss was covered but rather, based on now having a more complete picture of the evidence, it would give Mr. Bossier the benefit of the doubt as to the outbuilding and fence.

at 16:3-23.  Mr. Ziz and his family broke into a nearby house and climbed to the second floor to escape the flooding.  *Id*. at 16:14-25.  That house was higher and farther from the bay than Mr. Ziz's and Plaintiff's properties,[7] and Mr. Ziz recalled that the water rose to "about four-and-a-half feet" inside that house.  *Id*. at 19:21-20:13.  Indeed, the house where Mr. Ziz and his family sheltered remained flooded through 4:00 that afternoon.  *Id*.  To be sure, Plaintiff and his wife have both admitted that their house was flooded during Hurricane Katrina.  *See* [85-5] at 34:1-7, 34:22-35:2, 36:25-37:21, 65:15-66:9; [85-4] at 21:5-10, 36:15-20.

### E.    State Farm's Experts

After Plaintiff filed suit, State Farm retained Forrest Masters, Ph.D., and Robert H. Weisberg, Ph.D., to further study the cause of damage to Plaintiff's property.  Their analysis reinforces the reasonableness of State Farm's adjustment.

Dr. Masters is an assistant professor of civil and coastal engineering at the University of Florida. Ex. D-52 at 26.  He holds a Ph.D. and a masters degree in civil and coastal engineering.  *Id*. at 27.  In his report, Dr. Masters incorporates his own field reconnaissance in the region before and after Hurricane Katrina, inspection of Plaintiff's property, analysis of NOAA surface wind fields and aerial photography, and simulation of storm surge and waves using ADCIRC and SWAN models.  *Id*. at 3.

Dr. Masters determined that the storm surge flooding at Plaintiff's property reached 20 feet with peak wave height at a minimum of 1-2 feet.  *Id*. at 7.  Dr. Masters also found that "damage to the exterior perimeter wall, which received the brunt of the surge and wave forces, is far more severe [than damage to the roof]."  *Id*. at 9.  He concluded that "these walls were approximately 50-75% underwater during the arrival of the peak winds."  *Id*.  Taking into account the height of Plaintiff's home structure

---

[7] During his deposition, Mr. Ziz marked several locations on a map of the area to describe his experience.  *See* [85-12] at Exhibit 1.  According to Mr. Ziz, the location of his property is marked "A," Plaintiff's property is labeled "B", the spot where the road was blocked by a fallen tree is marked with an "X," and the person's house in which Mr. Ziz and his family took refuge is indicated with an "I."  *See id*. at 17:12-19:10.  The location of this person's house is up Hillside Drive and farther from the bay than both Mr. Ziz's property and Plaintiff's property.

and the rise in storm surge, Dr. Masters estimated peak wind gusts to be 101 miles per hour.  *Id*. at 7.  In examining houses in the surrounding area, Dr. Masters noted that "almost all exhibit little to no roof cover loss.  If extreme wind loads were the cause of [Plaintiff's] building's destruction, the remaining buildings in close proximity would have suffered major loss of roofing material and uplift of part of all of the roof decking . . . .  This is simply not evident."  *Id*. at 11-12.

Dr. Weisberg also evaluated the cause of damage to Plaintiff's property.  *See* Ex. D-54.  Dr. Weisberg is a Distinguished Professor of Physical Oceanography in the College of Marine Science at the University of South Florida, where he studies "ocean circulation and ocean-atmosphere interaction."  *Id*. at 44.  He is director of the USF Ocean Circulation Group and co-director of the USF Coastal Ocean Modeling Prediction System.  *Id*.  He holds Ph.D and masters degrees in physical oceanography.  *Id*.  In analyzing the causes of damage to Plaintiff's property, Dr. Weisberg relied on his physical inspection of the property, aerial photographs, NOAA post-storm wind analysis, analysis of wind studies, FEMA weather data, wave and wind force calculations, and topographical data.  *Id*. at 3, 16-42.

Dr. Weisberg remarked upon "the proximity of open water" to Plaintiff's house, "its relatively low-lying elevation," and "the rising surge and waves."  *Id*. at 16.  He determined that "surge heights were substantial, as were the accompanying waves," and that Plaintiff's "single-storied, wood-framed with brick veneer, slab-on-grade built house, with a finished floor elevation of 14.5 ft, . . . would have been inundated to about 2/3rds of its interior height."  *Id*. at 42.  He found "little evidence of severe roof damage" to other homes in the area, which experienced "bottom-up, not top-down" damage, *id*., leading him to conclude that "it is difficult to imagine how wind could have been the causative agent of damage."  *Id*. at 22.  Noting that "[e]ven at their peak magnitude the wind forces would have been 10 times less than the forces by water,"  Dr. Weisberg concluded that "water-related forces are likely what damaged [Plaintiff's] house as soon as the combined surge and waves impacted the finished floor level (~915AM)."  *Id*. at 42.

11

### F.    Katie Bossier's Eyewitness Account

Plaintiff and his wife, Katie, remained at home during the storm.  Mrs. Bossier testified at her deposition that they fled to the attic around 8:00 a.m. the morning of Hurricane Katrina when Mrs. Bossier saw flooding coming up from the bay.  K. Bossier Dep. [85-5] at 31:24-32:19, 36:1-4.  Among other reasons, Mrs. Bossier stated that they fled to the attic to avoid drowning.  *Id*. at 34:22-35:2.  Mrs. Bossier recalled that, before they ascended to the attic of the one-story house, none of the windows – which were held in the walls of the house – were broken.  *Id*. at 30:20-31:18.

## III.    PLAINTIFF IS NOT ENTITLED TO FURTHER PAYMENT UNDER HIS DWELLING COVERAGE

Plaintiff alleges that his house sustained additional losses that are covered by his homeowners policy beyond the losses that State Farm already paid.  The Mississippi Supreme Court has recently clarified the principles of Mississippi law applicable to such claims for losses under an open peril homeowners insurance policy following Hurricane Katrina.  *Corban v. United Servs. Auto. Ass'n*, – So. 3d –, 2009 WL 3208704 (Miss. Oct. 8, 2009) (en banc).  The Mississippi Supreme Court in *Corban* held that the insured, Plaintiff here, is "required to prove a 'direct, physical loss to property described.'"  *Id.* at *14 (quoting policy); *see also Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 625 (5th Cir. 2008) ("'Under Mississippi law a plaintiff has the burden of proving a right to recover under the insurance policy sued on,' and this basic burden never shifts from the plaintiff.'") (citation omitted).

State Farm anticipates that Plaintiff at trial may attempt to satisfy his burden of proof merely by pointing to the totality of damage to his house at the conclusion of Hurricane Katrina.  Yet, such an approach by Plaintiff would be insufficient under *Corban* to satisfy his burden of proving accidental direct physical loss under the policy.  Under *Corban*, proving "damage" is not the same as proving that a "loss" occurred, and the Mississippi Supreme Court in *Corban* criticized courts and parties that have "conflated the terms 'loss' and 'damage.'"  *Corban*, 2009 WL 3208704 at *8.  "The policy does not cover or exclude 'damage,' but rather covers or excludes 'loss,' and it is to 'loss' that the deductible is applied."

