IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**REGINALD EDWIN BOSSIER**                                    **PLAINTIFF**

**VERSUS**                                   **CAUSE NO. 1:08-cv-408-LTS-RHW**

**STATE FARM FIRE AND CASUALTY COMPANY**            **DEFENDANT**

**MEMORANDUM IN SUPPORT OF MOTION TO ALTER
OR AMEND JUDGMENT TO ADD ATTORNEYS' FEES,
EXPENSES AND PREJUDGMENT INTEREST**

Plaintiff respectfully moves this Court for an order granting attorneys' fees, expenses and prejudgment interest due as a result of State Farm's failure to pay Mr. Bossier's policy limits of $77,607.80 (including interest) on his dwelling extension until August 31, 2009, and contents of $52,300.00 awarded by the jury at the trial of this matter.

**ARGUMENT**

**I.   FEES AND EXPENSES**

    **A.   Legal Standards**

Under Mississippi law, attorneys' fees and expenses are recoverable in a successful breach of contract action against an insurance company where the denial was not based on an arguable or legitimate reason. *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss. 1992) ("[a]dditional inconvenience and expense, attorneys fees and the like should be expected in an effort to have the oversight corrected . . . It is no more than just that the injured party be

compensated for these injuries").[1] *See also, United American Ins. Co. v. Merrill*, 978 So. 2d 613, 630 (Miss. 2007) (quoting *Veasley* with approval); *Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450, 451 (5th Cir. 2008) ("Thus, Mississippi law recognizes that negligent conduct of the insurance company can justify recovery of, for example, attorneys' fees");[2] *Simpson v. Economy Premier Assur. Co.*, 2006 WL 2590620, at *2 (N.D. Miss. Sept. 8, 2006) (the Mississippi Supreme Court has sanctioned the application of a separate tier of damages, often referred to as *Veasley* damages, which may include attorneys fees). This is precisely the case here. The Court found Defendant had no arguable or legitimate basis for denying Plaintiff's dwelling extension and contents claims. Indeed, State Farm offered no legitimate or arguable reason at trial. Consequently, attorneys' fees and expenses are payable. The question is what constitutes a reasonable fee.

An award of damages for attorney's fees and expenses is especially appropriate in this Hurricane Katrina case. Four years after the storm destroyed Plaintiff's outbuilding to the slab, and just weeks before trial, State Farm finally accepted the eyewitness testimony of Joseph Ziz, who witnessed the destruction of the outbuilding prior to the arrival of storm surge flooding. The Court has already found as a matter of law that this delay lacked an arguable or legitimate

---

[1] Attorneys fees and expenses in such actions are thus considered part of compensatory damages, not costs. *Veasley*, *supra*.

[2] As noted in *Essinger*, attorney fees may be appropriate damages even in the absence of the level of conduct required for punitive damages. *See also, Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008).

reason. Indeed, State Farm possessed all the necessary information concerning the outbuilding destruction long before its tender. Moreover, State Farm's refusal to pay for the contents in the outbuilding at the same time as it tendered policy limits for the dwelling extension itself utterly lacked an arguable or legitimate reason. It is nonsensical to suggest that the dwelling extension could be covered and the contents in same not. State Farm's counsel stated in closing argument that State Farm decided to put the issue of the contents to the jury, thus forcing its insured to litigate a claim that was clearly covered under the policy.

State Farm's actions required its insured to suffer the time, expense, and stress of litigation in order to collect the relatively modest amounts due from State Farm. The law rightfully recognizes under such circumstances that attorney's fees and litigation expenses must be a part of the damages equation lest insurers deny legitimate claims and force the insureds to costly litigation. A contrary holding would result in a windfall to State Farm.

The amount of the attorneys' fee is left to the sound discretion of the trial court, *Mississippi Power & Light Co. v. Cook,* 832 So. 2d 474, 486 (Miss. 2002). Miss. Code Ann. § 9-1-41 (1991) instructs courts not to require the party seeking fees to put on proof as to the reasonableness of the amount sought, but the Court should "make the award based on the information already before it and the Court's own opinion based on experience and observation."[3] However, the Court

---

[3]This Mississippi statute has been recognized as applicable in federal court proceedings based on state law. *Jowers v. BOC Group, Inc.*, 608 F.Supp.2d 724, 775-76 (S.D. Miss. 2009).

may allow the seeking party to submit evidence, *Regency Nissan, Inc. v. Jenkins*, 678 So. 2d 95, 103 (Miss. 1995), and Plaintiff offers the Affidavit of lead counsel Judy M. Guice in support of this motion. (Exhibit 1).

