**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**


**REGINALD EDWIN BOSSIER**                                            **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO. 1:08-CV-00408-LTS-RHW**

**STATE FARM FIRE AND CASUALTY**                              **DEFENDANT**
**COMPANY**


**STATE FARM FIRE AND CASUALTY COMPANY'S RESPONSE IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER**
**OF LAW AND FOR A NEW TRIAL [200] [201]**

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.  Preliminary Statement ................................................................................................ 1

II.  Plaintiff Fails to Demonstrate That He Is Entitled to Judgment as a Matter of Law Contrary to the Jury's Unanimous Verdict .......................................................................... 3

    A.  Standard of Review ...................................................................................... 3

    B.  Plaintiff Fails to Show That There Is No Legally Sufficient Evidentiary Basis for the Jury's Verdict on His Claim for Additional Insurance Payments for His House ........ 4

        1.  Burdens of Proof for Dwelling Coverage Claim ................................... 4

        2.  Testimonial and Documentary Evidence Presented to the Jury Provided More Than a Legally Sufficient Evidentiary Basis for the Jury to Reach Its Unanimous Verdict on Plaintiff's Claim for Additional Dwelling Coverage Payments ................................................................................... 6

            (a)  Eyewitness Testimony ............................................................ 7

            (b)  Physical Evidence and Additional Testimony ....................... 12

    C.  Plaintiff Fails to Demonstrate That There Is No Legally Sufficient Evidentiary Basis for the Jury's Verdict on His Claim for Additional Insurance Payments for Personal Property in His Dwelling ................................................................. 17

        1.  Burden of Proof for Personal Property Claim ..................................... 17

        2.  Testimonial and Documentary Evidence Presented to the Jury Provided More Than a Legally Sufficient Evidentiary Basis for the Jury to Reach Its Unanimous Verdict on Plaintiff's Coverage Claim for Personal Property in His Dwelling ................................................................................. 19

    D.  Plaintiff Fails to Demonstrate That There Is No Legally Sufficient Evidentiary Basis for the Jury's Verdict on His Claim for ALE Coverage ......................................... 20

        1.  Plaintiff Waived His Motion for Judgment as a Matter of Law on the ALE Issue ..................................................................................... 20

        2.  Burden of Proof for ALE Claim ....................................................... 22

        3.  Testimonial and Documentary Evidence Presented to the Jury Provided More Than a Legally Sufficient Evidentiary Basis for the Jury to Reach Its Unanimous Verdict Rejecting Plaintiff's Claim for ALE Coverage ................. 23

III.  Plaintiff Fails to Demonstrate That the Jury's Unanimous Verdicts Should Be Set Aside for a New Trial .......................................................................................... 24

A.    Plaintiff Fails to Establish That the Verdicts Were Against the Great Weight of the Evidence ......................................................................................................... 24

B.    Plaintiff Fails to Show That Any Juror Confusion Warrants a New Trial ...................... 27

IV.    Judgment Interest ....................................................................................................... 30

V.    Conclusion ................................................................................................................. 30

I.    PRELIMINARY STATEMENT

State Farm Fire and Casualty Company ("State Farm") respectfully submits this response in opposition to Plaintiff's combined motion for judgment as a matter of law and for a new trial. [200], [201]. At trial, Plaintiff alleged that he should receive $629,244.87 in compensatory damages and $2,000,000 in punitive damages arising from losses to his property during Hurricane Katrina and from State Farm's adjustment of his insurance claim. Nov. 10, 2009 Jury Verdict [189]; Nov. 10, 2009 Hr'g Tr. at 47:4-5; Nov. 12, 2009 Hr'g Tr. at 31:19-23. After hearing and reviewing the evidence and arguments of counsel, the Jury awarded Plaintiff only $52,300 in compensatory damages, which included $0 for Plaintiff's dwelling, $52,300 for Plaintiff's personal property, and $0 for additional living expenses ("ALE"). Nov. 10, 2009 Jury Verdict [189]. In Phase Two of trial for punitive damages, the Jury unanimously ruled "[w]e, the jury, find for Defendant on the issue of punitive damages." Nov. 12, 2009 Jury Verdict [191]. Indeed, the total $52,300 judgment is far less than the $275,000 offer of judgment by State Farm. [204-2].

In his present motion, Plaintiff seeks to overrule the Jury's unanimous verdicts because he contends that the evidence presented at the two-week trial is so strong that no reasonable juror could have found for State Farm on any issue. Despite his purported belief in the strength of the evidence, Plaintiff provides no record citations to any evidence in his motion. As discussed below, Plaintiff has failed to meet his heavy burden of proof that could justify overruling the Jury's verdicts, and his motion should be denied in its entirety.

The Court ruled at trial that "[t]he Court finds that this is a classic jury question case as to all issues." Nov. 9, 2009, Hr'g Tr. at 130:24-131:4. During the trial, the Jury heard extensive evidence that demonstrated by more than a legally sufficient evidentiary basis that storm surge flooding and waves caused nearly all the damage to Plaintiff's property. In reviewing this evidence and ruling on Plaintiff's motion for judgment as a matter of law, the Court must, under Fifth Circuit precedent, construe the evidence in favor of State Farm. The Jury heard consistent testimony from three eyewitnesses –

including Plaintiff himself – showing that Plaintiff's house and personal property sustained no wind damage before 8:00 am on the morning of the storm. Plaintiff and his wife were standing in the middle of the house and could not identify any wind damage, even to their windows, before the storm surge flooding arrived. At around 8:00 am, storm surge flooding and waves rushed into Plaintiff's neighborhood, enveloping the houses, driving Plaintiff and his wife into the attic, nearly drowning Plaintiff's neighbors, and flooding Plaintiff's house and personal property.

These eyewitness accounts were bolstered at trial by other testimony and extensive physical evidence of storm surge damage to Plaintiff's property. The Jury heard testimony by State Farm's expert oceanographer Dr. Robert Weisberg, who testified that storm surge flooding and waves at Plaintiff's house was more than enough to envelop his entire first floor and exert about 2,000 pounds per square foot of force on Plaintiff's walls. The Jury also heard testimony from State Farm Team Manager Tip Pupua and adjusters Lee Ann Johnson and Shellie Leverett, all of whom carefully analyzed the physical damage to Plaintiff's house and demonstrated that storm surge flooding caused the severe damage to Plaintiff's property. In addition to all this testimony, the Jury viewed numerous photographs that showed gutters, soffits, and roof vents intact on Plaintiff's roof and showed the minor shingle damage. The photographs also documented the severe damage from storm surge flooding and waves beneath the flood line in Plaintiff's house. Therefore, in light of the overwhelming testimonial and physical evidence, the Jury had far more than a legally sufficient evidentiary basis to enter its unanimous verdict on the compensatory damages claims.[1] Accordingly, Plaintiff's motion for judgment as a matter of law should be denied.

Plaintiff's motion for a new trial is also legally untenable. Plaintiff has failed to demonstrate in his motion that the Jury's verdicts were against the great weight of the evidence, as Plaintiff must do to

---

[1] Plaintiff does not move for judgment as a matter of law on the issue of punitive damages. *See* [201] at 1-4; [200] at 1. Plaintiff has, therefore, waived any such motion on the issue of punitive damages.

obtain a new trial. As discussed below, the Jury heard extensive testimonial evidence and reviewed much documentary evidence that supports its unanimous verdicts. Plaintiff fails to demonstrate in his motion that the verdicts were against the great weight of the evidence. Nor, in contesting the Jury charge, does Plaintiff establish that the charge as a whole created a substantial likelihood of juror confusion. Indeed, Plaintiff's proposed jury instructions on the parties' burdens of proof were largely adopted by the Court, and the verdict form does not reference or alter any burden of proof. In addition, Plaintiff's other minor disputes with the Jury's verdicts are without merit and do not warrant a new trial.

Accordingly, for these reasons and those set forth below, Plaintiff's motion for judgment as a matter of law and for a new trial should be denied in its entirety.

## II. PLAINTIFF FAILS TO DEMONSTRATE THAT HE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW CONTRARY TO THE JURY'S UNANIMOUS VERDICT

Plaintiff seeks judgment as a matter of law on his claim for additional insurance payments for losses to his house, personal property, and ALE claim, and Plaintiff contends that no reasonable juror could have supported the Phase One verdict. [201] at 2-3. Plaintiff, however, fails to cite any portion of the record that supports his assertions. *See id.* In fact, the record clearly demonstrates that there was more than sufficient evidence for a reasonable jury to conclude – as the Jury did – that Plaintiff was not entitled to additional payments for losses to his house, personal property in his house, or ALE claim. Consequently, the Court should deny Plaintiff's motion for judgment as a matter of law.