12

*Id*. In an event like Hurricane Katrina, there are different forces, "at different times, causing different damage, resulting in separate losses." *Id*. at *10. Thus, the term "loss" "*should not*" refer to the "totality of the damage." Id. at *9 (second emphasis omitted; quoting *Appleman on Insurance* § 192.03[H] (2009)). Indeed, the Mississippi Supreme Court in *Corban* rejected the view "that loss is not determined until the hurricane is over." *Id*. at *13. Rather, there may be "'*many losses* because property can consist of *many elements*.'" *Id*. (emphasis in original); *see also Dickinson v. Nationwide Mut. Fire Ins. Co.*, 2008 WL 941783, at *5 (S.D. Miss. April 4, 2008) (Senter, J.) (forces "may cause damage to different parts or items of the insured property").[8] Therefore, under *Corban*, Plaintiff cannot discharge his burden of proving an accidental direct physical loss merely by pointing to the totality of the damage to his house at the conclusion of Hurricane Katrina.

Similar to the insurance policy at issue in *Corban*, Plaintiff's homeowners policy insures for "accidental direct physical loss," not damage. Ex. P-8 (Homeowners Policy) at 7. Plaintiff's theory in this case is that he sustained a loss (or losses) to his house before storm surge flooding arrived. Applying his theory to the *Corban* framework, Plaintiff must prove by a preponderance of the evidence that this pre-surge loss (or losses) actually occurred. It is immaterial to Plaintiff's initial burden whether any other loss occurred later because each loss comes into being (if at all) at the moment it happens:

> No reasonable person can seriously dispute that if a loss occurs, caused by either a covered peril (wind) or an excluded peril (water), that particular loss is not changed by any subsequent cause or event. . . . The insured's right to be indemnified for a covered loss vests at the time of loss. Once the duty to indemnify arises, it cannot be extinguished by a successive cause or event. The same principle applies in reverse. In the case of a loss caused by an excluded peril, that particular loss is not changed by any subsequent covered peril or event. Nor can that excluded loss become a covered loss, after it has been suffered.

---

[8] *See generally* David P. Rossmiller, 20 NEW APPLEMAN ON INS.: CURRENT CRITICAL ISSUES IN INS. LAW III, *Katrina in the Fifth Dimension: Hurricane Katrina Cases in the Fifth Circuit Court of Appeals* at Part III.A.2 (Apr. 2008) ("[T]he key to understanding this [causation and multiple forces] is to step back from the view that it is the house that is insured. Although in common parlance this is true, it is not true in a causation analysis, and only confusion can come of such a view. Instead of the house being insured, what is insured in the Nationwide policy is 'accidental direct physical loss to property.' Under this definition, a house is not one property, but many properties, each of which can suffer 'loss' within the policy.") (footnote omitted)

*Corban*, 2009 WL 3208704, at *9 (citations omitted).

Likewise, this Court has recognized that "[w]ind damage that precedes the arrival of the storm surge and damage that happens after the storm surge arrives are separate losses." *Dickinson v. Nationwide Mut. Fire Ins. Co.*, 2008 WL 1913957, at *3 (S.D. Miss. April 25, 2008) (Senter, J.); *see also Corban*, 2009 WL 3208704, at *13 ("'The insurance benefits that apply to this covered loss vest in the insured at the time the loss occurs.'") (quoting *Dickinson*, 2008 WL 1913957, at *4). Moreover, if Plaintiff proves an accidental direct physical loss, Plaintiff must also prove the dollar value of that loss. Mississippi law requires a plaintiff to prove "not only the fact of his injury, but the extent of the injury in order to support an award of monetary damages," *Savage v. LaGrange*, 815 So. 2d 485, 491 (Miss. Ct. App. 2002) – a principle that applies equally in the insurance context. *See Home Ins. Co. v. Greene*, 229 So. 2d 576, 579 (Miss. 1969) (noting that "[a]n insured seeking recovery on a policy insuring against fire has the burden of proving the loss and its extent").

If Plaintiff meets his burden to prove that his house sustained an accidental direct physical loss, then State Farm bears the burden to prove by a preponderance of the evidence that the loss Plaintiff identified was caused by an excluded peril. *Corban*, 2009 WL 3208704, at *14. State Farm does not bear this burden until Plaintiff first identifies an accidental direct physical loss. *Id*. ("*Thereafter*, [the insurer] assumes the burden to prove, by a preponderance of the evidence, that the causes of the losses are excluded by the policy . . . .") (emphasis added). State Farm may satisfy its burden by showing that the loss Plaintiff first identified was caused or concurrently contributed to by storm surge flooding, an excluded peril. *Id*. If Plaintiff identifies a loss and State Farm does not show that the identified loss is excluded, then *Corban* holds that the identified loss should be indemnified. *Id*. at *14.

In this case, the evidence at trial will show that State Farm properly and correctly adjusted Plaintiff's homeowners claim. State Farm paid to replace all the roof covering, paid for missing siding, and paid for related repairs to trim, flashing, and paint, and State Farm paid the full policy limits for

Plaintiff's dwelling extension.   The parties have stipulated that for these items, State Farm paid $2,310.28 on October 10, 2005; $13,561.85 (with interest) on June 19, 2008; and $77,607.80 (with interest) on August 31, 2009.  Pretrial Order [171] at 10.  Plaintiff cannot demonstrate at trial that his house sustained any further and compensable accidental direct physical losses.

## IV.    PLAINTIFF IS NOT ENTITLED TO PERSONAL PROPERTY COVERAGE

Plaintiff also claims that he should receive payments for losses to his personal property under his homeowners policy.   Plaintiff's personal property coverage insures against "accidental direct physical loss to property described in Coverage B caused by the following perils," which are enumerated in the policy.  Ex. P-8 (Homeowners Policy) at 7.  Both the Fifth Circuit and the Mississippi Supreme Court have held that under such named peril coverage, Plaintiff bears the burden to prove by a preponderance of the evidence that his items of personal property sustained an accidental direct physical loss caused by an enumerated peril.  *Corban*, 2009 WL 3208704, at *15 ("Under 'named perils' coverage, the burden of proof rests with the insured 'to prove that the damages sustained were covered by the peril insured against . . . .'") (citation omitted); *Broussard*, 523 F.3d at 625 (under "named peril" coverage, plaintiff "'has the burden of proving that any losses were caused by a peril covered by the policy'") (citation omitted).

Thus, to make out a prima facie case for coverage, Plaintiff has the burden of proving, as a threshold matter, that his personal property was damaged by one of the perils specifically enumerated in the relevant coverage provisions – in this case, "windstorm," including rain entering the dwelling through an opening caused by the direct force of wind.  *See Corban*, 2009 WL 3208704, at *15 ("with respect to the 'named perils' coverage of 'Coverage C – Personal Property,' the [plaintiffs] are required to prove, by a preponderance of the evidence, that the 'direct physical loss' to the property described in Coverage C was caused by wind"); *Lunday v. Lititz Mut. Ins. Co.*, 276 So. 2d 696, 698-99 (Miss. 1973) (under specified peril policy insuring against "direct loss by windstorm" it was Plaintiff's burden "to prove that the damages sustained were covered by the peril insured against, that is, by direct action of

the wind").  To satisfy this burden, Plaintiff must prove both that his property was damaged as a result of wind *and* the amount of damage that the wind caused.  Should he fail in either particular, his contents coverage claim necessarily fails, and judgment must be entered for State Farm.