Where Defendant contests the reasonableness of a requested fee amount, it must itself disclose information and documentation concerning the amount of time each attorney and paralegal spent on the case. This disclosure is appropriate because "a comparison of hours and rates charged by opposing counsel is probative of the reasonableness of a request for attorney's fees by prevailing counsel." *Jowers, supra,* at 784, *quoting Heng v. Rotech Medical Corp.*, 720 N.W.2d 54, 65 (N.D. 2006).[4]

The Mississippi Supreme Court has mandated that a trial court must use the following factors in determining a reasonable fee:

1. The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;

2. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

3. The fee customarily charged in the locality for similar legal services;

4. The amount involved and the results obtained;

5. The time limitations imposed by the client or by the circumstances;

6. The nature and length of the professional relationship with the client;

---

[4] If, because it contests the reasonableness of Plaintiff's fee request, Defendant submits such information concerning its own fees and expenses, it should be required to disclose not only those fees and expenses of its counsel who appeared of record but, in addition, all other attorneys nationwide, including in-house attorneys, who worked on this case.

      7.      The experience, reputation, and ability of the lawyer or lawyers performing the services; and

      8.      Whether the fee is fixed or contingent.

Mississippi Rules of Professional Conduct 1.5(a).

These 8 factors were essentially repeated and adopted by the Mississippi Supreme Court in *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982). There, the court also described a ninth factor which was "the relative financial ability of the parties." *Id.* at 767. As the Mississippi Supreme Court has recently noted, the "*McKee* factors are strikingly similar to the factors set out in Miss. R. Prof. Conduct 1.5(a)." *Tupelo Redevelopment Agency v. Gray Corp., Inc.*, 972 So. 2d 495, 521 (Miss. 2007). As a result, courts use the *McKee* factors and Rule 1.5 interchangeably. *See, Mabus v. Mabus*, 910 So. 2d 486, 489 (Miss. 2005) ("The reasonableness of attorney's fees are controlled by the applicable Mississippi Rule of Professional Conduct 1.5 factors and the *McKee* factors."); *Upchurch Plumbing, Inc. v. Greenwood Utilities Com'n*, 964 So. 2d 1100, 1115 (Miss. 2007) (noting *McKee* factors are adopted from Rule 1.5(a)).

In deciding what is "reasonable" and what is not, an attorney's lodestar is the starting point and can be almost presumed reasonable.

> Therefore, a trial court's award of attorneys' fees will be on course for probable affirmance on appeal if the trial judge used as a starting point the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate, after which the issue of attorneys' fees must then be appropriately considered in light of Miss. R. Prof. Conduct 1.5(a) and the *McKee* factors.

5

*Tupelo Redevelopment Agency,* 972 So. 2d at 522. *See also, Bellsouth Pers. Commun., LLC v. Bd. of Supervisors,* 912 So. 2d 436, 446–447 (Miss. 2005) (the lodestar "provides an objective basis on which to make an initial estimate of the value of a lawyer's services"); *Daly v. Bank One*, Slip Copy, 2007 WL 1725426 at *1 (S.D. Miss. June 12, 2007) (J. Guirola) (finding the lodestar is presumptively reasonable and should be modified only in exceptional cases).[5]  Importantly, though, only a reasonable estimate of hours is necessary to arrive at the lodestar. *Heasley v. C.I.R.*, 967 F.2d 116, 123 (5th Cir. 1992) ("Failure to provide contemporaneous billing records, however, does not preclude recovery so long as the Heasleys presented adequate evidence to permit the Tax Court to determine the number of reimbursable hours."); *CWTM Corp. v. AM General LLC,* 2006 WL 1804623, at *3 (S.D. Tex. June 28, 2006) (Court used the hours defense counsel billed in order to ascertain a reasonable number of hours for Plaintiff's counsel, who did not keep time records).