### A. Standard of Review

Plaintiff acknowledges that he bears a "heavy" burden to prevail in a motion for judgment as a matter of law. [201] at 2. Plaintiff must demonstrate "that a reasonable jury would not have a legally sufficient evidentiary basis" for its findings. Fed. R. Civ. P. 50(a)(1); *see* Fed. R. Civ. P. 50(b) (post-verdict motion is simply "a renewed motion for judgment as a matter of law"). With regard to review of a post-verdict motion for judgment as a matter of law, the Fifth Circuit has held that "'[a] jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the

jury did.'" *Morante v. Am. Gen. Fin. Ctr.*, 157 F.3d 1006, 1009 (5th Cir. 1998) (citation omitted). Judgment as a matter of law is only warranted "where 'the evidence at trial points so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Burroughs v. FFP Operating Partners, L.P.*, 28 F.3d 543, 546 (5th Cir. 1994) (citation omitted); *accord Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 624 (5th Cir. 2008). In other words, as the United States Supreme Court has held, judgment under Fed. R. Civ. P. 50 is proper if "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). But "[i]f reasonable minds could differ as to the import of the evidence," judgment should not be entered under Fed. R. Civ. P. 50. *Id.* at 250-51.

In applying this standard, the Supreme Court has held that a district court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000) (reversing Fed. R. Civ. P. 50 judgment because the circuit court failed to draw all inferences for the non-movant); *see also Broussard*, 523 F.3d at 624. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Reeves*, 530 U.S. at 150 (citation omitted). When applying the Rule 50 standard, the district court reviews the record as a whole, and as the Supreme Court has directed, the district court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151; *accord Arismendez v. Nightingale Home Health Care Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

As shown below, in light of these clear pronouncements, it is evident that Plaintiff's motion should be denied.

> **B.      Plaintiff Fails to Show That There Is No Legally Sufficient Evidentiary Basis for the Jury's Verdict on His Claim for Additional Insurance Payments for His House**

> **1.      Burdens of Proof for Dwelling Coverage Claim**

Mississippi law is clear regarding the parties' respective burdens of proof on a claim for

insurance coverage for a house under an open peril policy. <u>First</u>, as the Mississippi Supreme Court held in *Corban*, the insured, Plaintiff here, is "required to prove a 'direct, physical loss to property described.'" *Corban v. United Servs. Auto. Ass'n*, – So. 3d –, 2009 WL 3208704, at *14 (Miss. Oct. 8, 2009) (en banc) (quoting policy); *see also Broussard*, 523 F.3d at 625 ("'Under Mississippi law a plaintiff has the burden of proving a right to recover under the insurance policy sued on,' and this basic burden never shifts from the plaintiff.'") (citation omitted). As State Farm explained in its Trial Brief [184], incorporated herein by reference, Plaintiff cannot, under *Corban*, meet this burden merely by pointing to the totality of damage after Hurricane Katrina. The Mississippi Supreme Court in *Corban* rejected the view "that loss is not determined until the hurricane is over." 2009 WL 3208704, at *13. Rather, there may be "'*many losses* because property can consist of *many elements*.'" *Id.* at *9 (emphasis in original); *see also Dickinson v. Nationwide Mut. Fire Ins. Co.*, 2008 WL 941783, at *5 (S.D. Miss. April 4, 2008) (Senter, J.) (forces "may cause damage to different parts or items of the insured property").

<u>Second</u>, if Plaintiff identifies a specific accidental direct physical loss, then State Farm bears the burden to show that the specific loss Plaintiff identified was caused by an excluded peril. *Corban*, 2009 WL 3208704, at *14. State Farm does not bear this burden until Plaintiff first identifies a particular accidental direct physical loss. *Id.* ("*Thereafter*, [the insurer] assumes the burden to prove, by a preponderance of the evidence, that the causes of the losses are excluded by the policy . . . .") (emphasis added). State Farm may satisfy its burden by showing that the loss Plaintiff first identified was caused or concurrently contributed to by storm surge flooding, an excluded peril. *Id.*

Plaintiff, in his motion, misstates the applicable burden of proof for his claim for dwelling coverage. It is not State Farm's burden to prove a negative, *i.e.*, that Plaintiff's house sustained no damage from wind. *See* [201] at 3, 5 (citing no authority). Rather, under *Corban*, State Farm need only prove that a loss Plaintiff first identifies was caused by an excluded peril, 2009 WL 3208704, at *14,

rather than not caused by a covered peril.

Third, Plaintiff must prove the dollar value of the claimed loss. *Savage v. LaGrange*, 815 So. 2d 485, 491 (Miss. Ct. App. 2002) (en banc) (Mississippi law requires a plaintiff to prove "not only the fact of his injury, but the extent of the injury in order to support an award of monetary damages"); *Home Ins. Co. v. Greene*, 229 So. 2d 576, 579 (Miss. 1969) (noting that "[a]n insured seeking recovery on a policy insuring against fire has the burden of proving the loss and its extent").

The Court, in instructing the Jury over State Farm's objections, stated that Plaintiff met his initial burden to identify an accidental direct physical loss. *See* Nov. 10, 2009 Hr'g Tr. at 51:5-25.[2]  The Court instructed that State Farm bore the burden to show by a preponderance of the evidence that the losses to Plaintiff's house that were not already adjusted were caused by storm surge flooding. *Id.* (stating that State Farm paid Plaintiff $15,872.13 for covered losses to the dwelling).  For such storm surge losses, the Court instructed that State Farm "does not owe the plaintiff policy benefits." *Id.*  As shown below, there was more than a legally sufficient evidentiary basis for the Jury to conclude that State Farm met its burden and that no further payments were warranted for Plaintiff's dwelling.

**2.      Testimonial and Documentary Evidence Presented to the Jury Provided More Than a Legally Sufficient Evidentiary Basis for the Jury to Reach Its Unanimous Verdict on Plaintiff's Claim for Additional Dwelling Coverage Payments**

After hearing all the evidence at trial, including testimony and documents, as well as arguments by counsel, the Jury unanimously ruled that Plaintiff should receive $0 for his claim for additional dwelling coverage payments. Nov. 10, 2009 Jury Verdict [189].  Plaintiff has failed to demonstrate in his motion that there was *no* legally sufficient evidentiary basis for this verdict.  Indeed, Plaintiff does not cite to any portion of the record in his motion for judgment as a matter of law.  Contrary to Plaintiff's

---

[2]    State Farm preserves all of its objections to the Court's jury instructions, both at trial and as stated in State Farm's Trial Brief [184] and hereby incorporates and reasserts them herein.  However, review of the objections to the Court's jury instructions is not needed to deny Plaintiff's motion in its entirety.

citation-free assertions, the Jury heard extensive testimony, including by eyewitnesses, that provided more than a reasonable basis for the Jury's verdict. The eyewitness testimony was reinforced by physical evidence, as explained by State Farm expert Dr. Robert Weisberg, Plaintiff's wife, photographs, and State Farm's team manager and adjusters. The record evidence extensively established that Plaintiff's house was severely damaged by destructive storm surge flooding in the early morning. All of this evidence on the record is construed by the Court in favor of State Farm. *See, e.g.*, *Reeves*, 530 U.S. at 150. Therefore, the evidence presented to the Jury at trial provided far more than a legally sufficient basis for the Jury to unanimously rule that Plaintiff should receive no further dwelling coverage payments.