Moreover, under Fifth Circuit and Mississippi Supreme Court precedent, Plaintiff's burden cannot be satisfied by a showing that the contents of Plaintiff's house were destroyed simply as a result of Hurricane Katrina.  As the Fifth Circuit concluded in *Broussard*, "a stipulation that the Broussards' personal property was destroyed by Hurricane Katrina is insufficient to establish that it was destroyed by a windstorm, since Hurricane Katrina unleashed both wind and water forces."  523 F.3d at 624-25. Rather, as the Mississippi Supreme Court held in *Corban*, Plaintiff has the burden of showing that his personal property losses were "*caused by wind*."  2009 WL 3208704, at *15 (emphasis added); *see also Lunday*, 276 So. 2d at 699 ("the burden of proof was on the plaintiff to prove that the damages sustained were covered by the peril insured against, that is, by direct action of the *wind*," thus, "negativ[ing] the proposition that the damages were caused by tidal or surface water.") (emphasis added); *Lititz Mut. Ins. Co. v. Boatner*, 254 So. 2d 765, 767 (Miss. 1971) (in Hurricane Camille case, holding that to establish "windstorm damage," it is "'sufficient to show that wind was the proximate or efficient cause of loss or damage'") (emphasis added; citation omitted); *Kemp v. Am. Universal Ins. Co.*, 391 F.2d 533, 535 (5th Cir. 1968) (defining policy term "windstorm" as "'any *wind* . . . of such extraordinary force and violence as to thereby injuriously disturb the ordinary condition of things insured'") (emphasis added; citation omitted).[9]  Therefore, to treat Hurricane Katrina as "windstorm" is error.  *Broussard*, 523 F.3d at 624 ("The district court erred when it found that the destruction of the Broussards' personal property by Hurricane Katrina was sufficient to establish the separate assertion that the property was destroyed by 'windstorm,' a 'named peril' under the Broussards' personal property coverage.").

---

[9] *See also Firemen's Ins. Co. v. Schulte*, 200 So. 2d 440, 442 (Miss. 1967) (in Hurricane Betsy case involving "Windstorm" policy, question for jury was "whether the loss was caused directly by reason of windstorm, or whether water, even if driven by wind, either caused or contributed to, or aggravated the plaintiff's loss").

In the trial of this case, Plaintiff will not be able to show by a preponderance of the evidence that his personal property sustained an accidental direct physical loss from wind. On the contrary, the evidence will show that storm surge flooding and waves inundated Plaintiff's house and caused the damage to his personal property.

Moreover, Plaintiff will not be able to show at trial that he satisfied the requisite conditions and duties that Plaintiff must fulfill with regard to his claim for personal property. Under "**SECTION I – CONDITIONS**," the policy provides as follows:

> **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed: . . .
>
> c. prepare an inventory of damaged . . . personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory . . . .

Ex. P-8 (Homeowners Policy) at 13 (emphasis in original). Plaintiff's policy further states in the "**Suit Against Us**" provision that "[n]o action shall be brought unless there has been compliance with the policy provisions." *Id.* at 14. Plaintiff cannot show at trial that he complied with the conditions and duties set forth in his homeowners policy.[10]

These policy requirements are clear, unambiguous, and enforceable. The Mississippi Supreme Court has held that courts "are bound to enforce contract language as written and give it its plain and ordinary meaning." *Miss. Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1266 (Miss. 2002) (en

---

[10] To carry his burden, Plaintiff must prove both the fact and extent of his personal property loss. *Home Ins. Co. v. Greene*, 229 So. 2d 576, 579 (Miss. 1969) ("An insured seeking recovery on a policy . . . has the burden of proving the loss and its extent"); *see also Harbor House Condo. Ass'n v. Mass. Bay Ins. Co.*, 915 F.2d 316, 318 (7th Cir. 1990) ("It is not enough to show that a loss *may* have occurred. *Plaintiffs must prove the nature, extent or amount of their loss to a reasonable degree of certainty* before any award of damages can be made under the policy." (second emphasis added)). Plaintiff did not submit a contents list to State Farm as part of his claim. Plaintiff only produced a contents list in response to discovery. Yet that list is facially defective under the policy and incompetent to satisfy Plaintiff's burden. Plaintiff's list does not describe many of the specific items Plaintiff alleges were damaged, attach any receipts, declare the age for any item, or include any photographs to substantiate the alleged loss, as Plaintiff must under the policy, Ex. P-8 at 13. The list does not explain the cause or degree of damage to any item or explain any potential salvage value. Some items are hopelessly vague, such as "lawn equip." or "exercise equipment." Other items are commingled without any value declared for individual items (*e.g.*, "antique furniture various pieces family heirlooms"), and because Plaintiff aggregated several items as one line-items, the $5,000 limit for the loss of an article is impermissibly obscured. *See* Ex. P-8 at 4. The multiple defects in Plaintiff's personal property inventory render it manifestly improper under the policy.

banc); *see also Wiley v. State Farm Fire & Cas. Co.*, – F.3d –, 2009 WL 3233528, at *3 (5th Cir. Oct. 9, 2009) (Mississippi contract law "begins with the text and applies the familiar 'four corners test,' which focuses exclusively on 'an objective reading of the words employed in the contract'") (citation omitted). "Where the contract is unambiguous, the 'parties are bound by the language of the instrument.'" *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 404 (Miss. 1997) (quoting *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987)). Here, the policy language unmistakably requires Plaintiff to substantiate his personal property loss, and his failure to do so undermines his claim for personal property damage.

## V.    PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES

Plaintiff cannot meet his heavy burden of proof to sustain his punitive damages claim. "Mississippi law does not favor punitive damages" because "they are considered an extraordinary remedy," *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (Miss. 2006), reserved only for "'the most egregious cases.'" *Hartford Underwriters Ins. Co. v. Williams*, 936 So. 2d 888, 896 (Miss. 2006) (citation omitted); *Cmty. Bank v. Courtney*, 884 So. 2d 767, 783 (Miss. 2004) ("extreme cases"). Accordingly, Mississippi law imposes on Plaintiff an especially "'heavy burden'" of proof to maintain a claim for punitive damages. *U.S. Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 971 (Miss. 2008) (citation omitted).

Specifically, Plaintiff bears the burden to demonstrate that State Farm adjusted his claim both "'(1) without an arguable or legitimate basis, either in fact or law, *and* (2) with malice or gross negligence in disregard of the insured's rights.'" *Broussard*, 523 F.3d at 628 (emphasis added; citation omitted). As a matter of law, Plaintiff must make such a showing with "clear and convincing evidence," *see, e.g.*, Miss. Code Ann. § 11-1-65(1)(a); *accord Haygood v. First Nat'l Bank of New Albany*, 517 So. 2d 553, 555 (Miss. 1987). To defeat Plaintiff's punitive damages claim, "State Farm . . . 'need only show that it had reasonable justifications, either in fact or in law, to deny payment.'" *Broussard*, 523 F.3d at 628 (citation omitted). "An arguable reason" for a claims adjustment "shields the insurance company

18

from liability for both punitive damages and extra-contractual damages." *Hans Constr. Co. v. Phoenix Assurance Co.*, 995 F.2d 53, 56 (5th Cir. 1993).