    **B.**    **An Analysis of the *McKee* Factors and Rule 1.5(a) Confirms Plaintiff's Hourly Request is Reasonable**

Plaintiff asks for attorneys' fees in the amount of $215,550.00 which represents 871 hours of attorney and paralegal time and expenses of $16,468.28.

The Affidavit of Judy M. Guice confirms the time expended by Plaintiff's counsel to prosecute this litigation. The Rule 1.5(a) and *McKee* factors are analyzed as follows:

---

[5] Of course, the Court is empowered to determine that a multiplier of the lodestar should be used to reflect any extraordinary effort, skill, or justification for a fee award.

1. **The Time and Labor Required, the Novelty and Difficulty of the Questions Involved, and the Skill Requisite to Perform the Legal Service Properly**

An enormous amount of time and labor was required to properly represent Plaintiff in this case. The Court's records reflect the effort expended by Plaintiff's counsel in prosecution of this case prior to trial. This case was filed on August 20, 2008, and concluded with a two week trial on November 12, 2009. The case was aggressively litigated by both parties. The Court is aware of the many pretrial motions, the many depositions, and the rigorous and effective advocacy of Defendant's attorneys which advocacy required a monumental effort by Plaintiff's attorneys to be even partially successful.

2. **The Likelihood That the Acceptance of the Particular Employment Will Preclude Other Employment by the Lawyer**

For weeks prior to and during trial, Plaintiff's counsel did almost nothing other than prepare for and try this case. Plaintiff's counsel worked 12-16 hour days in preparation for trial. Consequently, it is quite apparent that this case precluded other employment during the time leading up to and through the course of trial by Plaintiff's counsel.

### 3. The Fee Customarily Charged In the Locality for Similar Legal Services

Plaintiff seeks $300 per hour for Judy M. Guice and $250 per hour for Stanton Fountain. Plaintiff also seeks $60 per hour for paralegal time. These rates are normal and reasonable for both attorneys and paralegals in the Mississippi Gulf Coast area. (Exhibit 1 to Motion)[6]

### 4. The Amount Involved and the Results Obtained

This factor supports Plaintiff's fee request. Plaintiff readily acknowledges that he seeks a substantial amount of fees and expenses, but the total is proportionate to the amount of work involved, the financial investment of Plaintiff's counsel, the risk of loss, and the ultimately successful results.

The Supreme Court, the Fifth Circuit, and other courts have all upheld fee requests that are much larger than the underlying damage awards. For example, in *City of Riverside v. Rivera*, 477 U.S. 561 (1986), the Supreme Court noted:

> The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988. It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees. We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.

*Id.* at 574.

Other courts, including the Fifth Circuit, agree. *See, Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir. 1993) (the court approved $564,748

---

[6]Again, under Miss. Code Ann. § 9-1-41 proof of reasonableness is not required. Plaintiff does submit the attached affidavit to aid the Court in its determination.

in fees on a judgment of around $9,000); *Dunkin' Donuts, Inc. v. Mercantile Ventures, Inc.*, 194 WL 720236, at *6 (W.D. Tex. Aug. 11, 1994) (setting $889,986.50 in fees on a $137,974.62 award); *Twin Fires Inv., LLC v. Morgan Stanley Dear Witter & Co.*, 837 N.E.2d 1121, 1137 (Mass. 2005) (approving $1,000,000 fee award on damages of $118,950); *Askvig v. Wells Fargo Bank Wyoming, N.A.*, 2005 WY 138, 121 P.3d 783 (Wyo. 2005) (affirming $169,424 fee award equal to more than 200% of the amount recovered); *Reneau v. Mossy Motors*, 622 F.2d 192, 196 (5th Cir. 1980) ("While an award greatly in excess of a client's recovery requires strong support from the particular circumstances of the case, the ceiling on the client's recovery should not operate as an impenetrable barrier to reasonable compensation. **Righteous campaigns are not always won at modest cost**.") (Emphasis added).