(a)    Eyewitness Testimony

Testimony at trial by several eyewitnesses all confirmed that Plaintiff's house was inundated with fast-moving and deep storm surge flooding. The first eyewitness, Joseph Ziz, testified that he lived across the street from Plaintiff and stayed at home during the storm. Nov. 3, 2009 Hr'g Tr. at 10:21-24, 11:6-12, 12:14-16. While Mr. Ziz was inside his house, his front door was open, which allowed the winds to blow into his house. *Id.* at 38:2-11. Yet, the wind was so minimal that while it was able to blow into his house, "[t]here was nothing in the house disturbed" by the wind. *Id.* The wind was also calm enough to permit his neighbor to walk over to his house on the morning of the storm. *Id.* at 39:6-9. At around 7:30 am, Mr. Ziz decided to leave his house with his family to seek higher ground, and while they were driving away, they were quickly inundated by deep flood water:

Q. And then as you were sitting there, you looked in your mirror and you saw water coming, didn't you?

A. Yes, I did.

Q. And it was coming fast?

A. It came fast.

Q. And this was about 7:45 or 7:50 in the morning?

A.  Yes, sir.

Q.  And you told your wife, hold on, here it comes?

A.  That's right.

Q.  Because you knew that water was coming –

A.  It was coming quick.

                              …

Q.  And you were surprised –

A.  I was surprised how fast everything happened.

Q.  You were surprised at how fast that water came in?

A.  Yes.

*Id.* at 40:25-41:10, 43:3-6.  The flooding that rushed into Plaintiff's neighborhood was already about five and a half feet deep by the time Mr. Ziz could exit his car and wade to safety.  *Id.* at 41:22-42:7.  By 8:00 am, Mr. Ziz and his family took shelter from the flooding in a nearby house, climbed to the second floor, and looked out the window to behold the mass flooding to the neighborhood.  *Id.* at 42:8-43:16.  By 8:00 am, houses in Plaintiff's neighborhood were under water.  *Id.* at 43:7-16.  Other than the damage to Plaintiff's dwelling extension – damage for which State Farm paid Plaintiff the policy limit – Mr. Ziz could not testify regarding any other damage to Plaintiff's property.  *See id.* at 24:5-12 (Mr. Ziz's view restricted to Plaintiff's dwelling extension and fence).[3]

Testimony from a second eyewitness – Plaintiff's wife – confirmed that Plaintiff's house did not sustain wind damage before the flood waters arrived, and her testimony reinforced the conclusion that storm surge flooding caused damage to Plaintiff's house.  Mrs. Bossier stayed with Plaintiff in the house on the day Hurricane Katrina struck.  Nov. 4, 2009, Hr'g Tr. at 75:7-77:3.  At about 6:00 am, Mrs.

---

[3]  Although Mr. Ziz testified that he heard winds and saw that Plaintiff's dwelling extension and fence were no longer on his property, Plaintiff misrepresents the record by stating that Mr. Ziz "observed" the dwelling extension "being destroyed by wind."  [201] at 4.  Notably, as with the rest of Plaintiff's motion, Plaintiff does not cite to any testimony by Mr. Ziz to support that assertion.  That is because Mr. Ziz clearly testified that he did not see a tornado or winds damage Plaintiff's property and only heard winds.  *See, e.g.*, Nov. 3, 2009 Hr'g Tr. at 37:4-5, 24:20-25:5.

Bossier testified that the tidal waters were already encroaching into the yard by about ten or twelve feet, which was "probably midway into my yard." *Id.* at 77:1-3, 83:17-85:18. During these early morning hours, Mrs. Bossier was with Plaintiff in the middle of the house. *Id.* at 105:19-106:2. Looking out the wind, Mrs. Bossier saw flood waters coming from the Back Bay to their house. *Id.* at 84:8-10. At about 8:00 that morning, Mrs. Bossier and Plaintiff went to the attic to avoid "drowning," among other reasons. *Id.* at 88:16-89:10.

While Mrs. Bossier was in the attic, she walked "the entire attic to see if there was a way to get out." *Id.* at 77:15-19. After searching the attic for an escape, Mrs. Bossier did not know whether the attic was leaking. *Id.* at 77:20-23. Before Plaintiff and Mrs. Bossier went to the attic, Mrs. Bossier testified that she did not observe any windows being broken by blowing objects. *Id.* at 87:17-88:2. Nor could Mrs. Bossier state whether the east wall of the house was damaged before she went to the attic at 8:00 am. *Id.* at 106:7-11. When asked if she could support any claim of wind damage to the east wall based on being in the middle of the house between 7:00 and 8:00 am on the morning of Hurricane Katrina, Mrs. Bossier testified she could not:

> Q. If someone had indicated that between seven and 8:00, that winds or a tornado had taken out the east wall of your house, you wouldn't be able to support that, would you?
>
> A. No, sir.

*Id.* at 106:12-15. Ultimately, Mrs. Bossier had "no question" that Plaintiff's house flooded. *Id.* at 81:18-20, 93:21-24.

A third eyewitness who testified before the Jury was Plaintiff, who confirmed the testimony of his wife and Mr. Ziz. Plaintiff stayed at home during the hurricane and witnessed the effects on his house before he went to the attic. *Id.* at 121:6-12. While he and his wife were standing in the great room of the house on the morning of the storm, Plaintiff confirmed that his windows were not broken by any wind-driven debris. *Id.* at 122:14-19. While looking out the windows, Plaintiff saw flood waters coming out of the Back Bay toward his house, and he decided to run up to the attic to avoid "drowning."

9

*Id.* at 123:17-124:9. In the attic, Plaintiff testified that he and Mrs. Bossier were "running around like rats" and "tried to kick out some walls" "to figure out a way to maybe get out and hang on the roof." *Id.* at 112:1-12. The Jury could reasonably conclude from Plaintiff's testimony that, having seen the wind and water forces from Hurricane Katrina firsthand, Plaintiff evidently believed that it was safer to "hang on the roof" than to remain inside the attic exposed to the rising flood waters. Indeed, while in the attic, the ceiling below Plaintiff and his wife peeled back, revealing the flooding and devastation below. *Id.* at 93:7-17. Thus, the consistent testimony of these three eyewitnesses provided more than a reasonable basis for the Jury to conclude that storm surge flooding caused the damage to Plaintiff's house.

Given that the Jury could properly have based its verdict on the above eyewitness testimony, Plaintiff's objection to the lack of testimony from a licensed engineer on behalf of State Farm rings hollow. *See* [201] at 2.[4] Expert testimony is simply to aid the Jury in its task, not tell it what result to reach, as Plaintiff suggests. *See* Fed. R. Evid. 702. The Court properly instructed the Jury (without objection from Plaintiff) that testimony by an expert witness was to be "helpful to the jury" and the Jury was "not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it." Nov. 10, 2009 Hr'g Tr. at 50:7-22. Pursuant to this instruction and the proper role of expert testimony, the Jury could reasonably disregard the testimony of Plaintiff's expert Ted Biddy. And because the Jury is not required to accept Mr. Biddy's testimony, his testimony should be disregarded by this Court when ruling on Plaintiff's motion for judgment as a matter of law. *See Reeves*, 530 U.S. at 150 (holding, when ruling on motion under Fed. R. Civ. P. 50, the district court "must disregard all evidence favorable to the moving party that the jury is not required to believe").

Mr. Biddy's opinion is also reasonably discredited by the Jury because it contradicted the

---

[4]  In advance of trial, State Farm moved to exclude Plaintiff's expert witnesses pursuant to the Federal Rules of Evidence and the Federal Rules of Civil Procedure. [87], [88], [89], [90], [91], [92], [103], [115], [120]. The Court denied those motions. [164]. State Farm respectfully submits that the Court's order denying these motions was in error, and State Farm preserves and reasserts the arguments and authorities in those motions herein. However, review of the Court's ruling denying State Farm's motions to exclude Plaintiff's expert is not needed to deny Plaintiff's motion in its entirety.

eyewitness testimony of Mrs. Bossier and Plaintiff, who both stood in the middle of the house at the same time Mr. Biddy speculated that "the winds of the hurricane between the hour of six and 8:00 o'clock in the morning" caused the dwelling losses.  Nov. 4, 2009 Hr'g Tr. at 21:5-13.  The Jury could also reasonably disregard Mr. Biddy's opinion because he did not talk to Plaintiff or Mrs. Bossier to test whether his opinion was confirmed or undercut by their eyewitness accounts.  *Id.* at 25:1-8.  Avoiding contrary data is not reliable science.  *See, e.g.*, *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) (holding an expert who "merely accepted some of the . . . data that suited his theory and ignored other portions of it that did not" fails to employ a reliable methodology; "such a selective use of facts fails to satisfy the scientific method and *Daubert*, and it thus fails to 'assist the trier of fact'") (citation omitted).  In addition, the Jury also heard that Mr. Biddy (a proffered engineer) examined photos of Plaintiff's house upside down as part of his analysis.  Nov. 9, 2009 Hr'g Tr. at 88:25-90:12.[5] All these substantive defects of Mr. Biddy's testimony are in addition to his bias, which, on its own, could form a reasonable basis for the Jury to discount his opinion altogether.  *See, e.g.*, Nov. 4, 2009 Hr'g Tr. at 51:7-52:6 (cross-examination about Mr. Biddy being paid to generate reports for insureds finding wind damage to challenge their insurers); *see also* Nov. 5, 2009 Hr'g Tr. at 87:24-88:2, 91:3-16, 92:2-6, 103:16-25 (testimony that independent adjuster analyzed and rejected conclusions of Biddy report).