As the Fifth Circuit has held, "[b]oth elements – an intentional wrong, insult, abuse, or gross negligence *and* the absence of a legitimate or arguable reason for denial – must be satisfied." *Fairly v. Crowell*, 231 F. App'x 316, 319 (5th Cir. 2007) (emphasis in original); *see also U.S. Fid. & Guar. Co. v. King Enters., Inc.*, 982 F. Supp. 415, 416 (N.D. Miss. 1997) (Senter, J.) ("[T]o prevail on a claim for either punitive or extracontractual compensatory damages, the plaintiff must show, in addition to the absence of any arguable reason, that the insurer acted with malice or reckless disregard for his rights."). As shown below, Plaintiff cannot meet either of these requirements.

### A.  Plaintiff Cannot Show That State Farm Had No Arguable Basis for Its Adjustment of His Insurance Claim

Plaintiff cannot satisfy his burden of proof on the first element of his punitive damages claim, namely, to demonstrate that State Farm had no "arguable or legitimate basis" for its adjustment of his claim. *See Broussard*, 523 F.3d at 628. The question of whether an insurer had an arguable basis for its adjustment of a claim is, in the first instance, "'an issue of law for the court.'" *Id.* (citation omitted). An arguable basis is defined as "'one in support of which there is *some* credible evidence,'" even though "'[t]here may well be evidence to the contrary.'" *Tipton v. Nationwide Mut. Fire Ins. Co.*, 381 F. Supp. 2d 572, 579 (S.D. Miss. 2004) (quoting, *inter alia, Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So. 2d 833, 851 (Miss. 1984)). To show that State Farm had no arguable basis, it is not enough for Plaintiff to cite evidence suggesting that wind damaged the house prior to the storm surge. *Broussard*, 523 F.3d at 628. An arguable basis is not measured by the ultimate correctness of State Farm's adjustment, but by whether State Farm's reason for adjusting Plaintiff's claim had any "arguable merit." *Sobley v. S. Natural Gas Co.*, 302 F.3d 325, 342 (5th Cir. 2002); *accord Broussard*, 523 F.3d at 628.

The Fifth Circuit's decision in *Broussard* mandates a determination in this case that as a matter of law Plaintiff cannot establish that State Farm lacked an arguable basis for its handling of his claim. In

*Broussard*, the Fifth Circuit held as a matter of law that State Farm had a reasonably arguable basis for denying coverage based on an investigation and evidence less extensive than that here. In that case, the plaintiffs' house was entirely destroyed, and the adjuster could not examine any debris to ascertain the cause of damage. *See Broussard,* 523 F.3d at 622, 628. The adjuster in *Broussard* was only able to examine the "position of the home" relative to a debris line in the area and the "condition of trees." *Id.* at 628. Although the plaintiff identified "some facts which suggest that wind destroyed his home prior to the arrival of the tidal surge," the Fifth Circuit still held as a matter of law that State Farm "had an arguable basis for denying his claim based on the observations of its adjuster." *Id.* On those facts, it was reversible error to submit the punitive damages claim to the jury. *Id.* at 630.

In this case, the evidence establishes that State Farm had at least an "arguable basis" for its adjustment of Plaintiff's claim. *See Polk v. Dixie Ins. Co.*, 897 F.2d 1346, 1350-51 (5th Cir. 1990), *vacated on other grounds*, 501 U.S. 1201 (1991). Although Plaintiff's home sustained severe damage from Hurricane Katrina, much of the home was still standing after the storm, enabling independent adjusters to analyze the cause of damage by studying the remaining physical evidence in the structure. The damage to the house, the damage to structures in the vicinity, the proximity to open water, and the high surge flooding in the area all formed a reasonable basis for State Farm's adjustment. *See* Point II.B-E *supra*.

Floor space in Plaintiff's "slab-on-grade," one-story house was only eight to twelve feet above sea level, which exposed the house to severe storm surge flooding. The investigations by independent adjusters and by State Farm all establish that storm surge and waves flooded the interior of Plaintiff's one-story house by at least several feet. Ex. P-1 at 440. This finding was confirmed during State Farm's reevaluation, *id*. at 447-48; Plaintiff's engineering study, Ex. P-93 at 665, 668; by Plaintiff's neighbor, Ex. P-104 at 10, 15; Ziz Dep. [85-12] at 15:22-16:25, 19:17-21:8; Plaintiff's wife, [85-5] at 34:1-7, 34:22-35:2, 36:25-37:21, 65:15-66:9; and even Plaintiff himself, [85-4] at 21:5-10, 36:15-20. Thus, all

experts and witnesses – including Plaintiff and his wife – agreed the ground floor was inundated during the storm. Based on its investigations, State Farm paid Plaintiff for separate and independent wind damage, Ex. P-1 at 334, 338, and denied the damages due to storm surge flooding and waves.

Mrs. Bossier's account also corroborates that State Farm's adjustment was reasonable. Mrs. Bossier testified at her deposition that, before she and her husband fled to the attic of the one-story house, none of the windows – which were held in the walls of the house – were broken. [85-5] at 30:20-31:18. To avoid drowning in the flood waters, the Bossiers fled to the attic around 8:00 a.m. the morning of Hurricane Katrina when Mrs. Bossier saw flooding coming up from the bay. *Id.* at 31:24-32:19, 34:22-35:2, 36:1-4.

Plaintiff's engineering study by Mr. Biddy reinforced the reasonable basis of State Farm's adjustment. He concluded that storm surge flooding caused widespread damage to the house, Ex. P-93 at 665, and that there was "no absolutely precise way to divide the damages caused by wind or water." *Id.* at 661. Indeed, Mr. Ziz, who remained in the neighborhood during the storm, indicated that the land surrounding Plaintiff's house was dry at approximately 7:30 a.m., Ex. P-29 ¶¶ 7-9, and was flooded with five-and-a-half feet of water at or before 8:00 a.m.[11] Ex. P-104 at 10, 15; *see also* Ziz Dep. [85-12] at 15:22-16:23, 19:17-21:8. This evidence of the rapidly rising flood waters further justifies State Farm's conclusion that storm surge was responsible for the damage to Plaintiff's house in the early morning hours. Additionally, State Farm's investigation into Plaintiff's boat claim found that the rising waters had lifted Plaintiff's boat and deposited it on the roof of Plaintiff's neighbor, which further confirms the height and severity of the flooding.

When an insurer has conducted an adequate investigation of the insured's claim and thereafter

---

[11] In rejecting State Farm's motion for partial summary judgment as to punitive and extra-contractual damages, this Court noted that State Farm had Mr. Ziz's "contact information and knew his whereabouts." Sept. 17, 2009 Order [132] at 1. However, as discussed above (*see* Point II.C.2 *supra*), the evidence is that State Farm repeatedly attempted to use Mr. Ziz's contact information to reach him by phone and letter but was unsuccessful. It took State Farm some time to locate Mr. Ziz for an interview. *See* Point II.D *supra*.

adjusts the claim in good faith reliance on a policy exclusion, the insurer will be deemed to have had an "arguable reason" to deny the claim.  As the Mississippi Supreme Court explained in *Liberty Mutual Insurance Company v. McKneely*:

> The defendants are not required to disprove all possible allegations made by a claimant. They are simply required to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation.  We find that, under the circumstances here, Liberty Mutual's investigation was adequate and that there was an arguable basis for discontinuing benefits.

862 So. 2d 530, 535 (Miss. 2003).  The facts and evidence in this case demonstrate that State Farm performed a careful investigation and made a reasonable decision based on that investigation.