     **5.    The Time Limitations Imposed by the Client or by the Circumstances**

As this Court knows well, it is rare for a case to actually go to trial, but when it does, the trial creates immense time limitations on the attorneys (and the Court) requiring the attorneys to set aside all other professional and personal commitments in order to properly litigate the case. In the weeks before and during trial, there was tremendous pressure on Plaintiff's attorneys to spend enormous amounts of time in preparation of the case for trial.

9

### 6. The Nature and Length of the Professional Relationship with the Client

Plaintiff had no prior professional relationship with Judy M. Guice prior to Hurricane Katrina or this litigation. Plaintiff's counsel was only employed as a result of Defendant's wrongful conduct in handling Plaintiff's insurance claim.

### 7. The Experience, Reputation, and Ability of the Lawyer or Lawyers Performing the Services

The Court is in the best position to assess this factor, given its experience with Plaintiff's counsel before, during, and since the trial. As noted in her Affidavit, Judy M. Guice has extensive experience and ability in litigating and trying cases of this type. (Exhibit 1 to Motion)

### 8. Whether the Fee is Fixed or Contingent

This factor strongly supports the requested fee award in this case. Plaintiff's attorneys have a contingent fee arrangement with Mr. Bossier. For purposes of this fee request, the important point is that Plaintiff's attorneys would receive nothing unless they forced Defendant to pay money to Mr. Bossier. For this reason, Plaintiff's counsel should receive either a higher rate for their hours spent or a multiplier of their lodestar time. *See Hensley v. Eckerhart*, 461 U.S. 424, 448-449 (1983) ("Most attorneys paid on hourly rate expect to be paid promptly and without regard to success or failure. Customary rates reflect those expectations. Attorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they

would if they charged an hourly rate.  The difference, however, reflects the time-value of money and the risk of nonrecovery usually borne by clients in cases where lawyers are paid an hourly rate.")

### Defendant's Likely "Made Whole" Argument

Plaintiff anticipates Defendant will contend that Plaintiff's contingency contract somehow limits any possible fee recovery to one-third of the jury award. Defendant undoubtedly will argue that Mr. Bossier will be "made whole" by awarding the contingency percentages that would be the amount Mr. Bossier arguably owes Plaintiff's counsel under the contingency contract.

This is wrong.  The Mississippi Supreme Court simply does not allow this approach and this argument must be rejected.  In *United American Ins. Co. v. Merrill*, 978 So. 2d 613, 620, 630 (Miss. 2007), the Court in a 9-0 decision affirmed an award of $527,479.69 in fees and expenses with facts virtually **identical** to this case.  The plaintiff in *Merrill* was an insured policyholder whose contract was breached by the insurance carrier. The Court plainly stated that in determining fees in this context, "[t]he reasonableness of an attorney's fee award is determined by reference to the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct." *Id.* at 636 (citing *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 486 (Miss. 2002).  The plaintiff's contingency contract certainly did not impose any artificial barrier to a fee and expense award, and no fee imposing statute was involved.

*Merrill* is not new law. *Miss. Power & Light Co. v. Cook* mirrors the analysis in Merrill. In *Cook*, the plaintiff brought a bad faith claim for denial of worker's compensation benefits. The jury awarded punitive damages so the plaintiff was entitled to attorneys' fees. Like here, no fee imposing statute was involved. The trial court awarded the plaintiff $2,060,000 in fees which equaled to 40% of the combined compensatory and punitive damage awards. The Mississippi Supreme Court rejected the trial court's award and forcefully held:

> The *McKee* factors should have been applied by the trial judge in determining the amount of attorneys' fees to be awarded . . . . The award of attorneys' fees should be vacated and remanded to the trial court. The trial judge should reconsider this issue in light of the *McKee* factors and support a new award, if any, based on findings of fact and conclusions of law concerning those specific factors.[7]

*Id.* at 487.

### 9. The Relative Financial Ability of the Parties

The final factor has very little bearing in this case, and Plaintiff does not believe it will be contested. Defendant State Farm clearly has the resources to pay Plaintiff's fee request without any problem.