Plaintiff contends that, under *Broussard*, expert testimony by a professional engineer is the *sine qua non* of defeating a motion for judgment as a matter of law, but that claim is unfounded.  *See* [201] at 4.  The Fifth Circuit in *Broussard* held that State Farm's expert testimony was *sufficient* in that case to defeat the plaintiffs' motion for judgment as a matter of law, not *necessary* to do so.  523 F.3d at 625.

---

[5]  Plaintiff misleadingly states that Mr. Biddy "personally observed that the east wall closes to the dwelling extension was blown in by winds." [201] at 2.  In fact, Mr. Biddy did not observe any damage to Plaintiff's property as it was happening but only reviewed the damage after the fact.  *See, e.g.*, Nov. 4, 2009 Hr'g Tr. at 1:16-2:22 (analysis and report prepared in February, 2006).  Notably, Mr. Biddy declined to interview Mrs. Bossier, *id.* at 25:1-8, who was physically in the house on the day of Hurricane Katrina and who cannot confirm that there was any wind damage to the east wall of Plaintiff's house.  *Id.* at 106:12-15.

Indeed, in *Broussard*, the Fifth Circuit also looked to and credited the opinion of State Farm's adjuster who examined the damage patterns around the plaintiffs' slab, the position of the plaintiffs' property relative to the surge line, and other factors. *Id.* at 628. The Fifth Circuit also held that "the ultimate allocation of wind and water damages under the [plaintiffs'] dwelling coverage is a question of fact for the jury." *Id.* at 627.

Moreover, Plaintiff wrongly contends that Mississippi law states that "only a licensed professional engineer can give opinions concerning causation." [201] at 2 (discussing Miss. Code Ann. § 73-13-1). For the reasons stated by State Farm at trial and in its bench memoranda, State Farm reasserts that the Court should have denied Plaintiff's motion, under Fed. R. Evid. 601 and Miss. Code Ann. § 73-13-1, to exclude expert testimony by State Farm's experts. [185], [187]. As discussed by State Farm's counsel at trial and in State Farm's bench memoranda, incorporated herein, Miss. Code Ann. § 73-13-1 *et seq.*, is not a statute regarding witness competency, is designed to avoid burdening the admissibility of expert testimony in federal court, does not preclude experts in other fields from opining on the cause of damage (Miss. Code Ann. § 73-13-41(a)), and does not otherwise apply in this case. However, review of the Court's ruling excluding State Farm's expert Dr. Masters and limiting Dr. Weisberg's testimony is not needed to deny Plaintiff's instant motion in its entirety.

In this case, the Jury could reasonably rely upon testimony from three eyewitnesses, State Farm's oceanography expert, photographs of Plaintiff's house, and several State Farm employees who studied the damage to Plaintiff's house. All of this evidence provided more than a legally sufficient evidentiary basis for the Jury to conclude that storm surge flooding caused the damage to Plaintiff's house. Not only is such evidence sufficient to contradict Plaintiff's theory, *see* [201] at 5, it is also sufficient for the Jury to find for State Farm.

(b)    Physical Evidence and Additional Testimony

Physical evidence also supports the conclusion that flooding was responsible for the damage to

Plaintiff's house.  FEMA waterlines in the vicinity of Plaintiff's house showed that storm surge flooding with waves reached 18.5 to 20 feet, according to State Farm expert Dr. Robert Weisberg.  Nov. 9, 2009 Hr'g Tr. at 35:9-17.  Dr. Weisberg, after analyzing extensive weather data, testified that Plaintiff's house "would have been inundated by water with waves on top of that" by around 9:00 am "whereas the wind had not quite peaked at that point yet."  *Id.* at 43:23-44:20; *see also id.* at 72:8-15 (Dr. Weisberg explains that additional weather models show flood inundation at 8:00 am).  After hearing Mr. Ziz's testimony about the speed and timing of the storm surge, Dr. Weisberg (like Mr. Ziz) "was actually surprised how fast" the flooding came to Plaintiff's house at the rate of half a foot per minute, "which is very, very fast."  *Id.* at 44:21-46:6.  Dr. Weisberg informed the Jury that, as a matter of physical science, "the forces by water are ten times the forces by the wind, and the application of those forces by water started as soon as the water reached the . . . grade level of any house in that general vicinity."  *Id.* at 53:14-54:20.  Specifically, these forces were computed by Dr. Weisberg to be 957 pounds per square foot for wave force plus 1,114 pounds per square foot for hydrostatic force.  *Id.* at 56:15-57:2.

Further physical evidence also provided the Jury with more than a reasonable basis to find for State Farm on the issue of additional insurance payments for Plaintiff's house.  Mrs. Bossier testified that Plaintiff's house was destroyed from the roof line (*i.e.*, gutters) and below.  Nov. 4, 2009, Hr'g Tr. at 95:13-23, 96:8-10, 97:4-98:24.  Post-storm photographs – which Plaintiff stipulated were fair depictions of the house, *id.* at 98:25-99:2 – show that gutters remained intact on the roof line.  *See, e.g.*, Ex. P-74 to P-75.  Mrs. Bossier testified that two doors were used to prop up the roof after the storm, which had lost much of its structural support from the damage to the first floor.  Nov. 4, 2009, Hr'g Tr. at 96:2-7.

State Farm's Team Manager, Tip Pupua, also studied the remains of Plaintiff's house to ascertain the extent of damage from various perils.  Mr. Pupua testified that the physical evidence of damage to Plaintiff's house confirmed extensive flood damage below the roof line and minor wind damage above the roof line:

Q. What is it in the photographs, and we can go back, and the jury will have them to take back there, they begin with I think D14. What is it in those photographs that you found significant in supporting the decision that you made on Mr. Bossier's claim?

A. What I found with these photographs is that there is a consistent pattern of damage from the bottom up. And if we look at this photo, along with the other photos we looked at, there is a major structural damage to this level of the house from the bottom up. In reviewing the information that was found by the adjuster when she did her inspection, I identified that there were two causes of loss to the property. We did have some wind damage, but we also had some major water damage, and that's what this photograph here depicts, anything from the ground up had the more severe damage, which was attributed to the force of the water.

Nov. 9, 2009 Hr'g Tr. at 85:4-19. Above the flood line, gutters, soffits, and roof vents remained on Plaintiff's house. *Id.* at 86:3-7, 115:2-5, 119:18-25. Those features of Plaintiff's roof are especially susceptible to wind damage, and the fact that they remained intact supports the conclusion that flooding caused the severe damage to Plaintiff's house. *Id.* at 86:8-25, 116:6-18; *see also id.* at 87:19-88:13; Ex. D15. [6]

State Farm adjusters reinforce the reasonableness of the Jury's unanimous verdict denying Plaintiff's claim for further insurance payments on their dwelling. Lee Ann Johnson, an independent adjuster for State Farm, inspected and analyzed the cause and extent of damage to Plaintiff's property. Nov. 5, 2009 Hr'g Tr. at 8:14-22, 29:6-30:13. Ms. Johnson determined there was about an eight foot water line according to a water line on the edge of the roof and water lines in the neighboring trees. *Id.* at 30:18-31:20, 40:2-41:1, 63:8-11; *see also id.* at 32:4-25, 34:6-11. Based on her analysis of Plaintiff's structure, the water line "was probably all the way up to the ceiling." *Id.* at 30:18-31:20. The portions of Plaintiff's house above the water line were not substantially damaged. Ms. Johnson testified that "a good amount of the shingles were very much intact, indicating there wasn't a great amount of wind damage that had occurred there at that home." *Id.* at 34:14-22; *see also id.* at 35:4-11, 64:9-11. Gutters

---

[6]  Plaintiff incorrectly states – with no citation to any record evidence – that it was "uncontradicted" that wind destroyed the dwelling extension. [201] at 2. The record evidence refutes Plaintiff's assertion. In addition to the extensive evidence of storm surge flooding at Plaintiff's house, Mr. Pupua testified that the "physical evidence" of storm surge flooding reasonably supported the initial conclusion that the dwelling extension was flooded. Nov. 9, 2009 Hr'g Tr. at 93:8-94:3.

were also intact. *Id.* at 35:15-22. Thus, the physical evidence as summarized by Ms. Johnson supported the Jury's determination that storm surge flooding caused the damage to Plaintiff's house.