State Farm's experts also confirm the reasonableness and legitimacy of State Farm's adjustments. Dr. Weisberg determined that "surge heights were substantial, as were the accompanying waves," and that Plaintiff's "single-storied, wood-framed with brick veneer, slab-on-grade built house, with a finished floor elevation of 14.5 ft . . . would have been inundated to about 2/3rds of its interior height."  Ex. D-54 at 42.  "Even at their peak magnitude[,] the wind forces would have been 10 times less than the forces by water."  *Id.* at 42.  As Dr. Weisberg concluded, "it is difficult to imagine how wind could have been the causative agent of damage" to Plaintiff's house.  *Id.* at 22.  Indeed, both Dr. Weisberg and Dr. Masters examined the damage to houses in the area, and Dr. Masters concluded that "almost all exhibit little to no roof cover loss.  If extreme wind loads were the cause of [Plaintiff's] building's destruction, the remaining buildings in close proximity would have suffered major loss or roofing material and uplift of part of all of the roof decking . . . .  This is simply not evident."  Ex. D-52 at 11-12.

For Plaintiff to meet his burden of proof on this element, it is not enough for him to show that State Farm's adjustment was incorrect.  Plaintiff must demonstrate that State Farm's adjustment of his claim had no arguable basis or "arguable merit."  *Sobley*, 302 F.3d at 342.  Yet he cannot do so.  To the contrary, State Farm had far more than the required "some credible evidence" on which to base its adjustment of Plaintiff's claim, *Campbell*, 466 So. 2d at 851, which removes this case from the

"egregious cases" for which punitive damages are reserved.  *See Williams*, 936 So. 2d at 896; *King Enters.*, 982 F. Supp. at 417-18 (Senter, J.) ("[T]he presence of a legitimate or arguable reason on the part of the insurer for denying the insured's claim will defeat a claim for punitive damages"); *see also Polk*, 897 F.2d at 1350-51 (affirming judgment as a matter of law for insurer on punitive damages, noting that "'[T]he plaintiff has a heavy burden to demonstrate to the trial court that there was no reasonably arguable basis for the insurance carrier to deny the claim.  Unless he so demonstrates, the trial court as a matter of law is under a duty to remove any punitive damages claims . . . .'") (citation omitted).

### B.    Plaintiff Cannot Make the Required Showing That State Farm Adjusted His Claim with Malice or Gross Negligence in Reckless Disregard for His Rights

Even assuming *arguendo* Plaintiff could show as a matter of law that State Farm's resolution of his claim had no arguable basis (which he cannot), there is simply no evidence from which a jury could conclude that State Farm engaged in any malicious or grossly negligent conduct of the kind that would justify an award of punitive damages.  *See King Enters.* 982 F. Supp. at 417 (Senter, J.) ("'[T]he absence of an arguable reason does not per se establish that the insurer acted with malice or gross negligence or reckless disregard for the plaintiff's rights, since denial of the claim could be the result of an honest mistake or oversight, which would amount to ordinary and simple negligence.'") (citation omitted); *Weems v. Am. Sec. Ins. Co.*, 486 So. 2d 1222, 1227 (Miss. 1986) ("A failure to pay may result from negligence on the part of the insurer and punitive damages are not assessable, again assuming arguendo the objective absence of an arguable reason for such failure to pay.").

Indeed, under the Fifth Circuit's opinion in *Broussard*, 525 F.3d at 627-28, State Farm as a matter of law cannot be found to have acted with malice, gross negligence or reckless disregard.  In *Broussard*, in which the Plaintiff's house had been completely destroyed, the Fifth Circuit reversed the district court's decision to submit the question of punitive damages to the jury, holding that State Farm not only had an arguable basis for its original denial of the Broussards' claim, but also did not act with

malice or gross negligence at any point in time, and had conducted an adequate investigation into the cause of the loss. *See id.* at 627, 630. Significantly, the Fifth Circuit held that even though State Farm refused to pay the Broussards anything under their policy even *after* State Farm's trial experts determined that the Broussard home suffered appreciable wind damage, such action did not rise to the level of malice or gross negligence required to warrant a punitive damages instruction. *See id.* at 628-29 ("[W]e hold State Farm did not act with sufficient 'malice or gross negligence' to merit punitive damages.") (citation omitted).

Under *Broussard*, on the facts of the instant case, it is manifest that Plaintiff cannot show State Farm acted with malice or gross negligence as required for an award of punitive damages, and thus, his claim for punitive damages fails as a matter of law. Here, State Farm's personnel interviewed Plaintiff about the loss and dispatched an independent adjuster who visited the property shortly after Plaintiff submitted his claim. The independent adjuster analyzed the damage to Plaintiff's standing structure. State Farm paid Plaintiff according to the results of that investigation. When Plaintiff submitted additional support for his claim, State Farm conducted a re-evaluation using another independent adjuster. At each stage of the investigation, State Farm reasonably adjusted Plaintiff's claim according to the available evidence and paid Plaintiff for his covered damages.

Moreover, even if Plaintiff still harbors a "difference of opinion over the amount" owed for the losses, that falls far short of "ris[ing] to the level of an independent tort," as is required for punitive damages. *Bostwick v. State Farm Fire & Cas. Co.*, 2008 WL 4539562, at *2 (S.D. Miss. Oct. 7, 2008) (Senter, J.). As the Fifth Circuit has explained:

> [T]he Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment.

*Tutor v. Ranger Ins. Co.*, 804 F.2d 1395, 1399 (5th Cir. 1986); *see also Guaranty Serv. Corp. v. Am. Employers' Ins. Co.*, 893 F.2d 725, 728 (5th Cir. 1990) (affirming judgment as a matter of law in

insurer's favor on punitive damages:  "A 'pocketbook dispute' over the amount of a claim 'did not rise to the level of wanton, gross or intentional conduct in the nature of an independent tort.'") (citation omitted); *Morgan v. Providence Wash. Ins. Co.*, 1996 WL 672096, at \*4 (N.D. Miss. Sept. 5, 1996) (granting summary judgment to insurer dismissing punitive damages claim: '[P]ocketbook dispute[s]' . . . do not warrant an award of punitive damages even should [the insured] prevail on her underlying [contract] claim[.]").

In sum, Plaintiff cannot make any showing at trial – much less meet the required clear and convincing standard – that State Farm engaged in any conduct of the kind that would justify an award of punitive damages.  Accordingly, the issue of punitive damages may not be submitted to the jury.

## VI.    PLAINTIFF IS NOT ENTITLED TO EXTRA-CONTRACTUAL DAMAGES FOR EMOTIONAL DISTRESS

Insofar as Plaintiff seeks extra-contractual damages for emotional distress, Plaintiff's claim fails because Plaintiff cannot meet his burden of establishing the elements required to recover for emotional distress.  As a prerequisite to obtaining such extra-contractual damages, Plaintiff must establish that State Farm lacked an arguable or legitimate basis for its claims decision.  The existence of that requirement, under Mississippi law, is made clear by the Fifth Circuit's decision in *Hans Construction Co.,* 995 F.2d at 56.  In *Hans*, the Fifth Circuit concluded that "Mississippi will allow extra-contractual damages for failure to pay on an insurance policy only when there is *no arguable reason* for such failure" and that "[a]n arguable reason, therefore, shields the insurance company from liability for . . . extra-contractual damages."  *Id.* (emphasis in original).  Here, as shown above, State Farm had an arguable basis for its adjustment of Plaintiff's claim (*see* Point V.A *supra*), and therefore, Plaintiff may not recover emotional distress damages as a matter of law.