---

[7] It must be noted that the plaintiff in *Cook* clearly attempted to use the contingency fee as a weapon whereas here, Defendant would like to use it as a defense. In *Cook*, a 40% award would likely be more money than the attorneys' lodestar. Here, obviously the one third contingency agreement is less than Plaintiff's counsel lodestar. With *Merrill* and *Cook*, the Mississippi Supreme Court has rejected this type of gamesmanship and clearly outlined the factors a court must use to arrive at a reasonable fee.

### C. Plaintiff's Expenses Were Reasonable

The incurred expenses of litigation (less amounts attributable solely to issues on which Plaintiff did not prevail) for which Plaintiff has contractual liability and must pay amount to $16,468.28.

These expenses, under *Veasley* and *Merrill*, are like attorney's fees: reasonably foreseeable damages naturally flowing from the negligent breach of contract, and recoverable in this lawsuit, in order to make Mr. Bossier whole. Ms. Guice's affidavit demonstrates that all of these expenses, to the best of her informed belief, were (1) necessary; (2) reasonable, and (3) actually incurred.

## II. PREJUDGMENT INTEREST

The jury awarded Plaintiff $52,300.00 in contractual damages. Just prior to trial, Defendant tendered dwelling extension policy limits of $77,607.80. This tender included prejudgment interest at the rate of 8% from October 10, 2005. (See Exhibit 2). Defendant used the payment of prejudgment interest as part of its proof of "good faith" in its arguments to the jury. Moreover, corporate representative Tip Pupua testified that any additional amounts due would bear prejudgment interest. Under the circumstances, the verdict of $52,300 should likewise bear prejudgment interest at the rate of 8% per annum beginning on October 10, 2005.[8]

---

[8] The Court's [193] Judgment appears to contain a clerical error as it allows for interest only at the rate of .34%.

As the Fifth Circuit has stated, the recovery of interest is a "marketplace concept" and the use of money is a "mercantile privilege" which should not go uncompensated. *Phillips Petroleum Co. v. Adams,* 513 F.2d 355, 366-68 (5th Cir. 1975). Moreover, the Mississippi Supreme Court has recognized in *Veasley* and *Merrill* that in the context of denial of a claim, an insurer should expect to pay whatever amounts are necessary to make the insured whole. 610 So. 2d at 295. Obviously, the amount to make Plaintiff whole includes interest on the amount of money the Defendant wrongfully withheld for years.

Defendant maintains that prejudgment interest should only be allowed from the date the contents list was delivered. However, Mr. Pupua testified that it was State Farm's obligation to fix the amount of contents loss and he intentionally refused to do so, choosing a complete denial instead. Moreover, State Farm paid interest back to October 10, 2005, on the dwelling extension even though it did not receive the affidavit of Joseph Ziz until January 2008.

An award of reasonable prejudgment interest as of October 10, 2005, in this case is necessary to place Plaintiff back in the position that he would have been in if Defendant had not wrongfully denied his claim for contents to the wind-destroyed dwelling extension.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully asks that his Motion be granted, that the Court should award to Plaintiff reasonable attorney's fees of $215,550.00; reasonable litigation expenses of $16,468.28; and reasonable and

fair prejudgment interest from October 10, 2005, to present. Plaintiff further requests that the order granting this motion be in the form of a final, appealable judgment, bearing interest at the legal rate of 8% from and after October 10, 2005, until paid.

    THIS the 19th day of November, 2009.

Respectfully submitted,

REGINALD EDWIN BOSSIER


BY: */s Judy M. Guice*
JUDY M. GUICE (#5057)


Judy M. Guice (MSB #5057)
JUDY M. GUICE, P.A.
P. O. Box 1919
Biloxi, MS 39533-1919
Telephone: (228) 374-9787
Facsimile:  (228) 374-9436

**CERTIFICATE OF SERVICE**

    I, Judy M. Guice, counsel for Plaintiff, do hereby certify that I have this day electronically filed the foregoing with the Clerk of this Court using the ECF system which sent notification of such filing to the following:

H. Benjamin Mullen, Esquire
John A. Banahan, Esquire
Bryan, Nelson, Schroeder, Castigliola & Banahan, PLLC
P. O. Drawer 1529
Pascagoula, MS 39568

This the 19th day of November, 2009.

                                                *s/Judy M. Guice*
                                                JUDY M. GUICE (MSB #5057)