The additional testimony by Shellie Leverett provided a further evidentiary basis for the Jury's verdict. Ms. Leverett testified that she is an independent adjuster for State Farm who analyzed the cause and extent of damage to Plaintiff's house. *Id.* at 83:6-10, 86:7-12. She also determined that photographic evidence showed flooding and waves reached the ceiling inside Plaintiff's house, "which would indicate that waves went at least to eight feet." *Id.* at 104:10-22. The physical location of the house relative to the surge line reinforced her conclusion that storm surge flooding caused the extensive damage to the house. *Id.* at 106:22-107:15. Ms. Leverett also updated and corrected payments for some isolated wind damage to the roof, which accounted for "replacing all of the roof covering with laminated composition shingles, replacing the synthetic stucco, and all related trim, flashing and painting." *Id.* at 97:18-24, 99:2-25 (additional payment with interest). Ms. Leverett determined that such wind damage was nominal:

> After reviewing Mr. Biddy's report [from Plaintiff] and looking at the information we had on file the way Ms. Johnson had documented the file looking at the claim photographs, FEMA information, that type of thing, looking at the surrounding area, the trees, the properties in that area, I was able to determine that the winds were not strong enough to cause structural damage, or certainly not to destroy the dwelling . . . .

*Id.* at 103:16-25; *see also id.* at 105:5-10, 111:7-15 (wind not strong enough to break windows).[7]

Plaintiff references the potential damage to *others'* properties in the area while avoiding discussions of the evidence of the physical damage to *Plaintiff's* property. [201] at 4-5. Plaintiff attempted to do the same at trial, and the Jury reasonably rejected that approach. As the Jury could reasonably conclude, this case is about the physical damage to *Plaintiff's* property, and he cannot

---

[7]  Plaintiff asserts – with no citation to any record evidence – that "testimony from poorly trained and unqualified adjusters" should not support the Jury's verdict. [201] at 5. Plaintiff does not identify who was supposedly poorly trained and unqualified nor does Plaintiff present any evidence to support that assertion. *See id.* By its verdict, the Jury clearly credited the testimony of all the adjusters who testified for State Farm, and the Court, in ruling on Plaintiff's instant motion, should draw "all reasonable inferences in favor" of State Farm, "the nonmoving party." *Reeves*, 530 U.S. at 150.

recover insurance coverage for damage to others' properties.  And although one could attempt to extrapolate damage to Plaintiff's property by reference to other properties in the immediate vicinity, that evidence is vastly inferior to the physical evidence at Plaintiff's property itself, including testimonial and photographic evidence.  The Jury reasonably credited the evidence of damage to *Plaintiff's* property over the potential damage to unrelated properties.

Plaintiff also asserts, with no record citations whatsoever, that "uncontradicted testimony" shows that Plaintiff had a 40-year roof on his house.  [201] at 3.  In fact, the record shows not only that Plaintiff's assertion was contradicted, but that the Jury could reasonably reject that conclusion.  The Jury heard testimony from independent adjuster Ms. Leverett, who carefully studied the evidence of Plaintiff's dwelling claim, and after her analysis, she concluded that Plaintiff's roof was a 30-year roof: "[i]n looking at the photographs and the thickness of the shingles, it appeared to be a 30-year roof to me."  Nov. 5, 2009 Hr'g Tr. at 116:23-117:1; *see also id.* at 117:2-13.  The original adjuster, Ms. Johnson, did not climb on the roof to ascertain its quality because it was unstable from the flood damage, and she relied on photographs – as did Ms. Leverett.  *Id.* at 29:6-30:14, 38:12-39:6.  Plaintiff presented no evidence at trial regarding the age or quality of the roof, nor did Plaintiff ever dispute the age of the roof during the adjustment of his claim.  *See* Nov. 9, 2009 Hr'g Tr. at 115:9-24; *see also* Nov. 5, 2009 Hr'g Tr. at 49:17-20.  The Jury, after hearing all this testimonial evidence, reasonably resolved this disputed issue of fact and declined to award Plaintiff additional dwelling payments.  In any event, Plaintiff failed to present the Jury with any evidence of the dollar value of a purported 40-year roof, so the Jury had no basis to award any damages for that part of the property.[8]

Accordingly, Plaintiff has failed to satisfy his heavy burden of proof to establish that there was

---

[8]  State Farm moved in advance of trial, [89], [90], [115], to exclude Plaintiff's appraisal report, which was the sole evidence presented by Plaintiff on the dollar value of his house as a whole (as opposed to specific components of the house, such as the roof; the appraisers did not assign a dollar value to Plaintiff's roof).  The Court denied State Farm's motion to exclude the appraisal report.  [164].  State Farm respectfully submits that the Court's order denying the motion was in error, and State Farm preserves and reasserts the arguments and authorities in its motions herein.  However, review of the Court's ruling is not needed to deny Plaintiff's motion in its entirety.

no legally sufficient evidentiary basis for the Jury's unanimous verdict. Plaintiff's motion for judgment as a matter of law on the dwelling coverage issue should be denied.[9]

### C. Plaintiff Fails to Demonstrate That There Is No Legally Sufficient Evidentiary Basis for the Jury's Verdict on His Claim for <u>Additional Insurance Payments for Personal Property in His Dwelling</u>

#### 1. Burden of Proof for Personal Property Claim

Mississippi law imposes a different burden of proof for a personal property claim under named-peril coverage than a dwelling claim under open peril coverage. Both the Fifth Circuit and the Mississippi Supreme Court have held that under named-peril coverage for personal property, Plaintiff bears the burden to prove by a preponderance of the evidence that his items of personal property sustained an accidental direct physical loss caused by an enumerated peril. *Corban*, 2009 WL 3208704, at *15 ("Under 'named perils' coverage, the burden of proof rests with the insured 'to prove that the damages sustained were covered by the peril insured against . . . .'") (citation omitted); *Broussard*, 523 F.3d at 625 (under "named peril" coverage, plaintiff "'has the burden of proving that any losses were caused by a peril covered by the policy'") (citation omitted); *accord* Ex. P-8 (Homeowners Policy) at 7 (personal property coverage insures against "accidental direct physical loss to property described in Coverage B caused by the following perils," which are enumerated in the policy).

Thus, to make a prima facie case for personal property coverage, Plaintiff has the burden of proving that his personal property was damaged by one of the perils specifically enumerated in the relevant coverage provisions – in this case, "windstorm," including rain entering the dwelling through an opening caused by the direct force of wind. *See Corban*, 2009 WL 3208704, at *15 ("[W]ith respect to the 'named perils' coverage of 'Coverage C – Personal Property,' the [plaintiffs] are required to prove, by

---

[9]  Plaintiff incorrectly recounts this Court's statements during an in-chambers charge conference, stating that the Court noted that Plaintiff's pre-verdict motion for judgment as a matter of law on Coverage A and Coverage B "probably should have been granted." [201] at 3. That is not what the Court remarked. Nov. 9, 2009 Chambers Hr'g Tr. at 10:6-9. In any event, the Court denied Plaintiff's motion for judgment as a matter of law, stating "[t]he Court finds that this is a classic jury question case as to all issues." Nov. 9, 2009, Hr'g Tr. at 130:24-131:4.

a preponderance of the evidence, that the 'direct physical loss' to the property described in Coverage C was caused by wind . . . ."); *Lunday v. Lititz Mut. Ins. Co.*, 276 So. 2d 696, 698-99 (Miss. 1973) (under specified peril policy insuring against "direct loss by windstorm" it was Plaintiff's burden "to prove that the damages sustained were covered by the peril insured against, that is, by direct action of the wind"). To satisfy this burden, Plaintiff must prove both that his property was damaged as a result of wind *and* the amount of damage that the wind caused.[10] Mississippi law does not shift any of Plaintiff's burden to State Farm.

Under Fifth Circuit and Mississippi Supreme Court precedent, Plaintiff's burden cannot be satisfied by a showing that the contents of Plaintiff's house were destroyed simply as a result of Hurricane Katrina. As the Fifth Circuit concluded in *Broussard*, "a stipulation that the Broussards' personal property was destroyed by Hurricane Katrina is insufficient to establish that it was destroyed by a windstorm, since Hurricane Katrina unleashed both wind and water forces." 523 F.3d at 624-25. Rather, as the Mississippi Supreme Court held in *Corban*, Plaintiff has the burden of showing that his personal property losses were "*caused by wind.*" 2009 WL 3208704, at *15 (emphasis added); *see also Lunday*, 276 So. 2d at 699 ("the burden of proof was on the plaintiff to prove that the damages sustained were covered by the peril insured against, that is, by direct action of the *wind*," thus, "negat[ing] the proposition that the damages were caused by tidal or surface water.") (emphasis added); *Lititz Mut. Ins. Co. v. Boatner*, 254 So. 2d 765, 767 (Miss. 1971) (in Hurricane Camille case, holding that to establish "windstorm damage," it is "'sufficient to show that wind was the proximate or efficient cause of loss or damage'") (citation omitted); *Kemp v. Am. Universal Ins. Co.*, 391 F.2d 533, 535 (5th Cir. 1968) (defining policy term "windstorm" as "'any *wind* . . . of such extraordinary force and violence as to

---

[10] To carry his burden, Plaintiff must prove both the fact and extent of his personal property loss. State Farm respectfully incorporates its objections to Plaintiff's personal property inventory (including that it does not comply with the mandatory conditions precedent in the policy), both as presented at trial and set forth in its Trial Brief [184], and State Farm reasserts and preserves all those objections herein. However, review of those objections is not needed to deny Plaintiff's motion in its entirety.

thereby injuriously disturb the ordinary condition of things insured'") (emphasis added; citation omitted).[11]  Therefore, as the Fifth Circuit has held, to treat Hurricane Katrina as "windstorm" is error. *Broussard*, 523 F.3d at 624 ("The district court erred when it found that the destruction of the Broussards' personal property by Hurricane Katrina was sufficient to establish the separate assertion that the property was destroyed by 'windstorm,' a 'named peril' under the Broussards' personal property coverage.").