Plaintiff also cannot establish other essential elements of his claim for emotional distress damages.  To recover on such a claim, Plaintiff must show that State Farm's adjustment of his insurance claim (as opposed to Hurricane Katrina, the damage to his house, or any other factor) proximately

caused him to suffer severe emotional distress, that resulted in "'some sort of physical manifestation of injury or demonstrable physical harm.'" *See Edmonds v. Beneficial Miss., Inc.*, 212 F. App'x 334, 337 (5th Cir. 2007) (quoting *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1208 (Miss. 2001)). As the Fifth Circuit stated in *Edmonds*, the requirement of a physical manifestation of injury or demonstrable physical harm represents the "majority view" under the judicial decisions of the Mississippi Supreme Court. *See id.* Here, Plaintiff cannot show that he suffered emotional distress that resulted in a physical manifestation of any kind or in demonstrable physical harm.

Moreover, even if a less restrictive standard were applied, Plaintiff would still have the burden of providing "substantial proof" of a demonstrable "mental injury" or "emotional harm." *See id.* at 337-38 (citing *Ill. Cent. R.R. Co. v. Hawkins*, 830 So. 2d 1162, 1174 (Miss. 2002)). "Sleeplessness, nightmares and even multiple visits to a medical doctor" do not constitute the requisite showing of emotional harm." *Id.* at 338 (citing *Hawkins*, 830 So. 2d at 1174); *see also Smith v. Fortis Ins. Co.*, 2005 WL 1657049, at *7 (S.D. Miss. July 8, 2005) (same). Plaintiff here cannot meet this burden, and his "failure to show sufficient proof of harm" mandates that he cannot recover for emotional distress. *Edmonds,* 212 F. App'x at 337-38 (affirming dismissal of claims for emotional distress "for failure to show sufficient proof of harm"); *see also Marchbanks v. Dolgencorp, Inc.*, 2008 WL 5050136, at *8 (N.D. Miss. Nov. 20, 2008) (entering judgment as a matter of law for defendant on emotional distress claim where plaintiff's "contentions are unsupported by medical testimony, to the effect that [the plaintiff's] emotional problems were triggered by the subject incidents"; testimony that the plaintiff was "very depressed and had difficulty sleeping" does not satisfy plaintiff's burden of proof).

Furthermore, Plaintiff must show that it was reasonably foreseeable to State Farm that Plaintiff would suffer severe emotional distress from its adjustment of Plaintiff's claim without arguable basis. *Edmonds*, 212 F. App'x at 337-38. Here, Plaintiff has conceded that his home sustained flood damage. Oct. 23, 2009 Order [179] at 1. In addition, as shown above State Farm had an arguable basis for its

adjustment of Plaintiff's claim. *See* Point V.A *supra*. However, even if it should be found that there was

no arguable basis for denial of payment for some portion of the claim (which is not the case), Plaintiff's

purported emotional distress could not be established to have resulted therefrom, much less to have

*foreseeably* resulted therefrom (as opposed to having resulted from the damage to Plaintiff's home).

Indeed, this Court has held as a matter of law that emotional distress from the breach of an insurance

policy covering house construction defects was not foreseeable and not reasonably certain. *See Burley v.

Homeowners Warranty Corp.*, 773 F. Supp. 844, 867 (S.D. Miss. 1990), *aff'd*, 936 F.2d 569 (5th Cir.

1991) (Table).

## VII.    PLAINTIFF IS NOT ENTITLED TO ATTORNEYS FEES

This Court should reject Plaintiff's claims for attorney fees as a matter of law. First, attorneys

fees are not available where, as here, an insurer has demonstrated an arguable basis for its claims

decision. *See* Point V.A *supra*. Moreover, Mississippi law adheres to the American Rule that a party is

responsible for its own attorney fees absent an award of punitive damages. As the Fifth Circuit has held,

the "prevailing view" in Mississippi is that "attorney's fees are not recoverable absent an award of

punitive damages." *Greer v. Burkhardt*, 58 F.3d 1070, 1075 (5th Cir. 1995). "In the absence of a

showing of gross or willful wrong entitling the Movant to an award of punitive damages, the Mississippi

Supreme Court has *never* approved of awarding attorneys fees" or trial expenses to the "successful

litigant." *Miller v. Allstate Ins. Co.*, 631 So. 2d 789, 795 (Miss. 1994) (emphasis added); *accord

Spencer v. State Farm Mut. Ins. Co.*, 891 So. 2d 827, 830 (Miss. 2005) (same); *Miss. Power & Light Co.

v. Cook*, 832 So. 2d 474, 487-88 (Miss. 2002) (en banc) (same); *Aetna Cas. & Sur. Co. v. Steele*, 373 So.

2d 797, 801 (Miss. 1979) (same); *see* Miss. R. Civ. P. 54 cmt.[12] Accordingly, as discussed above, since

---

[12] *See also Hamilton v. Hopkins,* 834 So. 2d 695, 700 (Miss. 2003) (reversing award of attorneys fees, holding "if attorney's fees are not authorized by the contract or by statute, they are not to be awarded when an award of punitive damages is not proper"); *Hearn v. Autumn Woods Office Park Prop. Owners Ass'n*, 757 So. 2d 155, 164 (Miss. 1999) ("When there is no contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also proper."); *Grisham v. Hinton*, 490 So. 2d 1201, 1205 (Miss. 1986) ("With the sole exception of punitive damages cases, in the absence of contractual provision or statutory authority therefor, this Court has never approved awarding trial expenses and attorney's fees to the successful litigant."); *Gardner v. Jones*, 464 So. 2d 1144, 1150 (Miss. 1985)

Plaintiff may not recover any punitive damages, he is disabled from recovering any attorney fees.

The Court should deny Plaintiff's request for attorney fees, but if an award is considered, it is axiomatic in Mississippi that the decision to award attorney fees rests with "the sound discretion of the trial court" rather than the jury. *Cook*, 832 So. 2d at 478; *accord BellSouth Personal Commc'n, LLC v. Bd. of Supervisors of Hinds Cty.*, 912 So. 2d 436, 446 (Miss. 2005); Miss. Code Ann. § 11-55-7 (2008). An attorney fee award must be reasonable and well supported by the Court's conclusions of fact and law. "It is well settled in this State that what constitutes a reasonable attorney's fee rests within the sound discretion of the trial court" and must "be supported by credible evidence" and "based on findings of fact and conclusions of law concerning" relevant factors. *Cook*, 832 So. 2d at 486-87 (citation omitted); *see Ford Motor Co. v. Tennin*, 960 So. 2d 379, 396-97 (Miss. 2007) ("Any award of attorney's fees and expenses should be supported with factual determinations by the trial court").[13]

## VIII.   PLAINTIFF IMPROPERLY SEEKS TO INTRODUCE EVIDENCE OF MULTIPLE PROPERTIES OTHER THAN PLAINTIFF'S PROPERTY

Plaintiff's house at 1987 Bayside Drive in Biloxi, Mississippi is the only house at issue in this case. Indeed, as this Court has held, "[t]his cause of action involves Plaintiff's claim only." Oct. 9, 2009 Order [166] at 3. The fundamental issue in this case thus concerns the extent and nature of the losses to *Plaintiff's* house. However, Plaintiff seeks to depart from this core issue and improperly present evidence regarding numerous other houses, including the following:

---

("Having held that the award of punitive damages may not stand as a matter of law, under the rule acceded to by [the plaintiff], the award of attorneys fees must fall as well.").