The Court, in instructing the Jury over State Farm's objections, stated that Plaintiff met his "initial" burden to show that his personal property was damaged by a named peril.  Nov. 10, 2009 Hr'g Tr. at 51:23-52:18.[12]  The Court instructed that State Farm bore the burden to show by a preponderance of the evidence that the losses to Plaintiff's personal property were caused by storm surge flooding.  *Id.* For such losses, the Court instructed that State Farm "does not owe plaintiff for any loss to the plaintiff's personal property."  *Id.*  As shown herein, there was more than a legally sufficient evidentiary basis for the Jury to conclude that State Farm met this burden assigned to it by the Court.

**2.    Testimonial and Documentary Evidence Presented to the Jury Provided More Than a Legally Sufficient Evidentiary Basis for the Jury to Reach Its Unanimous Verdict on Plaintiff's Coverage Claim for Personal Property in His Dwelling**

As discussed above, *see* Point II.B.2 *supra*, extensive evidence was presented the Jury for it to reasonably conclude that Plaintiff's personal property in his dwelling was damaged by storm surge flooding.  All of the evidence showing that Plaintiff's house was damaged by storm surge flooding also proves that the personal property within Plaintiff's house was damaged by storm surge flooding.  *Id.* Indeed, when specifically discussing Plaintiff's claim for contents in the house, adjuster Lee Ann

---

[11]  *See also Firemen's Ins. Co. v. Schulte*, 200 So. 2d 440, 442 (Miss. 1967) (in Hurricane Betsy case involving "Windstorm" policy, question for jury was "whether the loss was caused directly by reason of windstorm, or whether water, even if driven by wind, either caused or contributed to, or aggravated the plaintiff's loss").

[12]  State Farm preserves all of its objections to the Court's jury instructions, both at trial and as stated in State Farm's Trial Brief [184] and hereby incorporates and reasserts them herein.  However, review of the objections to the Court's jury instructions is not needed to deny Plaintiff's motion in its entirety.

Johnson testified that "all the contents were below eight-foot. There wasn't a two-story home involved." Nov. 5, 2009 Hr'g Tr. at 76:5-9.

Plaintiff, in his motion, does not make any argument that is specific to the Jury's verdict regarding personal property in his house. Nor does Plaintiff cite any portion of the record to support his assertion that the Jury lacked sufficient evidence to reach its verdict regarding his personal property in the house. Yet, Mississippi law places the burden of proof for this element of his insurance claim squarely on Plaintiff, *see* Point II.C.1 *supra*, and federal procedural law places the burden on Plaintiff to show that Jury had no legally sufficient evidentiary basis for its verdict. *See* Point II.A *supra*. In light of all the evidence discussed above that was presented to the Jury showing that storm surge caused the damage to Plaintiff's property, *see* Point II.B.2 *supra*, Plaintiff has failed to show that the Jury had no legally sufficient evidentiary basis for its verdict on the issue of personal property.[13] The Court should, therefore, deny Plaintiff's motion on that issue.

### D.    Plaintiff Fails to Demonstrate That There Is No Legally Sufficient Evidentiary Basis for the Jury's Verdict on His Claim for ALE Coverage

#### 1.    Plaintiff Waived His Motion for Judgment as a Matter of Law on the ALE Issue

In his current motion, Plaintiff moves for judgment as a matter of law on the issue of ALE coverage, but he did not move for judgment as a matter of law on that issue during trial. At the close of the evidence in Phase One, Plaintiff moved, pursuant to Fed. R. Civ. P. 50(a), for judgment as a matter of law. Nov. 9, 2009 Hr'g Tr. at 123:17-126:22. Plaintiff identified as specific issues for his motion his coverage claim for the house and for his personal property (both in the house and dwelling extension). *Id.* Plaintiff went so far as to move for judgment as a matter of law on interest for the coverage claims. *Id.* Plaintiff did not, however, move for judgment as a matter of law on his ALE claim. *Id.* Therefore,

---

[13]    As noted above, the Jury awarded Plaintiff only $52,300 in compensatory damages, which included $0 for Plaintiff's dwelling, $52,300 for Plaintiff's personal property, and $0 for additional living expenses ("ALE"). Nov. 10, 2009 Jury Verdict [189].

Plaintiff has waived his motion for judgment as a matter of law on the issue of ALE coverage, and his motion should be denied on that issue.

The Fifth Circuit has held that "[i]t is well-settled in this circuit that a motion for judgment as a matter of law filed post verdict cannot assert a ground that was not included in the motion for judgment as a matter of law made at the close of the evidence." *Morante*, 157 F.3d at 1010. To grant Plaintiff's post-verdict motion for judgment as a matter of law on an issue that was not raised in a pre-verdict motion "'would be a constitutionally impermissible reexamination of the jury's verdict'" and constitute reversible error. *Id.* (citation omitted); *accord McCann v. Tex. City Refining, Inc.*, 984 F.2d 667, 672 (5th Cir. 1993).

Granting a post-verdict motion for judgment as a matter of law on an issue not identified in a pre-verdict motion would also undermine the purpose of such motions. The text of Fed. R. Civ. P. 50(b) refers to the post-verdict motion as a "renewed motion," not an original motion, which must be raised pre-verdict. *See* Fed. R. Civ. P. 50(a)(2). Pursuant to the plain text of the rule, Plaintiff cannot renew a motion for judgment as a matter of law without having first made such a motion before the case was submitted to the jury. A primary purpose of a Rule 50(a) motion is "'to alert the opposing party to the insufficiency [of the evidence] of his case before being submitted to the jury'" to permit additional evidence to be presented. *U.S. ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 960 (5th Cir. 1998) (citation omitted); *accord* 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2533 (3d ed. 2008) ("Its purpose is to apprise the trial court of the moving party's position to see if any defects can be corrected before the jury retires . . . .") (citing cases); 9 James Wm. Moore et al., *Moore's Federal Practice* § 50.21[2] (3d ed. 2009) (citing cases).

Plaintiff did not move for judgment as a matter of law on the issue of ALE coverage before the case was submitted to the jury. *See* Nov. 9, 2009 Hr'g Tr. at 123:17-126:22. He cannot, therefore, renew a motion post-verdict that he never made pre-verdict. Nor does Plaintiff's motion for judgment as

a matter of law regarding his other coverage claims suffice. Compared to Plaintiff's coverage claims for the house and personal property, Plaintiff's ALE claim involves different coverage provisions in the policy, different elements of proof, different evidence, and pays for different losses. *See* Ex. P-8 at 3-4 (coverage provisions for house, personal property, and ALE). By the plain language of the policy, which governs here, it is not enough for Plaintiff to merely show that a covered peril caused damage to the house, but Plaintiff must further demonstrate that the damage from the covered peril was, on its own, severe enough to cause the house to be "uninhabitable." *Id.* at 4. Further additional evidence is necessary to establish a "necessary increase" in living expenses by Plaintiff "to maintain [his] standard of living." *Id.* In light of these additional elements of proof for ALE coverage, Plaintiff's pre-verdict motion for judgment as a matter of law on his claims for dwelling and personal property coverage cannot encompass the separate issue of Plaintiff's ALE claim.

Therefore, Plaintiff, having failed to move pre-verdict for judgment as a matter of law on the issue of ALE, has waived his current post-verdict motion for judgment as a matter of law on that issue, and Plaintiff's motion should be denied on the ALE issue.