[13] The factors the Court must consider include the following: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent." *BellSouth Personal Commc'n, LLC*, 912 So. 2d at 445-46 (citation omitted); *see McKee v. McKee*, 418 So. 2d 764 (Miss. 1982); *see also* Miss. Code Ann. § 11-55-7 (2008) (listing additional factors).

- ➤ 619 North Haven Drive;
- ➤ 701 Holly Hills Drive;
- ➤ 1961 Bayside Drive;
- ➤ 662 Mulberry Drive;
- ➤ 682 North Haven Drive;
- ➤ 1964 Bayside Drive; and
- ➤ 619 North Haven Drive.

Ex. P-10 to P-15, P-119 to P-124, P-129 to P-131.[14] As shown below, evidence regarding those other houses is irrelevant and therefore should be excluded from trial. *See* Fed. R. Evid. 401-402.[15]

Any damage to those other houses is not probative of the damage to Plaintiff's house because, as this Court has held, the effects of Hurricane Katrina are unique from house to house and vary greatly. *Comer v. Nationwide Mut. Ins. Co.*, 2006 WL 1066645, at *2 (S.D. Miss. Feb. 23, 2006) (Senter, J.). This Court has noted one of the "important lessons" in Hurricane Katrina cases is that "the damage any given building may have sustained varied substantially depending on its age, quality of construction, and even its design (e.g. gable roof compared with hip roof) and orientation to the forces exerted by the storm." *Guice v. State Farm Fire & Cas. Co.*, 2007 WL 912120, at *1 (S.D. Miss. Mar. 22, 2007) (Senter, J.). This Court has further acknowledged that unique factual scenarios surround the effects of Hurricane Katrina forces on each property:

> Each property owner in Mississippi who had real and personal property damaged in Hurricane Katrina is uniquely situated. No two property owners will have experienced the same losses. The nature and extent of the property damage the owners sustain from the common cause, Hurricane Katrina, will *vary greatly in its particulars*, depending on the location and condition of the property before the storm struck and depending also on what combination of forces caused the damage.

*Comer*, 2006 WL 1066645, at *2 (emphasis added).[16] Accordingly, Plaintiff's evidence of numerous other properties is entirely irrelevant to the core issues in this case regarding losses to *Plaintiff's* house.

---

[14] Several of these properties do not even appear to be within Plaintiff's "surrounding neighborhood," which the Court identified as a criterion to exclude unrelated properties. Oct. 9, 2009 Order [166] at 3. For example, the property at 701 Holly Hills is across the water from Plaintiff's house, and the property at 662 Mulberry Drive is far beyond Plaintiff's neighborhood. In entering its *in limine* Order, this Court partially denied, without prejudice, State Farm's motion *in limine* to exclude evidence of properties other than Plaintiff's. [149, 166]. State Farm hereby renews its request to exclude Plaintiff's evidence of unrelated properties for the reasons stated herein.

[15] With regard to Plaintiff's other properties, this Court has already ruled *in limine* that evidence regarding such other properties is inadmissible at trial. Oct. 9, 2009 Order [166] at 4.

This Court held *in limine* that, "[a]s should be clear by now, the sole focus of the trial of this cause of action is Plaintiff's and Defendant's contractual relationship, and any liability arising therefore." Oct. 9, 2009 Order [166] at 3. Plaintiff's evidence regarding a litany of unrelated properties, therefore, should be excluded from the trial of this case. *See* Fed. R. Evid. 401-402.

Plaintiff's evidence of other properties is also inadmissible on the issues of extra-contractual or punitive damages. For example, in *Burley*, 773 F. Supp. at 857, the court rejected the plaintiff's argument that evidence of the insurer's denial of other insureds' claims, under the same policy provision and in the same metropolitan area, was relevant and admissible to show bad faith. The plaintiffs had sought to introduce evidence of "similar claims to prove defendants' alleged course of conduct in considering and handling of claims in such a manner as to frustrate recovery by insureds, and in denying claims in which liability is clear." *Id*. This evidence, the court held, was plainly inadmissible:

> First, plaintiffs here have not demonstrated that the claims in question are, in fact, similar except, of course, to the extent that those claims were denied by [defendant insurer] . . . Given that minimal similarity, the proposed evidence can not be considered at all probative on the issues presented in the cases at bar. . . . That is, under the facts presented, the denial of other claims has nothing whatsoever to do with these lawsuits; each of the plaintiffs' bad faith claims must stand or fall on its own merit . . . .

*Id*. at 858.

Moreover, permitting Plaintiff to introduce at trial testimony or documentary evidence concerning unrelated properties would result in the parties litigating over the effects of Hurricane Katrina on those other properties and over the propriety of the claims adjustments for those properties. The minimal probative value, if any, of such evidence would be substantially outweighed by the dangers of unfair prejudice to State Farm and of confusing and misleading the jury by diverting its attention away from the facts of *this case*. *See* Fed. R. Evid. 403. Plaintiff's evidence regarding such unrelated

---

[16] *See also Payment v. State Farm Fire & Cas. Co.*, 2008 WL 5381925, at *2 (S.D. Miss. Dec. 18, 2008) (Senter, J.) ("the sole focus of the trial of this cause of action" will be the plaintiff's individual insurance claim); *Huynh v. State Farm Fire & Cas. Co.*, 2008 WL 80759, at *1-2 (S.D. Miss. Jan. 7, 2008) (Senter, J.) ("the trial of this case will be limited to the facts surrounding the Plaintiff's particular claim," not unrelated third parties' properties and claims).

properties could easily confuse, inflame, and prejudice the jury and distract it from rationally and impartially assessing the alleged conduct and circumstances upon which liability is premised in this action. *Cf. Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 409 (5th Cir. 2004) (affirming exclusion of evidence of other lawsuits involving a party because "any probative value the [other lawsuit] evidence might hold was outweighed by its prejudicial and inflammatory nature and by its tendency to confuse the jury with tangential litigation"). This Court foresaw these heightened risks when ruling on State Farm's motion *in limine* to exclude such evidence, holding "at some point this [evidence of other houses] may cross the line into confusion or misleading the jury." Oct. 9, 2009 Order [166] at 3; *accord Aiken v. Rimkus Consulting Group, Inc.*, 2007 WL 4245906, at *2 (S.D. Miss. Nov. 29, 2007) (Senter, J) (evidence regarding unrelated properties and claims "poses the danger of confusion of the issues, which may tend to mislead the jury and would otherwise cause delay and waste time"), *aff'd*, 2009 WL 1456568 (5th Cir. May 26, 2009) (per curiam).