### 2. Burden of Proof for ALE Claim

Plaintiff's burden of proof to obtain ALE coverage under his homeowners policy is distinct from his burdens of proof with respect to dwelling and personal property coverage. The policy provision states in full:

> **Additional Living Expenses.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

Ex. P-8 at 4 (emphasis in original). Losses insured include wind, and losses not insured include flooding. *Id.* at 7, 10. The plain language of the policy is controlling. *See, e.g.*, *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 211-12 (5th Cir. 2009) (Mississippi contract law "begins with the text

and applies the familiar 'four corners test,' which focuses exclusively on 'an objective reading of the words employed in the contract'"; "The parties are bound by the language of the instrument'") (citation omitted); *Miss. Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1266 (Miss. 2002) (en banc) (courts "are bound to enforce contract language as written and give to it its plain and ordinary meaning").

Pursuant to the above policy language, Plaintiff must show that wind caused his house to become uninhabitable and that he actually incurred a necessary increase in the costs to maintain his standard of living. The Court similarly instructed the Jury. Nov. 10, 2009 Hr'g Tr. at 53:9-22.[14] As shown herein, there was more than a legally sufficient evidentiary basis for the Jury to conclude that Plaintiff was not entitled to ALE coverage.

>        **3.    Testimonial and Documentary Evidence Presented to the Jury Provided More Than a Legally Sufficient Evidentiary Basis for the Jury to Reach Its Unanimous Verdict Rejecting Plaintiff's Claim for ALE Coverage**

In addition to waiving his motion for judgment as a matter of law on his ALE claim, Plaintiff fails to demonstrate that the Jury had no legally sufficient evidentiary basis for its verdict denying Plaintiff's ALE claim. Plaintiff, in his motion, does not raise any argument regarding his ALE claim. Yet, it is his burden to do so, both procedurally and substantively. *See* Point II.A and Point II.D.2 *supra*.

As discussed above, *see* Point II.B.2 *supra*, extensive evidence was presented to the Jury for it to reasonably conclude that wind did not cause Plaintiff's house to be uninhabitable. The evidence showed that Plaintiff's house was damaged by storm surge flooding and that Plaintiff's roof sustained only minimal damage that could not have rendered the house uninhabitable on its own. *See* Point II.B.2 *supra*. On the issue of ALE, the Jury heard evidence from adjuster Lee Ann Johnson that Plaintiff declined ALE payments. When asked if he needed ALE payments, Plaintiff "said no, he had bought a

---

[14] State Farm respectfully incorporates its objections to the ALE instruction and preserves and reasserts them herein. However, review of these objections is not needed to deny Plaintiff's motion in its entirety.

home, that he was fine there, [and] that he wasn't living in a hotel." Nov. 5, 2009 Hr'g Tr. at 76:17-77:3. Moreover, ALE was not warranted because "water damage . . . kept him from living in the home," *id.*, which, under the policy, means "his home was uninhabitable, due to an uncovered loss." *Id.* at 78:6-9. The Jury also reasonably rejected Plaintiff's claim for 24 months of ALE because Plaintiff purchased a new house shortly after Hurricane Katrina – not as a temporary move, but as a permanent house. *Id.* at 79:2-11.

Accordingly, Plaintiff fails to show that the Jury has no legally sufficient evidentiary basis to reject his claim for 24 months of ALE payments. The Court should, therefore, deny Plaintiff's motion on the issue of ALE coverage.

## III. PLAINTIFF FAILS TO DEMONSTRATE THAT THE JURY'S UNANIMOUS VERDICTS SHOULD BE SET ASIDE FOR A NEW TRIAL

Plaintiff also moves for a new trial as an alternative to his motion for judgment as a matter of law. [201] at 4-7. Much of Plaintiff's arguments for a new trial are repackaged versions of his arguments for judgment as a matter of law. *See id.* at 4-5. Plaintiff also contends that the Jury was confused by the Court's instructions and for other reasons. *Id.* at 5-7. Notably, Plaintiff does not cite to *any* portion of the two-week trial record to support any purported ground for his request for a new trial. Plaintiff has failed to meet his burden to obtain a new trial, and the Court should deny his motion in its entirety.[15]

### A. Plaintiff Fails to Establish That the Verdicts Were Against the Great Weight of the Evidence

Plaintiff acknowledges that he bears a heavy burden to obtain a new trial by challenging the sufficiency of the evidence. [201] at 4. Indeed, the Fifth Circuit has admonished that "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely

---

[15]   Plaintiff does not move for a new trial based upon any evidentiary rulings by the Court. Plaintiff has, therefore, waived a motion for a new trial on such grounds.

the greater – weight of the evidence." *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980) (reversing grant of new trial); *Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003) (same).  When applying this standard, "[a]ll the evidence must be viewed in a light most favorable to the jury's verdict, and the verdict must be affirmed unless the evidence points 'so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary [conclusion].'" *Stokes v. Georgia-Pacific Corp.*, 894 F.2d 764, 768 (5th Cir. 1990) (denial of new trial proper when "conflicting inferences" could be drawn from the evidence) (citations omitted); *see also Cobb v. Rowan Cos.*, 919 F.2d 1089, 1090 (5th Cir. 1991); *Whitehead ex rel. Whitehead v. K Mart Corp.*, 173 F. Supp. 2d 553, 557-58 (S.D. Miss. 2000) (Wingate, J.).  District courts cannot "grant a new trial 'simply because [the court] would have come to a different conclusion th[a]n the jury did.'" *Peterson v. Wilson*, 141 F.3d 573, 577 (5th Cir. 1998) (citation omitted; first alteration in original).

Plaintiff, in his motion, falls far short of showing that the Jury's verdicts were against the great weight of the evidence.  As discussed above, *see* Points II.B-D *supra*, the Jury heard extensive testimonial evidence and physical evidence that storm surge flooding caused the damage to Plaintiff's property.  The Jury reasonably credited this evidence in lieu of Plaintiff's engineer Mr. Biddy, whom the Jury could reasonably disregard as contradicting eyewitness testimony.  Plaintiff cites to no record evidence in his motion to show that the Jury's verdicts were against the great weight of the evidence.  Moreover, each of the points Plaintiff raises to obtain a new trial is specifically refuted above.  *See* Point II.B.2 *supra*.

On the issue of a new trial on punitive damages, Plaintiff fails to raise a single argument and fails to cite to any portion of the record.  *See* [201].  Plaintiff does not discuss the substantive requirements for obtaining punitive damages, does not discuss his burden to meet those requirements, and does not

identify any evidence in the record showing that Plaintiff met his heavy substantive burden.[16]  Indeed, Plaintiff's request for a new trial on the punitive damages issue is wholly perfunctory and, contrary to elementary federal requirements for motions, does not "state with particularity the grounds for seeking the order."  Fed. R. Civ. P. 7(b)(1)(B).  Plaintiff presents no arguments, no authorities, and no discussion supporting his request for a new trial on the issue of punitive damages.  *See* [201] at 4-7.  Courts have repeatedly rejected such threadbare motions for a new trial.  *See, e.g.*, *Stinebower v. Scala*, 331 F.2d 366, 367-68 (7th Cir. 1964) (denial of motion for new trial proper, holding "the general conclusions assigned as error in the motion for a new trial are vague, indefinite and lack the specificity required by Rule 7(b)(1)"); *Chicago & Nw. Ry. Co. v. Britten*, 301 F.2d 400, 402 (8th Cir. 1962) (reversing grant of new trial where motion for new trial made only "barren assertions," "completely unbuttressed by the particulars required in Rule 7(b)(1)"); *United States v. 64.88 Acres of Land*, 25 F.R.D. 88 (W.D. Penn. 1960); *see also* 12 James Wm. Moore et al., *Moore's Federal Practice* § 59.10[1] (3d ed. 2009) (Fed. R. Civ. P. 7(b) "affords the court and the opposing party notice of the substance of the basis for the requested order" in motions for a new trial).  Thus, Plaintiff has fallen far short of his burden to demonstrate that the Jury's Verdict finding for State Farm on the issue of punitive damages is against the great weight of the evidence.

Moreover, the Jury heard extensive evidence regarding the reasons for State Farm's adjustment. *See* Point II.B.2 *supra*.  The testimonial and documentary evidence presented at trial and discussed herein more than provides a reasonable basis for the Jury's decision to find for State Farm on the issue of punitive damages.  Plaintiff also does not establish in his motion that he proved at trial, by clear and convincing evidence, that State Farm's adjustment had no reasonable basis *and* was willful, malicious, or grossly negligent in reckless disregard of Plaintiff's rights.  *See, e.g.*, *Broussard*, 523 F.3d at 628.