In addition to the significant risks of unfair prejudice to State Farm and of confusing and misleading the jury, admitting Plaintiff's evidence of other properties would needlessly prolong and complicate the trial of this case. It would result in unproductive and wasteful "trials within a trial" concerning these unrelated properties. For example, the introduction of such evidence would require State Farm to rebut it by explaining the difference between the claims-handling and other relevant facts and circumstances involved in the present case from those of the other claims, leading to a substantial and disproportionate amount of time and evidence being devoted to entirely collateral issues. As the court in *Burley* aptly noted:

> Even if it could be said that evidence of other claims [also involving the defendant insurer] was of some relevance to some issue presented, its minimal probative value under the circumstances of this case does not justify its admission when weighed against the enormous waste of time that its admission would necessarily entail. Without question, if evidence of other claims were allowed by the court, there would be, in effect, a mini-trial on each such claim. That is wholly unacceptable . . . .

773 F. Supp. at 858 (citation omitted).

31

"No judge wants to see one trial turn into several," *Olson v. Ford Motor Co.*, 481 F.3d 619, 624 (8th Cir. 2007), and courts routinely exclude evidence of collateral issues to prevent the same types of harm that would be present here. *See, e.g.*, *United States v. Farrington*, 58 F. App'x 919, 925 (3d Cir. 2003) (upholding exclusion of evidence of unrelated fraudulent schemes because such evidence would require "'mini trials'" to determine the validity of those allegations); *United States v. Talamante*, 981 F.2d 1153, 1156 n.5 (10th Cir. 1992) (affirming exclusion of evidence of unrelated incidents that "could have led to collateral mini trials"); *United States v. Waloke*, 962 F.2d 824, 830 (8th Cir. 1992) (upholding exclusion of evidence of unrelated incidents that would have resulted in "'collateral mini-trials'" because "'[t]he defendant would have characterized a collateral incident one way and the government would have found witnesses who would have disputed the claims of defense witnesses'") (alteration in original; quoting lower opinion). Accordingly, the Court should not permit Plaintiff to introduce any evidence regarding properties other than his own at 1987 Bayside Drive.

## IX.  PLAINTIFF IMPROPERLY SEEKS TO INTRODUCE STATE FARM TELEVISION COMMERCIALS INTO EVIDENCE AT TRIAL

In Plaintiff's list of trial exhibits, Plaintiff has included State Farm television commercials that have nothing to do with Plaintiff's Hurricane Katrina claim or with State Farm's adjustment of his claim. *See* Ex. P-140 to P-142. Plaintiff should not be permitted to introduce these (or any other) television commercials into evidence at the trial of this case.

Plaintiff has made no claim for fraud or any other claim that could remotely implicate State Farm's commercial advertising. As this Court has held in this case, "[a]s should be clear by now, the sole focus of the trial of this cause of action is Plaintiff's and Defendant's contractual relationship, and any liability arising therefrom." Oct. 9, 2009 Order [166] at 3. "This cause of action involves Plaintiff's claim only." *Id*. State Farm commercials have nothing to do with Plaintiff's insurance claim, the contractual relationship at issue, or with State Farm's investigation and adjustment of Plaintiff's claim. State Farm television commercials should, therefore, be excluded from trial as irrelevant. *See* Fed. R.

Evid. 401-402. Moreover, State Farm television commercials are entirely dissimilar to Plaintiff's insurance claim and involve out-of-state conduct. This Court has, in this case, excluded such evidence of dissimilar and out-of-state conduct because it is "fraught with the danger of unfair prejudice, confusions of the issues, and misleading the jury." Oct. 9, 2009 Order [166] at 3. Plaintiff should not be permitted to introduce State Farm television commercials in the trial of this case because they would introduce substantial unfair prejudice against State Farm, confuse the issues, and mislead the jury. *See* Fed. R. Evid. 403.

State Farm television commercials are also not competent or admissible evidence on the issue of extra-contractual or punitive damages. Television commercials to the public have *nothing* to do with whether State Farm had an arguable basis for its adjustment of Plaintiff's claim following Hurricane Katrina, which is the threshold inquiring with respect to both extra-contractual and punitive damages. *Broussard*, 523 F.3d at 628; *Hans Constr. Co.*, 995 F.2d at 56. Nor do State Farm television commercials have anything to do with the second requisite element of Plaintiff's punitive damage claim, namely, whether State Farm adjusted Plaintiff's claim with malice or gross negligence in reckless disregard for Plaintiff's rights. That element of proof focuses on the intent of the insurer when adjusting the specific claim at issue. Nothing in any of State Farm's television commercials remotely relates to Plaintiff's insurance claim following Hurricane Katrina, much less State Farm's intent when adjusting Plaintiff's specific claim.

Moreover, in cases involving claims for fraud or other consumer protection claims (none of which are at issue here), courts across the country have held that a party's advertisements and slogans are mere puffery. Indeed, this Court has held that an insurer's advertising slogan cannot form the basis for a claim for fraudulent misrepresentation. *Tab Indus., Inc. v. Nationwide Mut. Ins. Co.*, 2009 WL 1938983, at *2 (S.D. Miss. July 6, 2009) (Senter, J.) (Nationwide insurance "slogan is not the basis for fraudulent misrepresentation"). Numerous other courts have reached the same conclusion and held that advertising

33

slogans and commercials are mere puffery and not objectively specific and therefore are not legally actionable. *See, e.g., Rodio v. Smith*, 587 A.2d 621, 624 (N.J. 1991) (Allstate slogan "'You're in good hands with Allstate' is nothing more than puffery" and does not support claim of being "a deception, false promise, misrepresentation, or any other unlawful practice within the ambit of the Consumer Fraud Act"); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 498 (5th Cir. 2000) (advertising campaign not actionable under federal Lanham Act because, among other things, the slogan was puffery); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (same); *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 229-31 (Tex. App. 1996) ("a slogan that any commercial enterprise might adopt" does not form a basis for a deceptive practices claim); *Hill v. Jay Pontiac, Inc.*, 381 S.E.2d 417, 418-19 (Ga. Ct. App. 1989) (advertising puffery does not support fraud claim); *Breckenridge v. Cambridge Homes, Inc.*, 616 N.E.2d 615, 622-23 (Ill. App. Ct.) (same under consumer fraud statute), *appeal denied*, 622 N.E.2d 1201 (Ill. 1993); *State v. Am. TV & Appliance of Madison, Inc.*, 430 N.W.2d 709, 712 (Wis. 1988) ("puffery [has been] long considered an acceptable advertising technique" and does not support a deceptive practices claim).

Accordingly, any attempt by Plaintiff to introduce State Farm's television commercials into evidence at trial would be manifestly improper and should not be permitted.

Dated:  November 1, 2009

Respectfully submitted,

/s/  H. Benjamin Mullen
H. BENJAMIN MULLEN, MSB # [####]
BRYAN, NELSON, SCHROEDER,
CASTIGIOLA & BANAHAN
Attorneys at Law
Post Office Drawer 1529
Pascagoula, MS  39568
(228) 762-6631
*Attorneys for Defendant*
*State Farm Fire and Casualty Company*

## CERTIFICATE OF SERVICE

I, **H. BENJAMIN MULLEN**, one of the attorneys for the Defendant, **STATE FARM FIRE & CASUALTY COMPANY**, do hereby certify that I have on this date electronically filed the foregoing document with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

DATED, November 1, 2009.

/s/  H. Benjamin Mullen
H. BENJAMIN MULLEN

H. BENJAMIN MULLEN
BRYAN, NELSON, SCHROEDER,
CASTIGLIOLA & BANAHAN
Attorneys at Law
Post Office Drawer 1529
Pascagoula, MS  39568
(228) 762-6631