---

[16]   State Farm respectfully incorporates its discussion of Plaintiff's claim for punitive damages set forth at trial and in its Trial Brief, [184], and State Farm reasserts and preserves those arguments and authorities herein.

Accordingly, Plaintiff has failed to demonstrate that the Jury's verdicts were against the great weight of the evidence to obtain a new trial. Plaintiff's motion for a new trial should be denied.

### B.    Plaintiff Fails to Show That Any Juror Confusion Warrants a New Trial

Plaintiff incorrectly contends that a new trial is needed because the Jury was confused. In particular, Plaintiff argues that the Court's instructions to the Jury were confusing, that an interrogatory from the Jury reflects that it was confused, and that the Jury poll reflected its confusion. [201] at 5-7. Plaintiff is incorrect on all counts, and the Court should deny Plaintiff's motion for a new trial.

First, Plaintiff challenges the Court's charge to the Jury and contends that the Court's verdict form confused the Jury. [201] at 6. When reviewing a motion for a new trial on the basis of a challenge to jury instructions, the Fifth Circuit instructs that "the charge as a whole" must be scrutinized to ascertain whether the entire charge "creates a substantial doubt as to whether the jury has been properly guided in its deliberations." *Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 363-64 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1317 (2009); *see also Wright v. Ford Motor Co.*, 508 F.3d 263, 268 (5th Cir. 2007) (party challenging instruction "'must demonstrate that the charge as a whole creates "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations"'") (citations omitted). Plaintiff fails to meet his burden.

Plaintiff states that the Court's Jury charge "properly placed the burden of proving an exclusion to coverage on State Farm and advised the [J]ury that Plaintiff had met his burden of proving that the dwelling damage was caused by an accidental direct physical loss and the personal property by windstorm." [201] at 6.[17] Thus, Plaintiff is satisfied with the Court's instructions to the Jury that discuss the burden of proof to be applied. Indeed, the Court largely granted Plaintiff's proposed jury instructions on burden of proof over the objections of State Farm. To the extent there were errors in those

---

[17]    State Farm maintains its objections the Court's instructions on the parties' burdens of proof, as stated in its Trial Brief and at trial. [184]. The Court need not, however, revisit those objections to reject Plaintiff's motion.

instructions, Plaintiff was the beneficiary. The Jury was permitted to take these instructions with it for deliberations. *See* Nov. 10, 2009 Hr'g Tr. at 56:16-18.

Plaintiff then contends that the verdict form "negat[ed] the Court's previous instructions that Plaintiff had met his burden of proof" because, for the dwelling and personal property, the verdict form identified the damages as being "caused by wind" or "windstorm" "and not storm surge flooding." [201] at 6. As an initial matter, Plaintiff does not challenge any part of the verdict form regarding ALE coverage, *id.*, nor did Plaintiff raise an objection the ALE verdict form at trial. *See* Nov. 9, 2009 Chambers Hr'g Tr. at 15:14-21. Plaintiff has, therefore, waived any challenge to the verdict form on the ALE issue. Moreover, nothing in the verdict form discusses burden of proof for any party. As Plaintiff acknowledges, the Court specifically instructed the Jury on the parties' burdens of proof. *Id.* Furthermore, the verdict form is consistent with the instructions given to the Jury on burden of proof. The language in the verdict form simply adopted the competing theories of causation that Plaintiff and State Farm presented to the Jury. Plaintiff argued that wind and windstorm caused his damages, and State Farm argued that storm surge caused his damages. Indeed, "wind" and "windstorm" are the accidental direct physical losses that Plaintiff has alleged throughout this case caused his damages. The verdict form simply reflected these theories. Therefore, Plaintiff has failed his burden to show that the jury charge as a whole created substantial confusion in the Jury.

Second, Plaintiff contends that a written interrogatory from the Jury to the Court suggested that the Jury was confused. [201] at 5. During the Jury's deliberations in Phase Two on punitive damages, the Jury submitted a written interrogatory to the Court asking "Why did the Bossiers . . . not have flood insurance?" Nov. 12, 2009 Chambers Hr'g Tr. at 51:7-9. The Court proposed instructing the Jury that "[w]hy the Bossiers did not have flood insurance is irrelevant," and the Court asked Plaintiff if he would agree with that answer. *Id.* at 51:11-13. Plaintiff agreed, *id.* at 51:14, and the Court's answer was given to the Jury.

Plaintiff contends that this interrogatory showed that flood insurance "was on the [J]ury's mind, although it had no relevance as to any issue in this case." [201] at 5. An irrelevant issue on the Jury's mind does not warrant a new trial or show that the Jury was confused, especially when the Court instructed the Jury that the flood insurance issue was irrelevant. The Court's answer to the Jury's question was correct, and Plaintiff agreed. Nov. 12, 2009 Chambers Hr'g Tr. at 51:14. Plaintiff cannot point to any indication that the Jury was confused after receiving the Court's accurate and agreed-to answer to its interrogatory.

<u>Third</u>, Plaintiff contends that the Jury was confused because, after the Phase Two verdict was read, one juror (Juror Taylor) initially misunderstood the Court's inquiry as to whether she agreed with the verdict. [201] at 5. The trial record shows that Juror Taylor's misunderstanding was innocent and promptly clarified by the Court, and when directly asked whether Juror Taylor agreed with the verdict, the juror stated she did:

> The Court:  Mr. Simmons, did all eight of you vote to return this verdict for the defendant?
>
> The Foreperson:  Yes, Your Honor.
>
> The Court:  Does counsel want the jurors individually polled?
>
> Ms. Guice:  Please, Your Honor.
>
> The Court:  Answer yes if this is your verdict finding for the defendant, no, if it is not, as I call your names. Jo Ann Taylor?
>
> Juror Taylor:  No.
>
> The Court:  This is not your verdict?
>
> Juror Taylor:  *Oh, yes, that is my verdict.*
>
> The Court:  Do you understand?
>
> Juror Taylor:  Yes, sir.
>
> The Court:  This is whether or not this verdict, finding for the defendant, which must be unanimous – as I call your names, answer yes, if it is your verdict, no, if it is not. Let's start over. Jo Ann Taylor?

Juror Taylor: *Yes.*

Nov. 12, 2009 Hr'g Tr. at 52:6-24 (emphasis added); *see also* Nov. 12, 2009 Unredacted Jury Verdict [190] (bearing signatures of all the jurors). The record shows that the Court promptly restated the polling question to the Jury and that Juror Taylor clearly agreed with the verdict for State Farm. Plaintiff's request for an entirely new trial based on this excerpt from the record should be denied.

Accordingly, Plaintiff's motion for a new trial should be denied in its entirety.

## IV.    JUDGMENT INTEREST

In his motion for judgment as a matter of law and for a new trial, Plaintiff also inserts a perfunctory request for "prejudgment interest . . . from and after October 10, 2005, at the rate of 8% per annum until paid." [200] at 1, [201] at 2. This is the third time since the close of trial that Plaintiff has sought judgment interest without any apparent recognition of the differences between prejudgment and post-judgment interest or of the legal requirements to obtain such interest. State Farm has thoroughly briefed these issues at least twice before the Court in post-trial filings, and Plaintiff has no answer in his current motion to any of those arguments and authorities raised by State Farm. In the interests of judicial economy, State Farm respectfully incorporates all of its arguments and authorities regarding prejudgment and post-judgment interest by reference and preserves and reasserts them herein. [197], [209].

## V.    CONCLUSION

For all the foregoing reasons, this Court should deny Plaintiff's combined motion for judgment as a matter of law and for a new trial in its entirety. [200], [201].

Dated:  December 7, 2009

Respectfully submitted,

*/s/  H. Benjamin Mullen*
H. BENJAMIN MULLEN, MSB # 9077
BRYAN, NELSON, SCHROEDER,
CASTIGIOLA & BANAHAN
Attorneys at Law
Post Office Drawer 1529
Pascagoula, MS  39568
(228) 762-6631
*Attorneys for Defendant*
*State Farm Fire and Casualty Company*

31

**CERTIFICATE OF SERVICE**

I, **H. BENJAMIN MULLEN**, one of the attorneys for the Defendant, **STATE FARM FIRE & CASUALTY COMPANY**, do hereby certify that I have on this date electronically filed the foregoing document with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

DATED, December 7, 2009.

/s/ *H. Benjamin Mullen*
H. BENJAMIN MULLEN

H. BENJAMIN MULLEN
BRYAN, NELSON, SCHROEDER,
CASTIGLIOLA & BANAHAN
Attorneys at Law
Post Office Drawer 1529
Pascagoula, MS 39568
(228) 762-6631